UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 0:14-cv-61543-RLR

CHRISTOPHER W. LEGG, individually and
on behalf of all others similarly situated,

     Plaintiff,

v.

LABORATORY CORPORATION OF
AMERICA HOLDINGS, a Delaware
corporation,

     Defendant.

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE FAIR AND ACCURATE CREDIT TRANSACTIONS ACT, 15 U.S.C. § 1681c(g)**

Plaintiff Christopher W. Legg ("Plaintiff"), on behalf of himself and other similarly situated individuals, alleges the following, in relevant part, upon information and belief, and his own personal knowledge.

## I.    *NATURE FOF THE CASE*

1.    This class action complaint is based upon Defendant's violations of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, as amended (the "FCRA"). Specifically, this action is based upon Section 1681c(g) of the FCRA, which states that, "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." Despite the clear language of the statute, Defendant, in the name of profit, willfully chose not to comply with the FCRA. As such, all consumers who purchase goods and services

1

from Defendant using a credit or debit card suffered violations of Section 1681c(g), have been uniformly burdened with an elevated risk of identity theft, and are entitled to an award of statutory damages.

## II.    JURISDICTION AND VENUE

2.      This Court has jurisdiction under 15 U.S.C. § 1681p, and 28 U.S.C. §§ 1331 and 1337 because the claims in this action arise under violation of a federal statute.

3.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here. Defendant does business in this District and its contacts here are sufficient to subject it to personal jurisdiction.

## III.    PARTIES

4.      Plaintiff Christopher W. Legg ("Plaintiff") is a natural person, who resides in the State of Florida, Broward County.

5.      Defendant, Laboratory Corporation of America Holdings ("LabCorp" or "Defendant"), is a Delaware corporation whose principal office is located at 231 Maple Avenue, Burlington, NC 27216, and whose registered agent for service of process in the State of Florida is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

6.      Defendant owns and operates more than 1,500 patient service centers across the United States.

## IV.    FACTUAL ALLEGATIONS

### A. Background

7.      In 2003, FACTA was enacted by Congress, and signed into law by President George W. Bush. One of FACTA's primary purposes was to amend the FCRA through the addition of identity theft protections for consumers.

8.      One such FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or bank account from a receipt provided to the consumer during a point of sale transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

9.      Codified at 15 U.S.C. § 1681c(g), this provision states the following:

*Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.*

(hereinafter, the "Receipt Provision").

10.     After enactment, FACTA provided three years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

11.     The requirement was widely publicized among retailers and the FTC.

12.     For example, in response to earlier state legislation enacting similar truncation requirements, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, explained that "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts.  The card's expiration date will be eliminated from receipts altogether. . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . . ." "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein," PR Newswire, March 6, 2003.

13.     Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

14.     The card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date.

15.     For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all."   VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

16.     Because a handful of large retailers did not comply with their contractual obligations with the card companies and the straightforward requirements of FACTA, Congress passed a law absolving all *past* violations of FACTA.   *See* The Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, 122 Stat. 1565 (2008).

17.     Importantly, the Clarification Act did not amend FACTA to allow publication of the expiration date.  Instead, it simply provided amnesty for past violators up to June 3, 2008.

18.     Card processing companies continued to alert merchant, including LabCorp, of FACTA's requirements. According to a Visa Best Practice Alert in 2010:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN **or the card expiration date on any cardholder receipt.** (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.)

> To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.

*See* Visa Alert attached hereto as Exhibit A.

19.     Most of defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement.   Defendant could have readily done the same.

20.     Not only was LabCorp informed it could not print expiration dates, it was contractually prohibited from doing so.  LabCorp accepts credit cards from all major issuers; these companies set forth requirements that merchants, including Defendant, must follow, including FACTA's redaction and truncation requirements.

21.     As noted above, the processing companies have required that the expiration date be truncated since 2003 and still require it.  For example, American Express required:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

*See* Exhibit B, attached hereto.

22.     Similarly, MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "* ," or "#," that are neither blank spaces nor numeric characters.

*See* Exhibit C, attached hereto.

23.     According to data from the Federal Trade Commission's 2012 Consumer Sentinel Network report, Florida ranks No. 1 for identity theft among the 50 states, with 361.3 complaints per 100,000 people. That's 86 percent more than Georgia, which ranks a distant second. Also, nine of the top 10 metro areas for identity theft are in Florida, according to the report. First is the Miami area with 645.4 complaints per 100,000 people.[1]

24.     So problematic is the crime of identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, joined to set-up a free website (<http://www.annualcreditreport.com>) in order to comply with FACTA requirements and to provide the citizens of this country with a means of monitoring their credit reports for possible identity theft.

25.     FACTA clearly prohibits the printing of the expiration date to protect persons from identity theft.

## B.  *Plaintiff's Factual Allegations*

26.     On July 3, 2014, Plaintiff visited Defendant's Hollywood, Florida location at which time he paid, using a VISA® credit card, for routine laboratory tests. Upon making

---

[1] http://www.wptv.com/money/consumer/identity-theft-florida-ranks-no-1-in-nation-for-id-theft (Last accessed: July 6, 2013).

payment, he was provided with an electronically printed receipt which included the expiration date of Plaintiff's credit card.

### C. *Defendant's Misdeeds*

27.     At all times relevant herein, Defendant was acting by and though its agents, servants and/or employees, each of which were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant.

28.     At all times relevant herein, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was in willful and reckless disregard for federal law and the rights of the Plaintiff.

29.     It is Defendant's policy and procedure to issue an electronically printed receipt to individuals at the point of sale – *i.e.*, immediately upon receipt of credit card payment.

30.     Consistent with Defendant's policy and procedure, Defendant knowingly and intentionally includes credit and debit card expiration dates on its electronically printed receipts, and has done so since, at least, 2011.  *See* Exhibit D, attached hereto.

31.     Along with the expiration date, the receipt generated at the point of sale also displays certain other sensitive information, including the consumer's name, address, telephone number, type of credit card, and date of service.

32.     After a credit card is processed, two things take place: (1) after swiping or running the card, the consumer's credit card account number is electronically stored on

Defendant's computers; and (2) an electronic image of the receipt is created and stored in Defendant's database.

33.    Defendant cannot electronically store an image of the receipt (bearing the expiration date) unless the software utilized by LabCorp is specifically programmed to reveal the expiration date on the receipt generated at the point of sale. Unlike the storage of credit card account numbers, swiping a card does not record the credit card's expiration date.

34.    The expiration dates are not printed accidentally; the equipment and software used to print the receipts and electronically store an image of same must be programmed to display certain information, and likewise, programmed not to display certain information.

35.    Numerous people have complained that Defendant has engaged in the practice of unauthorized billing wherein a consumer's credit card is charged without their knowledge after they have completed their transaction. *See* Composite Exhibit E, attached hereto.

36.    Many of those complaining online generally relate the following sequence of events: (1) a consumer-patient visits a LabCorp facility; (2) a LabCorp employee then demands to see a credit card as a prerequisite to medical testing irrespective of the patient disclosing insurance coverage; (3) the consumer-patient's credit card information is electronically recorded in Defendant's database; (4) after turning over their credit card, the patient only then receives laboratory testing; and (5) week later, the patient-consumer then learns that Defendant has placed unauthorized charges on their credit card.

37.     On another website, an individual identifying themselves as an employee of LabCorp, explained that she must obtain credit card information from each and every consumer-patient or face possible discipline. *See* Exhibit F attached hereto.

38.     That LabCorp cannot subsequently charge a consumer's credit card, unless it possesses two critical pieces of information, to wit: the credit card account number and the credit card expiration date.

39.     That LabCorp, now in possession of critical credit card information, often charges consumers' credit cards *long after* the initial point of sale transaction.

40.     That, upon information and belief, LabCorp engages in the practice of capturing credit card expiration dates, so that it may later charge a consumers' credit card in those instances when it is not fully reimbursed by the consumer-patient's insurance or the claim is denied by insurance altogether.

41.     That Defendant is no stranger to litigation related to its billing practices. On or about August 30, 2011, LabCorp reached a $49.5 million dollar settlement related to allegations that it illegally overcharged a California Medicaid program and gave kickbacks in exchange for referrals.

42.     Irrespective of Defendant's credit card billing scheme, it is clear that Defendant possessed some level of knowledge regarding FACTA's requirements; LabCorp complied with the credit card number redaction requirement, presumably because it had already stored the credit card account number in electronic format.

43.     Moreover, at some point prior to the filing of this complaint, Defendant retained the services of the international law firm, Jones Day, who advised the Defendant regarding certain FACTA requirements specifically related to Red Flag requirements of FACTA, which are aimed at spotting procedures susceptible to allowing identity theft.[2]

44.     Any such advice, should have uncovered printing expiration dates on the receipts as FACTA requires truncation to prevent identify theft.  The danger of identity theft in this case is compounded because some of the receipts not only contain the name and address of the customer, but also their social security number.  Armed with this information, it wouldn't take much for an identity thief to obtain additional information[3].

45.     Notwithstanding the fact that it has had years to comply, Defendant continues to issue point of sale receipts, which contain the expiration date of credit or debit cards, in direct violation of the Receipt Provision of the FCRA.

46.     Notwithstanding the Receipt Provision, Defendant continues to deliberately, willfully, intentionally, and/or recklessly violate FACTA by issuing receipts which to not comply with the FCRA.

47.     Notwithstanding the Receipt Provision and the fact that it had years to comply, Defendant continues to act in conscious disregard for the rights of others.

---

[2] http://www.jonesday.com/experiencepractices/ExperienceDetail.aspx?experienceid=24830 (Last accessed: July 6, 2014).
[3]  One common modus operandi of identity thieves is to obtain credit card receipts that are lost or discarded, or through theft, and use the information on them to engage in transactions.  Identity thieves who do this are known as "carders" and "dumpster divers."  This modus operandi is more common than the use of sophisticated electronic means to obtain the information.  Robin Sidel, "Identity Theft – Unplugged – Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," Wall Street Journal, Oct. 5, 2006, p. B1.

48.     In sum, Defendant, in the name of profit, knowingly and intentionally violated the Receipt Provision of FACTA, in conscious disregard for the rights and privacy concerns of others, and in doing so, committed willful violation of the FACTA provision of the FCRA. *See Reynolds v. Hartford Financial Services Grp.*, 435 F.3d 1081, 1098 (9th Cir. 2006).

## V.      *CLASS ACTION ALLEGATIONS*

49.     This action is also brought as a Class Action under Fed. R. Civ. P. 23.  Plaintiff proposes the following class, defined as follows, subject to modification by the Court as required:

> *(i) All persons in the United States (ii) who, when making payment to LabCorp, (iii) made such payment using a credit or debit card (iv) and were provided with a point of sale receipt (v) which displayed the expiration date of said credit or debit card (vi) within the five (5) years prior to the filing of the complaint.*

50.     The named Plaintiff falls within the Class definition and is a member of the Class. Excluded from the Class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, Plaintiff's attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress.

### A.  *Certification Under Either Rule 23(b)(2) or (b)(3) is Proper.*

51.     The members of the class are capable of being described without managerial or administrative problems. The members of the class are readily ascertainable from the information and records in the possession, custody or control of Defendant.

52.     Defendant is a major provider of laboratory related services throughout the United States. Plaintiff states, upon information and belief that Defendant processes laboratory tests on approximately 470,000 specimens per day.[4] Therefore, it is reasonable to conclude that the class is sufficiently numerous such that individual joinder of all members is impractical. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.   The Class can be identified through Defendant's records or Defendant's agents' records.

53.     There are common questions of law and fact that predominate over any questions affecting only the individual members of the classes. The wrongs alleged against Defendants are statutory in nature and common to each and every member of the respective classes.

54.     This suit seeks only statutory damages and injunctive relief on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

55.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.   The questions of law and fact to the Class predominate over questions that may affect individual Class members, including the following:

    a.     Whether, within the five years prior to the filing of this Complaint, Defendant and/or their agents accepted payment by credit or debit card from any consumer and subsequently gave that consumer a printed receipt

---

[4] https://www.labcorp.com/wps/portal/aboutus/ (Last accessed: July 6, 2014)

upon which the expiration date of the card was printed;

b.      Whether Defendant's conduct was willful and reckless;

c.      Whether Defendant is liable for damages, and the extent of statutory

damages for each such violation; and

d.      Whether Defendant should be enjoined from engaging in such conduct in

the future.

56.     As a person that utilized Defendant's laboratory services and received a receipt upon which the expiration date of his card was printed, Plaintiff is asserting claims that are typical of the proposed Class. Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

57.     The principal question is whether the Defendant violated section 1681c(g) of the FCRA by providing class members with electronically printed receipts in violation of the Receipt Provision. The secondary question is whether it is Defendant's policy and practice to provide such electronically printed receipts to consumers that make payment using a credit or debit card, despite the advice of one of the nation's largest law firms, and whether it was Defendant's policy and practice to print receipts bearing the expiration date on consumer credit cards in willful noncompliance of the FCRA.

58.     Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct.  Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law would be allowed to proceed without remedy and Defendant would undoubtedly continue such illegal

conduct.  Because of the size of the individual Class members' claims, few Class members could afford to seek legal redress for the wrongs complained of herein.

59.     Defendant's defenses are and will be typical of and the same or identical for each of the members of the Class and will be based on the same legal and factual theories. There are no unique defenses to any of the class members' claims.

60.     A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small. The maximum statutory damages in an individual action for a violation of this statute is minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

61.     Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

### COUNT I – VIOLATIONS OF 15 U.S.C. § 1681(c)(g)

62.     15 U.S.C. §1681c(g) states as follows:

> *Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.*

63.     This section applies to any "device that electronically prints receipts" (hereafter "Devices") for point of sale transactions. 15 U.S.C. §1681c(g)(3).

64. Defendant employs the use of said Devices for point of sale transactions at the various locations of Defendant.

65. On or before the date on which this complaint was filed, Plaintiff and members of the Class were provided receipt(s) by Defendant that failed to comply with the Receipt Provision.

66. At all times relevant to this action, Defendant was aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

67. Notwithstanding the three year period to prepare for FACTA and its accompanying provisions, including but not limited to the Receipt Provision; knowledge of the Receipt Provision and FACTA as a whole; LabCorp, in the name of profit, knowingly, willfully, intentionally, and/or recklessly violated and continues to violate the FCRA and the Receipt Provision.

68. As a result of Defendant's willful violations of the FCRA, Plaintiff and members of the Class continue to be exposed to an elevated risk of identity theft. Defendant is liable to Plaintiff and members of the Class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs.

**WHEREFORE**, Plaintiff Christopher W. Legg respectfully requests that this Court enter judgment in his favor and the Class, and against Defendant Laboratory Corporation of America Holdings for:

a.   Statutory damages;

b.   Punitive damages;

c.      Injunctive relief;

d.      Attorneys' fees, litigation expenses and costs of suit, and

e.      Such other and further relief as the Court deems proper under the circumstances.

## **JURY DEMAND**

**Plaintiff demands a trial by jury on all counts.**

Dated: August 25, 2014.

Respectfully submitted,

By: /s/ *Scott D. Owens*
Scott D. Owens, Esq.
Florida Bar No. 0597651
SCOTT D. OWENS, P.A.
664 E. Hallandale Beach Blvd.
Hallandale Beach, FL 33009
Telephone: (954) 589-0588
Facsimile: (954) 337-0666
scott@scottdowens.com

Bret L. Lusskin, Jr., Esq.
Florida Bar No. 28069
BRET LUSSKIN, P.A.
20803 Biscayne Blvd., Ste 302
Aventura, FL 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

*Attorneys for Plaintiff*