UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CHRISTOPHER LEGG, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

LABORATORY CORPORATION OF AMERICA HOLDINGS, a Delaware corporation,

    Defendant.

CASE NO. 14-cv-61543-RLR

**PLAINTIFF'S RESPONSE IN OPPOSITION TO LABCORP'S MOTION IN LIMINE TO EXCLUDE THE EXPERT TESTIMONY AND REPORT OF DON COKER**

    LabCorp does not and cannot show that Mr. Coker is not qualified to render his opinions, or that his opinions are unreliable. Mr. Coker has been an expert in more than 50 FACTA cases. At least one federal appeals court adopted his opinions concerning the purpose and need for FACTA's prohibition against printing expiration dates on credit card transaction receipts, and the risk of credit card fraud and identity theft if those requirements are violated. Further, the testimony of LabCorp's own employee and opposing expert also support Coker's opinions.

    Likewise, LabCorp's argument that a few statements in Coker's report are impermissible legal conclusions is just a rehash of part of its earlier motion to strike that is still pending. Those arguments are no more valid now than when LabCorp made them earlier, and thus they fail for the same reason Plaintiff stated in his response to that motion. At best, LabCorp's arguments only go to the weight to be afforded Coker's testimony, not its admissibility.

    Indeed, if anything, LabCorp's motion serves only to attack its own experts, particularly its proposed expert on credit cards and identity theft risk, Joel S. Lisker. Each argument it makes against Coker applies full force to Lisker, and Coker is far stronger than Lisker because again,

his opinions have been accepted and endorsed by the courts, and Lisker's own testimony supports Coker.[1] As further explained below, LabCorp's Motion *in limine* should be denied.

**A.     Coker is Qualified to Render His Expert Opinions.**

LabCorp quibbles about Coker's qualifications, but its arguments concede the most important point: Coker's education and experience qualify him to opine on matters relating to the financial industry, including credit card transaction issues. Each criticism of Coker's qualifications that LabCorp raises is either irrelevant or shows that he has the background knowledge and experience to opine on the issues for which Plaintiff utilizes his testimony.

LabCorp attempts to belittle Mr. Coker's formal education while overlooking his decades of experience in the banking, finance and "all aspects of lending including credit card operations." (Coker Report, attached as Exhibit A, at p.2, ¶4; ECF No. 144-1 (Coker Dep.) at 15:20-16:3, 17:6-10). Mr. Coker's experience dwarfs the experience of LabCorp's experts. He has "been called as an expert in over 50 FACTA cases." (Coker Report at p.2, ¶4). By contrast, LabCorp's alleged credit card expert, Lisker, admitted ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ See Lisker Dep. Excerpt, attached as Exhibit B, at p.10:12-10:13.

In any event, LabCorp also overlooks the rule that "formal education is not the only way to achieve sufficient expertise to qualify as an expert witness." *Eastburn v. Ford Motor Co.*, 471 F.2d 21, 23 (5th Cir. 1973). An expert may still be qualified on the basis of his or her training or experience. *See Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001) (expert testimony admitted "based largely on [expert's] personal experience rather than verifiable testing or studies.")

---

[1] Indeed, all of LabCorp's "experts" are vulnerable to the same critique, the others being Art Ehuan (whose testimony on PCI DSS is wholly irrelevant to this case) and Christopher Stomberg, who essentially read and counted entries on an excel spreadsheet.

2

Indeed, experts are rarely barred on "qualification" grounds, which is ordinarily a subject for cross-examination that generally goes only to the weight to be given the expert's opinion, not admissibility. *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) ("This inquiry is 'not stringent,' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.'"), *quoting Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F.Supp.2d 1321, 1325 (S.D. Fla. 2009). "Moreover, '[a]n expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand.'" *Clena Invs*, 280 F.R.D. at 660, *quoting Furmanite Am., Inc. v. T.D. Williamson, Inc.*, 506 F.Supp.2d 1126, 1129 (M.D. Fla. 2007). As explained below, Mr. Coker easily clears this low hurdle, and LabCorp does not show otherwise.

### 1. Formal Education, Experience and On-the-Job Training

Mr. Coker's educational background includes a B.A. degree from the University of Alabama, post-graduate work at Alabama and the University of Houston, graduate-level work at Spring Hill College, and executive education work at Southern Methodist University and the Harvard Business School. (Coker Report at pp.1-2, ¶1).

His professional background includes approximately twenty years as a high-level banker, mortgage banker, and lender and approximately twenty years as an independent consultant including over two years as a high-level governmental banking regulator. (*Id.*, p.2, ¶2). His experience includes a significant amount of training in all areas of banking and mortgage banking including lending, loan servicing, deposits, operations, investments, securitization, securities, collections, and trusts with his past employers including Citicorp and entities that are now Citigroup, Bank of America, JPMorgan Chase Bank and Regions Financial, and all of which are among the largest banking and financial companies in the country. (*Id.*, at p.2, ¶3).

Mr. Coker has been called on as an expert in over 50 FACTA cases based upon his education, training, work, and management background that includes specific experience in all aspects of lending including credit card operations. (Coker Report at p.2, ¶4). He has experience working as a governmental banking regulator; and has been called on many times as an expert consultant to many banking regulators such as the FDIC and also non-banking governmental entities such as the Internal Revenue Service, Agency for International Development, U.S. Air Force, and others. (*Id.*)

Some notable clients have included over 95 banks worldwide, 9 of the country's top 10 banks, 8 of the country's top 10 mortgage banking companies, 14 of the world's top 45 banks, 20 of the country's 100 largest companies, 56 of the country's top 350 law firms, governmental entities such as the Internal Revenue Service (called on for 7 engagements involving bank taxation and the valuation of banking and intangible assets worth over $21.5 billion), FDIC, Resolution Trust Corporation, Federal Reserve Bank, Federal Home Loan Bank, Federal Savings & Loan Insurance Corporation, Federal National Mortgage Association (Fannie Mae), Federal Home Loan Mortgage Corporation (Freddie Mac), other governmental banking regulators, U.S. Air Force, numerous state and local governments, and four members of the Forbes 400 List. (*Id.*, p.3, ¶7).

Mr. Coker has also published widely (1 book and over 90 articles including two articles on FACTA) in banking, mortgage lending, finance, valuation and business subjects, and he has been interviewed or quoted over 150 times in over 50 publications. (*Id.*, p.4, ¶9).[2]

---

[2] Including Forbes, U.S. News and World Report, NBC Evening News, ABC News and ABC Radio, Time Magazine and Time Online, American Banker, Atlanta Journal-Constitution, New York Daily News, Baltimore Sun, Chicago Sun-Times, Charlotte Observer, Triangle Business Journal (Raleigh, NC), The Business Journal (Greater Triad Area: Greensboro, High Point, Winston-Salem, NC), Atlanta Business Chronicle, Newark Star-Ledger, Denver Post, Houston

Despite the above experience, LabCorp attacks Coker for not receiving any "formal education" regarding FACTA. This is a red herring because there is no "degree" in FACTA that one can obtain and, perhaps more importantly, Plaintiff does not offer Coker as a "FACTA" expert (or any other kind of legal expert). Plaintiff principally offers Coker regarding the risk of harm associated with disclosing credit card expiration date information, including fraud and identity theft, as well as whether LabCorp's handling of that information was appropriate given the need to protect it. In any event, LabCorp acknowledges that "FACTA . . . did not exist" and "identity theft 'hadn't been identified as an actual subject'" at the time Coker was pursuing the bulk of his formal training. [ECF No. 144, fn. 29].

Tellingly, LabCorp concedes that Coker received formal training in "how [the credit card] system operated.'" Thus, it is not disputed that Coker's education provided him with a background in the inner workings of the credit card system. Regardless, it is unnecessary for an expert to have formal education on the subject matter on which they opine. *Eastburn*, 471 F.2d at 23 (5th Cir. 1973); *see also* Fed. R. Evid. 702 (expert may be qualified "by knowledge, skill, experience, training *or* education.") (italics added). Rather, "a witness who possesses general knowledge of a subject may qualify as an expert…so long as his testimony would likely assist a trier of fact." *Whelan v. Royal Caribbean Cruises, Ltd.*, 976 F. Supp. 2d 1328, 1331 (S.D. Fla. 2013), *citing Maiz* 253 F.3d at 669. Here, LabCorp concedes Coker received education on the credit card system in excess of what a layman would possess, and he has utilized that background knowledge as well as the specific experience he obtained in his lengthy career in

---

Business Journal, Boston Herald, Phoenix Business Journal, Pittsburgh Post-Gazette, Pittsburgh Business Times, Jacksonville (FL) Business Journal, Palm Beach Daily News, South Florida Business Journal, Memphis Business Journal, San Francisco Daily Journal, The Virginian-Pilot newspaper, Lawyers Weekly USA, Chief Executive Magazine, Chartered Financial Analyst Magazine, Mortgage Lending Compliance Alert, Small Business Times, Debtwire, and many others.

banking and financial services to render his opinion. This is sufficient, and thus LabCorp's suggestion that Coker is not an expert because he was not formally trained in "FACTA" is meritless.

LabCorp admits Coker has approximately eight years of experience working with credit card programs,[3] including experience setting up a credit card program with American Express. [ECF No. 144, pp. 8-9]. However, it once again tries to fault Coker because his experience predates FACTA's enactment. This argument again misses the mark because LabCorp does not and cannot point to anything demonstrating that the information Coker received from eight years of working with credit card programs before FACTA isn't just as pertinent after FACTA's enactment, let alone that his experience in the industry failed to prepare him to understand and opine on the facts at issue in this case. On the contrary, as LabCorp points out, Coker's work required that he reviewed credit card contracts, payment brand rules and policies, *i.e.*, information that supports his opinions here. LabCorp's contention that an expert needs work experience with the precise statute at issue in a litigation is not only unsupported, but it is belied by its own reliance on Joel Lisker, who ███████████████████████████████████████████████████████████████. *See* Lisker Dep. Excerpt at p.10:12-10:13. Coker's work experience provided a more than sufficient basis for him to be able to examine and opine on LabCorp's efforts, or lack thereof, to protect credit card expiration date information.

### 2. Non-Litigation Consulting Practice

Carrying on in the same vein, LabCorp argues that because Coker's experience with FACTA takes the form of consulting work for lawyers, he is not qualified to render his opinion. However, LabCorp does not explain why the Court should discount Coker's specific experience

---

[3] First National Bank (1968-1972), Southwest Bancshares (1974-1977), and First Federal Savings (1984-1985). [ECF No. 144, p. 8].

6

in cases involving FACTA simply because he gained that experience while consulting for attorneys. The need to protect credit card expiration date information, the sufficiency of those protections and the harm that can be caused when that information is not protected does not change based on who the expert opining on those issues happens to work for. LabCorp would have the Court ignore Coker's wealth of relevant experience – he has served as an expert in more than 50 FACTA cases – but LabCorp cannot state a single good reason why that experience should be ignored. Mr. Coker's consulting experience should be recognized for what it is – valuable knowledge gained studying cases which are similar to the case at bar. The fact that Coker was actually engaged so often to opine on these issues is a point in his favor, not against him.

3. Professional Memberships, Licenses and Certifications

While it is true that Coker does not hold any professional membership, certification, or license germane to FACTA compliance as LabCorp claims, LabCorp fails to identify the existence of any to be had concerning the subject matter at issue, nor does it show why they would affect Coker's qualification to render the opinions at issue. Moreover, once again, Coker is not being offered as a "FACTA" expert. Thus, even if any such credentials actually exist, Coker's opinion is not rendered less helpful or reliable simply because he does not possess them.

4. Publications

As it must, LabCorp concedes Coker is well published, writing 94 articles, including two on FACTA specifically. [ECF No. 144 at 10]. So instead, it just criticizes where he published. But LabCorp does not claim that Coker's writings demonstrate a misunderstanding or lack of familiarity with the issues in this case.

LabCorp also suggests that because Coker has written on issues relating to FACTA relating to his consulting work, his opinions are not valid. However, it is the content of Coker's writings that show that he is qualified as an expert, not where he chose to publish them. Further, LabCorp quotes a fragment of one of Coker's articles which, apparently successfully, predicts that if merchants fail to take "the relatively easy and inexpensive steps required to reprogram their IT systems so that they are in compliance with FACTA," additional lawsuits will ensue. [ECF No. 144, pp. 10-11]. Ironically, if LabCorp had relied on this opinion when it was published in 2009, LabCorp would not find itself defending this suit.[4]

Finally, and contrary to LabCorp's unsupported characterization of Coker's publications as "advertisements," his publication work has been validated by no less than the United States Court of Appeals for the Seventh Circuit, which relied on Coker for some of the same opinions he offers here concerning the need to truncate or mask the expiration dates on credit card transaction receipts, and the risk of identity theft and credit card fraud if that information is not protected:

> It's common in telephone and internet transactions for the consumer to be asked for an expiration date, and most systems will not allow the would-be customer to keep guessing at the date, as the guessing suggests that he may be an identity thief. Additional reasons for requiring deletion of the expiration date include that 'expiration dates combined with the last four or five digits of an account number can be used to bolster the credibility of a criminal who is making pretext calls to a card holder in order to learn other personal confidential financial information. Expiration dates are solicited by criminals in many e-mail phishing scams ..., are one of the personal confidential financial information items trafficked in by criminals ..., are described by Visa as a special security feature ..., [and] are one of the items contained in the magnetic stripe of a credit card, so it is useful to a criminal when creating a phony duplicate card.' **Don Coker**, 'Credit Card

---

[4] Of course, there is no reason to believe that LabCorp would have treated this article any differently than ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Expiration Dates and FACTA,' *HGExperts.com*, www.hgexperts.com/article.asp?id=6665.

*Redman v. Radioshack Corp.*, 768 F.3d 622, 626-27 (7th Cir. 2014) (bold/underscore added); *compare* Coker Report at pp.7-8, ¶2, pp.10-12, ¶10-¶14, p.19,¶36, and pp.23-24, ¶48.

### 5. Expert Witness Work

In its penultimate section attempting to attack Coker's qualifications, LabCorp admits that Coker has worked as an expert in over 50 FACTA cases, but attempts to criticize this work because he only testified in two of the cases. This omits all of the other testimonial work he's done (113 depositions, 31 times in court). (Coker Report at p.2, ¶5). Moreover, LabCorp does not state any principled basis for why being needed to give testimony on FACTA only infrequently justifies discounting the other substantial work and experience he did in those more than 50 FACTA cases. Also, LabCorp's "criticism" of Coker in this regard applies with greater force to its experts Ehuan and Stomberg, who have almost no testimonial experience.

LabCorp does not contend that Coker failed to do proper analysis the more than 50 FACTA cases he's done expert work in and, in the cases where he did testify, there is no evidence he gave inaccurate or poor testimony. To the contrary, his opinions were accepted into evidence in *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 213 (N.D. Ill. 2008), another FACTA case, over the defendant's objection. *Id.* at 213.

LabCorp claims his expert work shows him to be a "hired gun who will opine on anything," but it does not substantiate that wild accusation. The fact that Coker has been engaged on a number of topics reflects the length of his career, spanning decades. More telling is the fact that his "[l]itigation-related work is fairly evenly split between plaintiff and defense clients." (Coker Report at pp.2-3, ¶5). In any event, if total impartiality was required, few if any experts would be allowed to testify. *See United States v. Williams,* 81 F.3d 1434, 1441 (7th Cir.1996);

*see also* 4 J. Weinstein & M. Berger, Weinstein's Federal Evidence, § 702.06[8] (2d ed. 2000) ("There is no requirement under Rule 702 than an expert witness be unbiased. Few people are"). For this reason, "[w]ith few exceptions, it is the province of the jury to assess bias." *Rixey v. West Paces Ferry Hosp., Inc.*, 916 F.2d 608, 613 (11th Cir. 1990).

### 6. Knowledge of the Topics on Which He Seeks to Render Expert Opinion

In its last numbered section on Coker's qualifications, LabCorp belatedly tries to challenge the knowledge Coker used to generate his opinions; however, LabCorp's criticism appears to be limited to the inapposite argument that Coker is not qualified because he did not pass an arbitrary memory test about FACTA's contents that LabCorp's counsel administered at his deposition. See [ECF No. 144, p. 12]. LabCorp declares that Coker is not an expert because he failed to recite from memory such random details as the elements of FACTA liability beyond the printing of a non-compliant receipt, or the details of PCI DSS Standards. *Id.* LabCorp does not point to any part of Coker's actual opinion which misstates the requirements of FACTA or misapplies any of the facts in this case. In any event, once again, LabCorp is raising a red herring because Coker was not engaged to opine about the "requirements" of FACTA, which is a legal issue. He was engaged to rebut the opinions of LabCorp experts, particularly Joel Lisker regarding credit card expiration date information, and the risk of credit fraud and identity theft if it is not protected. Again, his opinions on that subject were extensively cited by the Seventh Circuit.

### B. Coker's Opinions are Reliable.

Mr. Coker's opinions are based on sufficient facts and data reliably applied because they have already been accepted elsewhere in part. They are further confirmed by LabCorp's PCI DSS compliance administrator and LabCorp's own expert on the subject, Joel Lisker, partially

agreed with them. As noted above, several of Coker's opinions here have already been validated by the Seventh Circuit, which favorably discussed them to explain the purpose and need for FACTA's prohibition against printing expiration dates on credit card transaction receipts:

> Additional reasons for requiring deletion of the expiration date include that 'expiration dates combined with the last four or five digits of an account number can be used to bolster the credibility of a criminal who is making pretext calls to a card holder in order to learn other personal confidential financial information. Expiration dates are solicited by criminals in many e-mail phishing scams ..., are one of the personal confidential financial information items trafficked in by criminals ..., are described by Visa as a special security feature ..., [and] are one of the items contained in the magnetic stripe of a credit card, so it is useful to a criminal when creating a phony duplicate card.' **Don Coker**, 'Credit Card Expiration Dates and FACTA,' HGExperts.com, www.hgexperts.com/article.asp?id=6665.

*Redman v. RadioShack Corp.*, 768 F.3d 622, 626-627 (7th Cir. 2014) (bold/underscore added).

LabCorp's Payment Card Industry (PCI) ████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████

Likewise, LabCorp's own expert, Joel Lisker, who has been paid on multiple occasions to testify that expiration date on receipts does not expose consumers to any risk of harm, ultimately agreed with Mr. Coker's conclusion about how exposing the expiration date can facilitate fraud, contradicting his own opinion in the process:

> Although Mr. Lisker, in his Declaration, opined that the expiration date on receipts does not expose consumers to any risk of harm, his deposition testimony belies this assertion. When asked by Plaintiffs' counsel if a thief who obtained both a monthly credit card statement (which would have the account number) and a receipt with an expiration date could use that information to commit fraud, Lisker agreed. Lisker Dep. at 60:13-61.2.

11

*Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 842, 847 (N.D. Ill. 2008).

In attempting to critique the reliability of Coker's opinions, LabCorp does not identify any flaw in his reasoning. Instead, it criticizes him for things that are not essential to his opinions and/or that he was not engaged to opine about, such as whether any LabCorp customer suffered identity theft or credit card fraud as a result of LabCorp's actions, or the degree to which revealing card expiration dates leads to identity theft and credit card fraud. Coker was not engaged to identify or study actual victims of actual identity theft or fraud. Again, his opinions go to explaining how exposing expiration date information creates *a greater risk* of those things and, as shown above, the Seventh Circuit validated those opinions, as did LabCorp's own PCI DSS compliance coordinator and its own expert Lisker (who contradicted himself in the process).

LabCorp also misrepresents the sufficiency and scope of the facts Coker relied on. For example, regarding Coker's opinion about the insufficiency of LabCorp's actions relative to its obligation to refrain from printing expiration dates on credit card receipts, LabCorp claims Coker "fails to identify or describe a *single* specific article, communication or notice that LabCorp [sic] (other than one communication purportedly sent from Paymentech in April 2010." [ECF No. 144 at p. 14]. This claim is false because Coker's report and deposition both discuss ▮

▮

▮

▮

████████████████████████████ and ECF No. 144-1 (Coker Dep.) at pp. 141:19-142:16 ("Emails in 2007 discussing FACTA requirements.")

Likewise, LabCorp claims that "Coker's opinion that LabCorp could taken undertaken [sic] efforts 'to ensure the security of sensitive cardholder information' is also unsupported by any facts or data." [ECF No. 144 at p. 14]. This is false because Coker expressly stated that "LabCorp could have simply reprogrammed its system to stop printing expiration dates" (Coker Report at p.17, ¶28), and that is ████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Mr. Coker relied on the testimony of Mr. Pyles. (Coker Report at p.17, ¶28 and p.18, ¶31 ("Mr. Pyles testified that…")

With regard to Coker's approach, LabCorp once again resorts to red herrings. For example, it criticizes him for not using any "scientific methodology" or "perform[ing] any studies." This is unnecessary, as expert testimony is not required to be based on science or the scientific study. *See United States v. Jennings*, 599 F.3d 1241, 1248 (11th Cir. 2010) ("For non-scientific expert testimony, the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. A district court may decide that non-scientific expert testimony is reliable based upon personal knowledge or experience."); *see also Maiz*, 253 F.3d at 669 (expert testimony admitted "based largely on [expert's] personal experience rather than verifiable testing or studies. …. Defendants' objections plainly go to the weight and sufficiency of [the] opinions rather than to their admissibility.")

Also, once again, LabCorp is being hypocritical because *none* of its experts applied any scientific methodology or conducted any studies either. Indeed, Lisker opined on what he

13

"thinks" is "possible" regarding the ability of a wrongdoer to use a credit card expiration date to facilitate identity theft or fraud. The difference of course is that unlike Coker, Lisker has not pointed to any federal appeals court that has endorsed his opinions and, as shown, Lisker contradicted himself under oath and agreed with Coker's opinions in part.

Finally, concerning the application of facts to the case, LabCorp's principal criticism is that Coker has been too consistent. Specifically, it complains that "most" of the opinions in his report have been part of the many reports he did in other FACTA cases, that some of his support material is a number of years old, and that he has not recently re-read some of the articles he cited for support. However, LabCorp does not cite anything to show that an expert's opinions on a single subject are unreliable unless they differ over time or rely on different material for the same conclusions. Nor would it make any sense to impose any requirement where, as shown, *in 2014* a federal appeals court validated several of the same opinions Mr. Coker is advancing here. *Redman*, 768 F.3d at 626-27. To be sure, LabCorp is free to raise these points on cross-examination and argue that they affect the weight to be given Coker's opinions, but they do not justify barring them.

**C.     Coker's Opinions are not Legal Conclusions**

Finally, LabCorp claims some of Coker's conclusions are impermissible "legal opinion" (like the opinions of its expert Dr. Stomberg), but this section of its motion is just a rehash of part of its pending Motion to Strike Plaintiff's Expert Designation and Report, filed June 4, 2015. As Plaintiff already explained in his response to that motion, the so-called "legal conclusions" LabCorp lists in its brief include statements of fact that simply mention FACTA. For example, LabCorp cites Coker's statement that "[a]pparently, [LabCorp's payment processing software] was programmed to violate FACTA because *it prints expiration dates on receipts*," that

14

LabCorp's employees are put on notice of the violation alleged here "every time they print a receipt," and that "LabCorp received notices about the requirements of FACTA...." [ECF No. 144, p.18] (italics added).

Coker's report is also proper rebuttal testimony to Ehuan's expert opinion testimony stating that LabCorp's compliance was "appropriate." Coker's opinion goes to underlying facts and issues on this, including rebutting Ehuan's report on the appropriateness of LabCorp's regulatory compliance efforts. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1112 (11th Cir. 2005) ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.") It would be inappropriate to allow Ehuan to opine that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ somehow excused it from compliance with FACTA, but deny Coker the ability to rebut that opinion with facts and explanation to showing LabCorp's conduct was not appropriate. *See, e.g., United States v. Lankford*, 955 F.2d 1545, 1552 (11th Cir. 1992) (reversing district court's exclusion of expert witness testimony related to willfulness because "[i]t is an abuse of discretion 'to exclude the otherwise admissible opinion of a party's expert on a critical issue, while allowing the opinion of his adversary's expert on the same issue.'")

Once again, this case is similar to *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 213 (N.D. Ill. 2008), a FACTA case in which Coker's expert opinion was accepted by the court. There, the defendant sought "to strike the Plaintiff's brief for introducing testimony from two experts [including Coker] regarding the alleged willfulness of [the defendant]'s FACTA violation *and* the likelihood of identity theft resulting from the alleged violation." *Id.* (emphasis

15

added). The Court found that, "Plaintiff appropriately introduced these experts in response to the expert affidavits submitted in support of United Retail's opposition brief." *Id.*

As it did in its reply in support of its motion to strike Coker, LabCorp will claim *Matthews* is different because in that case he explained why the defendant should have been well aware of its obligations under FACTA. [ECF No. 151 at 5]. But Coker does that here too: "There can be no doubt that LabCorp had ample warning that primary account numbers and expiration dates were subject to specific masking requirements." Coker Report at p.16, ¶27.

Also, LabCorp's attempt to distinguish Coker on this narrow ground is misplaced because, as the discussion from *Matthews* above shows, Coker's opinion in that case also devoted a considerable amount of attention to rebutting the defense expert's (Lisker's) opinions about the potential harm caused by FACTA violations. [ECF No. 151-2]. Similar to Coker's report here, the first sixteen paragraphs of his declaration in *Matthews* discussed Lisker's conclusions. (*Id.* at ¶1-¶16); *compare* Coker Report at pp.19-27, ¶35-¶57 ("Comments Specific to Mr. Lisker's Report"). Thus, just as in *Matthews*, Plaintiff has appropriately offered testimony from Coker to address issues raised by LabCorp, and his opinions on those issues are appropriate.

## CONCLUSION

For the reasons stated above, LabCorp's Motion *in limine* to Exclude the Export Testimony and Report of Don Coker [ECF No. 144] should be denied.

Respectfully submitted,

By: /s/ *Scott D. Owens*
Scott D. Owens, Esq.
Florida Bar No. 0597651
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive, Suite 235
Hollywood, Florida 33019

16

Telephone: 954-589-0588
Facsimile: 954-337-0666
scott@scottdowens.com

Bret L. Lusskin, Jr., Esq.
Florida Bar No. 28069)
BRET LUSSKIN, P.A.
20803 Biscayne Blvd., Suite 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

Michael S. Hilicki (*pro hac vice*)
Illinois Bar No. 6225170
KEOGH LAW, LTD
55 West Monroe Street
Suite 3390
Chicago, Illinois 60603
Telephone: (312) 726-1092
Facsimile: (312) 726-1093
mhilicki@keoghlaw.com

*Attorneys for Plaintiff and the putative Class*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 7, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date in some other authorized manner for those counsel or parties, if any, who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Scott D. Owens
Scott D. Owens, Esq.