UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-cv-61543-RLR

CHRISTOPHER LEGG, individually and on  )
behalf of all others similarly situated,  )
                                       )
      Plaintiff,  )
                                       )
v.  )
                                       )
LABORATORY CORPORATION OF  )
AMERICA HOLDINGS,  )
a Delaware corporation,  )
                                       )
      Defendant.  )

**PLAINTIFF'S RESPONSE TO LABCORP'S MOTION FOR SUMMARY JUDGMENT**

LabCorp's claim that Plaintiff lacks the "injury in fact" necessary for standing is contrary to Supreme Court authority, Eleventh Circuit authority, and all federal appellate courts to consider the issue in cases arising from a statutory violation of the plaintiff's personal rights. LabCorp's claim is also contrary to its admission that as a result of violating Plaintiff's right to not have his credit card expiration date exposed on his transaction receipt, Plaintiff took action to protect that information from further disclosure, which would have been unnecessary but for LabCorp's misconduct. Plaintiff's expert and LabCorp's own witnesses confirm the need for these measures. This motion should be denied.

I.      **Introduction**

Congress enacted the Fair Credit Reporting Act ("FCRA") in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (U.S. 2007), *citing* 15 U.S.C. §1681 and *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001). Congress passed FACTA in 2003 as an amendment to the FCRA to also help reduce identity theft. *Redman v. Radioshack Corp.*, 768

F.3d 622, 639 (7th Cir. 2014) ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.")

Despite the clear authority that FACTA was enacted to further protect consumer privacy and combat identity theft, LabCorp systematically violated FACTA's prohibition against printing expiration dates on credit and debit card transaction receipts for years, despite being made expressly aware ███████████████████████████████████████████████████

████████████████████████████████████. Then, when Plaintiff brought this lawsuit to stop this conduct and provide relief to the hundreds of thousands of persons subjected to it as Congress intended, LabCorp tried to derail the case by withholding key documents that prove the above facts. It was not until a few weeks before the end of discovery and after a number of its witnesses had been deposed that LabCorp produced the internal e-mails that prove ██████████████████████████████████████. Now, in an attempt to sidestep its liability, it brings a motion it could have filed at the start of the case based on a theory that contradicts the decisions of the Supreme Court, Eleventh Circuit and all other appellate courts to address the issue in the context of a statutory violation.

Because LabCorp seeks summary judgment, it has the burden of proving: (a) that the material facts are not in dispute, and (b) that those undisputed material facts entitle it to judgment as a matter of law. *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1258 (11th Cir. 2015). In determining whether LabCorp meets this burden, Plaintiff's evidence must be accepted as true, and all of the evidence must be construed in Plaintiff's favor. *Bischoff v. Osceola*, 222 F.3d 874, 878 and 882 (11th Cir. 2000) (citation omitted). LabCorp

cannot meet this burden here because the undisputed material facts establish that Plaintiff suffered an injury in fact in at least two ways, and thus that he has standing.[1]

## II.     The Undisputed Material Facts.

According to data from the Federal Trade Commission's 2012 Consumer Sentinel Network report, Florida ranks No. 1 for identity theft among the 50 states, with 361.3 complaints per 100,000 people. (Legg L.R. 56.1 Statement of Additional Facts ("Legg LR 56.1"), ¶1. That's 86 percent more than Georgia, which ranks a distant second. Also, nine of the top ten metro areas for identity theft are in Florida, according to the report. (*Id.*) First is the Miami area with 645.4 complaints per 100,000 people. (*Id.*) So problematic is identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, jointly set-up a free website (<http://www.annualcreditreport.com>) to comply with FACTA requirements and provide U.S. citizens with a means of monitoring their credit reports for possible identity theft. (*Id.*, ¶2)



At all relevant times,

(Plaintiff's LR 56.1 Statement of Additional Facts at ¶3). At all relevant times,

(*Id.*). Until about three weeks after Plaintiff filed this case in July 2014,

. (*Id.*).

---

[1] Standing also requires that the harm be fairly traceable to the defendant's actions, and that the court have the ability to redress the violation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). LabCorp does not distinctly argue these elements are lacking. Nor could it reasonably do so because the injury of violating Plaintiff's statutory rights and requiring him to take action to maintain and secure the receipt revealing his credit card expiration date are "fairly traceable" to LabCorp's printing of the receipt revealing that information, and the Court can remedy those harms with a favorable decision because Plaintiff will then be entitled to statutory damages.

Plaintiff visited a LabCorp patient service center in Hollywood Florida on July 3, 2014, he paid for services using his Visa card and, ████████████████████     ███████████ ████████████ generated a receipt for the transaction that revealed the expiration date of Plaintiff's Visa card. (Plaintiff's LR 56.1 Statement of Additional Facts at ¶4). As a result, Plaintiff took steps to protect the receipt from disclosure, including keeping the receipt instead of discarding it, and securing it in a file cabinet after he returned home. (*Id.*at ¶5). Plaintiff also filed this lawsuit to stop LabCorp from violating the law again. (*Id.*).

Plaintiff's rebuttal expert, Don Coker, explains that exposing the expiration date of Plaintiff's credit card on his receipt increases the risk of identity theft. (*Id.*at ¶6). At least one federal appeals court agrees with Mr. Coker's opinion. (*Id.*at ¶8).

Exposing the expiration date also increases the risk of credit card fraud because the expiration date is one piece of information a wrongdoer needs to make fraudulent purchases online. (*Id.*at ¶7). ████████████████████████████████████████████████████. (*Id.*). Indeed, ████████████████████████████████████████ ███████████████████. (*Id.*).

LabCorp's own expert, Joel Lisker, also confirmed that exposing the expiration date can facilitate credit card fraud, contradicting his own paid-for opinion on the matter. (*Id.*at ¶8). And once again, at least one federal appeals court agrees. (*Id.*).

**III.    Plaintiff Suffered an Injury In Fact; He Has Article III Standing.**

LabCorp contends that Plaintiff does not meet Article III's injury-in-fact requirement because it claims that violating its federal obligation to refrain from revealing Plaintiff's credit card expiration date on his transaction receipt does not cause any injury or harm. This argument fails for two reasons: (1) LabCorp injured Plaintiff by violating his personal statutory right to receive a credit card transaction receipt that did not reveal the expiration date of his credit card,

which is sufficient to confer standing; and (2) LabCorp also injured Plaintiff because its conduct required him to take action he would not have had to take but for LabCorp's violation, to protect his credit card information. Accordingly, as explained below, LabCorp cannot meet its burden of proving that that it is entitled to judgment as a matter of law on whether Plaintiff suffered an injury in fact, and its motion should be denied.

A. **Plaintiff Suffered an Injury in Fact because LabCorp Violated His Personal Statutory Rights under FACTA.**

The Supreme Court has long recognized that "the… injury required by Art. III may exist *solely* by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992) (italics added), *citing Warth v. Seldin*, 422 U.S. 490, 500 (1975); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982). Congress need only "identify the injury it seeks to vindicate and relate the injury to the class of persons entitled to bring suit" so as to preclude mere "citizen suits to vindicate the public's nonconcrete interest in the proper administration of the laws." *Massachusetts v. EPA*, 549 U.S. 497, 516-17 (2007), *citing Lujan*, 504 U.S. at 580.

That is exactly what Congress did with FACTA. It identified the injuries it sought to vindicate, finding that the inclusion of certain credit and debit card information on transaction receipts contributed to identity theft and credit card fraud. *See Redman*, 768 F.3d at 639 ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.") Then it prohibited merchants from revealing the full card number or card expiration date of any person's credit or debit card on the transaction printed at the point of sale (15 U.S.C. §1681c(g)), and granted any person for whom this right was violated the ability to sue for statutory damages, injunctive relief and attorneys' fees and costs if the violation was willful. 15 U.S.C. §1681n.

Plaintiff is in this class of persons because LabCorp admits it printed a transaction receipt that revealed the expiration date of his credit card, contrary to express Congressional intent.

Consistent with the Supreme Court authority discussed above, an unbroken line of federal appeals decisions recognize that the violation of a personal statutory right is a harm sufficient to confer Article III standing. *See Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015), *quoting Warth*, 422 U.S. at 500; *see also Beaudry v. TeleCheck Services*, Inc., 579 F.3d 702, 707 (6th Cir. 2009) (same); *Robins v. Spokeo, Inc.*, 742 F.3d 409, 413-14 (9th Cir. 2014) (same); *Hammer v. Sam's East, Inc.*, 754 F.3d 492, 498 (8th Cir. 2014) ("the actual-injury requirement may be satisfied *solely* by the invasion of a legal right that Congress *created*. This is not a novel principle within the law of standing.")

*Beaudry*, *Spokeo* and *Hammer* are particularly instructive because they analyze the issue in the context of the statute at issue here, the FCRA. As *Spokeo* and *Beaudry* point out, there are:

> two constitutional limitations on congressional power to confer standing. First, a plaintiff 'must be 'among the injured,' in the sense that she alleges the defendants violated *her* statutory rights.' *Id*. Second, the statutory right at issue must protect against 'individual, rather than collective, harm.'

*Spokeo*, 742 F.3d at 413, *quoting Beaudry*, 579 F.3d at 707.

Plaintiff easily meets both criteria. First, he was "among the injured" because LabCorp violated *his* statutory right to receive a receipt that did not reveal the expiration date of his credit card. *Spokeo*, 742 F.3d at 413 ("he alleges that Spokeo violated *his* statutory rights, not just the statutory rights of other people."); *Beaudry*, 579 F.3d at 707 ("she alleges the defendants violated *her* statutory rights.") Second, the statutory right protects against individual rather than collective harm because it is Plaintiff's personal credit card information that was revealed. *See Spokeo*, 742 F.3d at 413 ("[Plaintiff]'s personal interests in the handling of his credit information are

individualized rather than collective."), *citing Lujan*, 504 U.S. at 578. This analysis of Plaintiff's

claim mirrors *Hammer*'s examination of the injury-in-fact inquiry for a violation of FACTA:

> Article III places meaningful limitations on the types of interests that Congress
> may define as judicially enforceable rights. First, the party seeking review must
> 'be himself among the injured' in the sense that he alleges that defendants
> violated *his* statutory rights. *See Sierra Club v. Morton*, 405 U.S. 727, 735
> [parallel citations] (1972); *see also Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th
> Cir. 2000). Such is the case here. Appellants allege that it was their own receipts
> that contain numbers printed in violation of 15 U.S.C. § 1681c(g)(1). Second,
> 'Congress may empower individuals to sue based only on 'personal and
> individual[ized]' injuries.' *In re Carter*, 553 F.3d 979, 989 (6th Cir. 2009)
> (quoting *Lujan*, 504 U.S. at 560 n.1 (alteration in original)). Congress may not,
> for example, permit individuals to enforce 'an abstract, self-contained,
> noninstrumental 'right' to have the Executive observe the procedures required by
> law.' *Lujan*, 504 U.S. at 573. Again, this limitation poses no obstacle here. The
> FCRA liability provision states that '[a]ny person who willfully fails to comply
> with any requirement imposed under this subchapter with respect to any consumer
> is liable *to that consumer*.' 15 U.S.C. § 1681n(a)(1)(A) (emphasis added). Hence,
> the liability provision does not authorize suits by members of the public at large,
> but creates a sufficient nexus between the individual plaintiff and the legal
> violation to avoid Article III concerns.

*Hammer*, 754 F.3d at 499. Accordingly, the violation of Plaintiff's personal rights under FACTA

is itself an injury in fact, and thus he has standing.

It is worth noting that the Supreme Court has at least twice examined statutory damage

claims under the FCRA, and raised no concern about whether subject matter jurisdiction exists to

decide such a claim. *See Safeco*, 551 U.S. 47 (2007) and *TRW Inc. v. Andrews*, 534 U.S. 19

(2001) ("at least some of the liability she sought to enforce arose *when the violations*

*occurred…*") (italics added).[2] Courts in this district have followed this authority and ruled:

---

[2] Although the Court did not examine subject matter jurisdiction *per se* and was addressing a
prior version of §1681n, the Court held a claim for punitive damages can arise even without
actual damages, which supports Plaintiff's position that additional harm beyond the statutory
violation is not needed. *See TRW* 534 U.S. at 352-353 ("Punitive damages, which Andrews
sought in this case, could presumably be awarded *at the moment of TRW's alleged wrongdoing*,
even if 'actual damages' did not accrue at that time. On Andrews' theory, then, at least some of
the liability she sought to enforce arose when the violations occurred.") (italics added)

> [O]ne suffers an "injury in fact" for Article III purposes when there is a violation of a legally protected interest. *See, e.g., Vt. Agency of Natural Res. v. United States,* 529 U.S 765, 773 (2000) ("The interest must consist of obtaining compensation for, or preventing, the violation of a *legally protected right.*" (emphasis added)). "The ... *injury* required by Art. III may exist *solely* by virtue of statutes creating legal rights, the invasion of which *creates standing.*" *Lujan,* 504 U.S. at 578 (emphasis added) (quoting *Warth v. Seldin,* 422 U.S. 490, 500 (1975) (internal quotations omitted)). Congress has provided debtors with the right to be free of certain forms of harassing communications and has created the legal right to obtain statutory damages.

*Jordan v. ER Solutions, Inc.*, 900 F.Supp.2d 1323, 1326 (S.D. Fla. 2012) (emphasis in original).[3]

In short, Mr. Legg suffered an Article III injury as a result of LabCorp's violation of his personal statutory rights. This should end the analysis.

### B.   Supreme Court and Eleventh Circuit Authority Foreclose LabCorp's Claim that Plaintiff Must Prove Additional Harm Beyond LabCorp's Violation of His Personal Statutory Rights.

Despite the foregoing, LabCorp suggests this Court should disregard the on-point decisions in *Beaudry*, *Spokeo* and *Hammer*, and instead rule that something more than a personal violation of a statutory right is needed to create an injury in fact. Specifically, it claims Plaintiff must also show harm beyond the violation, such as damages, actual identity theft or credit card fraud. It also suggests that this is an "open question" because the Supreme Court recently granted *certiorari* in *Spokeo*, and because allegedly the Eleventh Circuit hasn't decided the issue. However, LabCorp misstates the law because current Supreme Court and Eleventh Circuit authority foreclose its argument.

Although the Supreme Court recently granted *certiorari* in *Spokeo*, existing Supreme Court authority already establishes that a violation of a personal statutory right alone is sufficient

---

[3] *See also Murray v. GMAC Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages *without proof of injury*.") (italics added).

harm to confer standing, even if the plaintiff cannot show any additional harm beyond the violation:

> A tester who has been the object of a misrepresentation made unlawful under §804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. That the tester may have approached the real estate agent *fully expecting* that he would receive false information, and *without any intention* of buying or renting a home, does not negate the simple fact of injury.

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) (italics added). Plainly, a person who deals with the defendant fully expecting the defendant to tell a lie in violation of the person's statutory rights, and who has no intention of doing any business with the defendant in the first place, has suffered no harm beyond the statutory violation. Accordingly, if the plaintiff in *Havens Realty* has standing, then Mr. Legg does not need to prove additional harm either.

The granting of *certiorari* in *Spokeo* does not alter this landscape. *See Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1299 (11th Cir. 2007) (vacating a stay because "[t]he grant of certiorari on an issue does not suggest a view on the merits. We don't know how the Supreme Court is going to decide the issues on which it has granted.") The decision in *Spokeo* may very well leave the law unchanged, because the Supreme Court may just affirm the Ninth Circuit's decision or decline to decide the matter, which is what the Court did the last time it agreed to hear this issue. *See Hammer*, 754 F.3d at 506-507 (dissenting op.) Thus, for now, *Havens Realty* is the law of the land and defeats LabCorp's argument.

Eleventh Circuit authority also defeats LabCorp's argument. Contrary to LabCorp's claim that the Eleventh Circuit hasn't decided whether additional harm beyond the violation of personal statutory right is needed for standing, the court already followed *Havens Realty* twice. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1330-31 (11th Cir. 2013) ("The Supreme Court admonished '[t]hat the tester may have approached the real estate agent fully

expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury.'"); *see also Watts v. Boyd Properties*, 758 F.2d 1482, 1485 (11th Cir. 1985) (same). Thus, the Eleventh Circuit has already repeatedly confirmed that a person has standing to sue for the violation of a statutory right, even if the person did not suffer any additional harm beyond the violation.

LabCorp does not address *Havens Realty*, *Marod Supermarkets* or *Watts*, and it does not address Plaintiff's other authorities in any detail, except for one. It claims *Palm Beach Golf* is distinguishable because it found that the plaintiff suffered harm beyond the statutory violation when the plaintiff's phone line was tied up for a few moments during the time that the defendant sent the plaintiff a junk fax. *See Palm Beach Golf. See* 781 F.3d at 1251. However, *Palm Beach Golf* did not hold that standing requires proof of additional harm beyond the violation of a personal statutory right. To the contrary, it quotes the Supreme Court's holding in *Warth v. Seldin*, echoed in *Beaudry*, *Robins* and *Hammer*, that the violation of a statutory right can confer standing. *Palm Beach Golf*, 781 F.3d at 1251 ("[t]he actual or threatened injury required by Art[icle] III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'"), *quoting Warth*, 422 U.S. at 500. In any event, *Palm Beach Golf* does not address the Supreme Court's decision in *Havens Realty*, or the court's own decisions in *Marod Supermarkets* and *Watts*. As shown, those decisions squarely provide that the violation of the personal statutory right, standing alone, is sufficient harm for standing.

Finally, despite the controlling and other authorities discussed above, LabCorp claims there is a "split" in the federal courts on whether additional harm beyond the statutory violation is needed to establish standing. There is no split of authority on this issue. Again, every appellate court to decide it, including the Eleventh Circuit, rejected LabCorp's argument. LabCorp is

relying on a few outlier district court decisions (from outside this circuit no less), which are not authoritative. *Van Straaten v. Shell Oil Prods. Co. LLC*, 678 F.3d 486, 490 (7th Cir. 2002) ("decisions of district courts are not authoritative even within the rendering district.") LabCorp also cites "data breach" cases that did not involve a violation of a personal statutory right, and thus which are plainly inapt. *See* ECF No. 142 at pg. 6, fn. 19, *citing*, *e.g.*, *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011) (alleging no statutory violation, and only a "hypothetical future injury.") None of the decisions LabCorp cites address *Beaudry*, *Spokeo*, *Hammer*, or the binding authority in *Havens Realty*, *Palm Beach Golf*, *Marod Supermarkets* or *Watts*.[4] As shown, these decisions, which are controlling, establish that LabCorp's violation of Plaintiff's personal statutory rights under FACTA is sufficient to establish an injury in fact.

C.   **Plaintiff Suffered Additional Harm Beyond the Violation of His Personal Statutory Rights.**

Even if Plaintiff needs to show additional harm beyond the violation of his personal statutory FACTA rights, he has done so. LabCorp's violation forced Plaintiff to take action to protect the card information LabCorp illegally printed on his receipt from falling into the hands of a potential wrongdoer. LabCorp admits these actions included taking care to retain the receipt instead of simply discarding it, and placing it under "lock and key" at home. (ECF No. 142 at 6).

These actions were necessitated by the potential for identity theft or credit card fraud that would not have existed but for LabCorp printing his card expiration date on the receipt. Plaintiff's rebuttal expert, Don Coker, opined that exposing Plaintiff's card expiration date on the receipt allows a wrongdoer who gets ahold of the receipt to use that information to commit

---

[4] At least one of the decisions is also plainly distinguishable because in it the plaintiff did not plead misconduct by the defendant. *See Wersal v. LivingSocial, Inc.*, 2013 U.S. Dist. LEXIS 104727 at *6 (D. Minn. July 26, 2013) ("The failure to plead that LivingSocial or Kafe 421 enforced the allegedly improper term of expiration in the voucher is fatal to all of Wersal's claims.")

identity theft. (*See* Plaintiff's LR 56.1 Statement of Additional Facts at ¶7). At least one federal

appeals Court agrees with him:

> Additional reasons for requiring deletion of the expiration date include that 'expiration dates combined with the last four or five digits of an account number can be used to bolster the credibility of a criminal who is making pretext calls to a card holder in order to learn other personal confidential financial information. Expiration dates are solicited by criminals in many e-mail phishing scams ..., are one of the personal confidential financial information items trafficked in by criminals ..., are described by Visa as a special security feature ..., [and] are one of the items contained in the magnetic stripe of a credit card, so it is useful to a criminal when creating a phony duplicate card.' Don Coker, 'Credit Card Expiration Dates and FACTA,' *HGExperts.com*, www.hgexperts.com/article.asp?id=6665.

*Redman*, 768 F.3d at 626-27.

Exposing the expiration date can also lead to credit card fraud. If the wrongdoer has other

needed information (such as the card account number), a wrongdoer armed with the expiration

date can make fraudulent purchases by phone or online. *See Id.* at 626 ("It's common in

telephone and internet transactions for the consumer to be asked for an expiration date, and most

systems will not allow the would-be customer to keep guessing at the date, as the guessing

suggests that he may be an identity thief.") ███████████████

███████████████████████████████████████

███████████████████ (*See* Plaintiff's LR 56.1 Statement of Additional

Facts at ¶7). ████████████████████████████

██████████████ (*Id.*)

LabCorp's own expert also confirmed that the expiration date can be used to facilitate

fraud, contradicting his paid-for opinion that there is no risk of harm:

> Although Mr. Lisker, in his Declaration, opined that the expiration date on receipts does not expose consumers to any risk of harm, his deposition testimony belies this assertion. When asked by Plaintiffs' counsel if a thief who obtained both a monthly credit card statement (which would have the account number) and

a receipt with an expiration date could use that information to commit fraud, Lisker agreed. Lisker Dep. at 60:13 -- 61.2.

*Cicilline v. Jewel Food Stores, Inc.*, 542 F.Supp.2d 842, 847 (N.D. Ill. 2008).

Despite the federal appellate court's agreement with Plaintiff's expert and the admissions of LabCorp's own employee and paid expert, LabCorp disputes that exposing Plaintiff's credit card information creates any risk of harm. But it has no admissible evidence for its position. It claims "experts" in the field "agree" there is no risk of harm from exposing the expiration date, but that claim is based on precatory language in a statute, which is inadmissible hearsay. LabCorp does not identify the so-called experts, let alone prove any such agreement, or prove the alleged agreement is universal. LabCorp also cites its paid expert but, as shown above, Mr. Lisker admits the expiration date can be used in conjunction with other information to commit credit card fraud.

LabCorp claims Plaintiff swore the only "harm" he suffered was the violation of his personal statutory rights under FACTA, but this misstates the record. LabCorp did not ask Plaintiff what "harm" he suffered. It asked him what his "damages" were. Damages are a form of monetary loss. *See Juror 157 v. Corporate Defendant*, 710 F.Supp. 324, 325 (M.D. Fla. 1989) ("'damages' is a term of art used to describe legal remedies as distinguished from equitable remedies.") Plaintiff does not dispute that he cannot quantify his injury in monetary terms. But he doesn't need to because FACTA permits him to recover statutory damages in lieu of actual damages. *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009) ("statutory damages may be used in cases where no actual damages were incurred."); *Crabill v. Trans Union, LLC*, 259 F.3d 662, 664-66 (7th Cir. 2001) ("The award of statutory damages could also be thought a form of bounty system, and Congress is permitted to create legally

enforceable bounty systems for assistance in enforcing federal laws, provided the bounty is a reward for redressing an injury of some sort.")[5]

Article III standing does not require monetary loss. *See Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 154 (1970) (non-economic values can confer standing); *see also Glassroth v. Moore*, 335 F.3d 1282, 1292 (11th Cir. 2003). In *Glassroth*, the Eleventh Circuit found that the plaintiffs, both lawyers, had standing to sue for the removal of a religious monument from a public building because its presence prompted them to take steps to avoid entering the building so they didn't have to see it. *Id.* Likewise, as noted, LabCorp's violation of Mr. Legg's FACTA rights prompted him to take steps to protect his receipt, to prevent disclosure of the credit card information LabCorp wrongfully printed on it.

LabCorp claims the mere risk of *future* harm is not a sufficient injury to confer standing, but Plaintiff does not claim it is. He does not suggest that the injury he suffered beyond the statutory violation stems from potential future harm. Again, the additional harm he suffered was that he had to take the trouble to maintain and secure the LabCorp receipt from further disclosure (to avoid the potential risk of identity theft or credit card fraud). The time and trouble of taking these efforts actually occurred; they are not a hypothetical.

Finally, this injury is also sufficient to confer standing because, as the Eleventh Circuit recognized in *Palm Beach Golf*, the mere inconvenience of a phone line being occupied for a few moments by a junk fax sender is an injury sufficient to confer standing. *See* 781 F.3d at 1251; *see*

---

[5] Courts have long vindicated invasions of legal rights through statutory damages. *See T. Sedgwick*, A Treatise on the Measure of Damages 571 (1847) ("there is a large class of cases where the legislature has endeavored to put a stop to all inquiry into the actual damages by fixing an arbitrary sum as the measure of relief."); *see also Crabill*, 259 F.3d at 665 ("Many statutes, notably consumer-protection statutes, authorize the award of damages (called 'statutory damages') for violations that cause so little measurable injury that the cost of proving up damages would exceed the damages themselves, making the right to sue nugatory.' The EFTA's damages provisions is a valid enforcement mechanism.")

*also Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351 (11th Cir. 2009) ("The Supreme Court has rejected the argument that an injury must be 'significant'; a small injury, 'an identifiable trifle,' is sufficient to confer standing."), *citing United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689, n.14 (1973). Plaintiff suffered a greater imposition because, unlike here, the junk fax in *Palm Beach* did not require the plaintiff to do anything. In short, even if establishing standing requires Plaintiff to prove additional harm beyond LabCorp's violation of his personal statutory rights, he has done so. For this additional reason, LabCorp cannot meet its burden of proof, and its motion should be denied.

**IV.    LabCorp Cannot Get a Judgment on the Merits for an Alleged Lack of Standing**

LabCorp's motion is procedurally improper because it seeks a judgment under Federal Rule 56 based on a challenge to Plaintiff's Article III standing. If Plaintiff lacks Article III standing, then Court does not have subject jurisdiction to issue any judgment against his claims, and all of the orders in the case would be a nullity. *See Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (in the absence of federal jurisdiction, "the district court's entry of summary judgment was a nullity.") In other words, if Plaintiff lacks standing, then LabCorp cannot get a judgment on the merits under Rule 56, the case must be dismissed without prejudice, and Plaintiff would be free to re-file this action in state court.

**V.    There Is No Reason to Stay the Case Pending the *Spokeo* Appeal.**

LabCorp asserts it would not object to an indefinite stay pending the Supreme Court's decision in *Spokeo*, but no one has moved for a stay, a stay would prejudice Plaintiff and the class, LabCorp has not and cannot demonstrate a compelling reason to impose a stay, and the Eleventh Circuit frowns on granting stays based on the Supreme Court granting *certiorari* in a different case.

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997), *citing Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. Thus, where a party seeks to stay a case pending the outcome of another, that party has the burden to establish that a stay will serve the interests of judicial economy. *Id* at 254 (factoring the "economy of time and effort for [the court], for counsel, and for litigants.") LabCorp does not and cannot meet this burden here because whatever the ruling in *Spokeo*, it will not be dispositive of this case. As shown, Plaintiff suffered an injury beyond the violation of his personal statutory rights, and thus this case should be resolved on the merits regardless of the outcome of *Spokeo*.

In addition, a stay would unduly delay the resolution of Plaintiff's and the class members' claims. LabCorp admits *Spokeo* will not be decided any sooner than the Court's next term, which does not begin until October, after the trial date for this case. (ECF No. 142 at p. 12). Thus, contrary to LabCorp's claim a stay would only last "a matter of months," that would be the minimum, and then only if the Court hears argument and decides the case at the term's outset. But the Court may not render a decision until the end of its term in the summer of 2016. Indeed, the Court may not decide the matter at all because again, the last time the Court took up this same issue, the Court withdrew its grant of *certiorari* at the end of the term, after briefing and argument. *See Hammer*, 754 F.3d at 506-507 (dissenting op.) So a stay pending *Spokeo* could last a year, and provide no decision.

Likewise, LabCorp's claim that there is no risk of evidence being destroyed during a stay given the status of discovery ignores the amnesia its witnesses exhibited in their depositions, LabCorp's attempt to withhold key evidence proving it knew it was violating FACTA ▓▓▓▓▓

████, and the fact that LabCorp will need to produce originals of documents for trial, as well as updated class member contact or related information to administer class notice and the distribution of any recovery. This case is close to being finished and a stay at this point would unduly prejudice the class.

LabCorp's only reason for suggesting a stay is that it has nothing to lose from the delay. The current law of the land and the Eleventh Circuit is against it on the standing issue, and its actions plainly establish a willful violation of its FACTA obligations here. Accordingly, on top of being pointless, prejudicial and potentially lengthy, a stay serves no legitimate purpose.

In any event, LabCorp's mere hope that the Supreme Court will overrule binding Supreme Court and Eleventh Circuit authority is not a sufficient reason to grant a stay. *See Schwab*, 507 F.3d at 1299 (vacating a stay); *Gissendaner v. Ga. Dep't of Corr.*, 779 F.3d 1275, 1284 (11th Cir. 2015) ("Our decision in Schwab is the latest in a long line of cases refusing to assign precedential significance to grants of certiorari."); *see also* Order, *Patterson v. Capital Management Services*, 12-cv-1061 (N.D. Ill. June 5, 2012), at p.2, attached as Exhibit 1 (denying motion to stay case pending Supreme Court's ruling in *First American Financial Corp. v. Edwards*, No. 10-708 [the prior Supreme Court case that raised "no injury" argument in 2010], because "there is standing under current law. If the Supreme Court's decision in *Edwards* provides some reason to reconsider the existence of standing in this case, the court may reconsider the issue.") (emphasis added).

Because the current state of the law is clear, other courts have denied motions to stay pending *Spokeo*. *See Speer v. Whole Food Market Group, Inc.*, No. 14-cv-3035, 2015 U.S. Dist. LEXIS 57783 at *2 (M.D. Fla. April 29, 2015) ("The Court concludes, therefore, consistent with established Eleventh Circuit precedent that a grant of certiorari by the Supreme Court does not

change the law[2] and does not constitute new law, that a stay of these proceedings to await a decision from the Supreme Court in Spokeo is not warranted."); and *see* Order, *Dreher v. Experian Info. Solutions*, No. 11-cv-624 (E.D. Va. April 30, 2015) (denying motion to stay pending *Spokeo* in a case brought under the FCRA), attached as <u>Exhibit 2</u>. There is no reason for a different result here.

## V.      Conclusion

LabCorp cannot meet its burden of proving that it is entitled to judgment as a matter of law, there is no basis for staying the case, and thus LabCorp's its motion should be denied.


Respectfully Submitted,

SCOTT D. OWENS, Esq.
Patrick C. Crotty, Esq.
*Attorney for Plaintiff*
3800 S. Ocean Drive, Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com
patrick@scottdownes.com

By:      /s/ Patrick Crotty_____
         Patrick C. Crotty, Esq.
         Florida Bar No. 0108541

BRET L. LUSSKIN, JR., Esq.
*Attorney for Plaintiff*
20803 Biscayne Blvd.
Suite 302
Aventura, FL 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

MICHAEL S. HILICKI, Esq. (*pro hac vice*)
*Attorney for Plaintiff*
55 W. Monroe Street
Suite 3390

Chicago, IL 60603
Tel: 312-726-1092
mhilicki@keoghlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 1, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will be served on all parties and counsel of record via the CM/ECF system.

By: /s/ Patrick Crotty
Patrick C. Crotty, Esq.