No. 14-61543-CIV-ROSENBERG/BRANNON

# In the United States District Court
# For the Southern District of Florida

CHRISTOPHER W. LEGG, on behalf of himself and others similarly situated,

*Plaintiff*,

v.

LABORATORY CORPORATION OF AMERICA HOLDINGS,

*Defendant.*

## PLAINTIFF'S MOTION FOR PRELIMINARY
## APPROVAL OF CLASS ACTION SETTLEMENT

Scott D. Owens, Esq.
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive, Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

Bret L. Lusskin, Esq.
20803 Biscayne Blvd., Suite 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

Michael S. Hilicki, Esq.
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.374.3403 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
mhilicki@KeoghLaw.com
www.KeoghLaw.com

*Attorneys for Plaintiff*

October 26, 2015

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

I.    SUMMARY OF THE LITIGATION, MEDIATION AND SETTLEMENT ..............2

II.   SUMMARY OF THE PROPOSED SETTLEMENT....................................4

    A.  Class Definition ..............................................................4

    B.  Structure of the Settlement Amount ..............................4

    C.  Individual Class Member Benefits..................................5

    D.  Additional Relief............................................................5

    E.  Compensation for the Class Representative ..................5

    F.  Payment of Attorneys' Fees............................................5

    G.  Release ..........................................................................5

III.  THE PROPOSED SETTLEMENT CLASS
    SHOULD BE CERTIFIED..................................................6

    A.  The Numerosity Element Is Satisfied ............................7

    B.  The Commonality Element Is Satisfied ..........................7

    C.  Plaintiff's Claims Are Typical of the Claims of the Class....................8

    D.  The Adequate Representation Element Is Satisfied........9

    E.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)...........10

IV.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL ..........13

V.    THE PROPOSED SETTLEMENT
    WARRANTS PRELIMINARY APPROVAL.............................14

VI.   THE PROPOSED CLASS NOTICE SHOULD BE APPROVED..............................18

VII.  THE MATTER SHOULD BE SET FOR A FAIRNESS HEARING ........................20

VIII. DEFENDANT DOES NOT OBJECT TO THE RELIEF REQUESTED ..................20

IX.   SUGGESTED SCHEDULE ..................................................20

X.    CONCLUSION..................................................................21

CERTIFICATE OF SERVICE ..............................................................22

## INTRODUCTION

Plaintiff respectfully moves the Court for preliminary approval of the nationwide class action settlement ("Settlement") reached between Plaintiff Christopher W. Legg ("Plaintiff" or "Legg") and Defendant Laboratory Corporation of America Holdings ("LabCorp"). The proposed Settlement would resolve all claims in the above-entitled action. This proposed class action alleges that LabCorp systematically printed debit and credit card transaction receipts that revealed the expiration dates of cards used in the transaction, in willful violation of the Fair and Accurate Credit Transaction Act, 15 U.S.C. §1681c(g)(1) (FACTA). LabCorp vigorously denies these allegations, and the litigation has been hard-fought.

Nevertheless, the Parties discussed the prospect of settling the case on several occasions after the denial of LabCorp's motion to dismiss and throughout the proceedings, including two full days of mediation before a private, third-party mediator in March and July 2015, as well as additional communications through the mediator between mediation sessions. Finally, after the production and analysis of approximately forty-six thousand pages of documents, the taking of approximately twenty depositions, including four expert depositions, and the briefing and a hearing on Plaintiff's motion for class certification, LabCorp's motion for summary judgment and the parties' respective *Daubert* and related motions, in addition to the two full days of mediation, the parties reached this proposed settlement. A true and accurate copy of the Settlement Agreement and Release ("Agreement") is attached hereto as *Appendix 1*.

Under the Agreement, LabCorp will pay Eleven Million Dollars ($11,000,000.00) to a Settlement Fund. The Settlement Fund will be divided *pro rata* among all class members who submit a timely claim, after payment of the costs of notice and administration and the approved fee and class representative incentive awards. If the Settlement is approved and consummated,

Plaintiff's counsel estimates that each class member who submits a timely claim will receive approximately $200 and no money will revert back to LabCorp.

All told, this settlement provides the class with a significant portion of the statutory damages available for a willful violation of FACTA. In addition, as a direct result of the lawsuit, LabCorp has brought its credit and debit card transaction receipts into compliance with FACTA. Given the hurdles facing the Class in this litigation and the difficulty of proving willfulness, the results achieved are outstanding. Indeed, counsel believes this settlement is the largest cash settlement recovered in a FACTA case.

Plaintiff therefore moves the Court to: (a) conditionally certify the Settlement Class; (b) appoint Plaintiff as class representative; (c) appoint Scott D. Owens of Scott Owens, P.A., Bret L. Lusskin of Bret L. Lusskin, Esq., and Michael S. Hilicki of Keogh Law, Ltd. as class counsel, (d) enter an order preliminarily approving the Settlement and plan for giving notice of it to the class, and setting this matter for a fairness hearing; and (e) grant such additional relief as deemed just.

## I. SUMMARY OF THE LITIGATION, MEDIATION AND SETTLEMENT

FACTA aims to help reduce identity theft by requiring merchants to eliminate certain personal financial information from credit and debit card receipts. *Redman v. Radioshack Corp.,* 768 F.3d 622, 639 (7th Cir. 2014) ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.") To encourage private litigants to enforce FACTA's requirements, Congress incorporated FACTA into the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ("FCRA"), which entitles a successful plaintiff to statutory damages costs and attorneys' fees for any "willful" violation of the law. *See Harris v. Mexican Specialty Foods, Inc.,* 564 F.3d 1301, 1306 1307 (11th Cir. 2009), *citing* 15 U.S.C. §1681n(a)(l)(A), and (2).

2

Consistent with this intent, Plaintiff brought this action to resolve LabCorp's alleged systematic violation of FACTA's prohibition against printing credit and debit card expiration date information on transaction receipts. [**DE 17**].

The litigation has been hard fought throughout. On August 25, 2014, Plaintiff filed his First Amended Class Action Complaint against LabCorp. [**DE 17**]. On September 11, 2014, LabCorp moved to dismiss. [**DE 20**]. On October 23, 2014, after full briefing and a hearing, the Court denied the motion. [**DE 33, 34**].

Extensive discovery ensued. In addition to written discovery, LabCorp produced more than 45,000 pages of documents, and the parties briefed and argued several motions for resolution of discovery issues before Magistrate Judge Brannon. [**DE 76, 100, 123**]. Because the claims at issue require Plaintiff to prove that LabCorp "willfully" violated the law, and because LabCorp identified numerous potential witnesses, the parties took sixteen fact depositions and four expert depositions.

On March 11, 2015, the parties attended an initial mediation session before a private, third party mediator, Professor Eric Green, in Washington D.C.[1] The parties did not reach a settlement at that time, but discussed matters which would advance their ability to engage in meaningful

---

[1] Professor Eric Green is a principal of Resolutions, LLC. Professor Green is an ADR pioneer, co-founding two prominent ADR firms in the U.S. (including Endispute, which is now part of JAMS), and playing an instrumental role in assisting in the establishment of the Center for Public Resources (now the International Institute for Conflict Prevention and Resolution) in New York, CEDR in London and the mediation program in Hong Kong. He specializes in mediating and arbitrating complex legally-intensive multi-party cases including securities, financial, intellectual property, anti-trust, professional negligence, construction, product liability, mass tort, and all types of class actions. In August 2014, Professor Green was appointed the Monitor for the $7 billion Consumer Relief portion of the RMBS settlement between the DOJ, six states and Bank of America. He has served as a private and court-appointed mediator and special master in thousands of cases, including the Enron securities class action, Visa/MasterCard anti-trust cases, U.S. v. Microsoft, and many of the RMBS cases arising out of the 2005-2009 financial crisis.

settlement negotiations. After that, the negotiations continued through Professor Green by way of a number of telephone calls as the case progressed.

On April 9, 2015, Plaintiff moved for class certification. **[DE 65]**. On June 4, 2015, LabCorp moved to strike Plaintiff's expert. **[DE 97]**. On July 1, 2015, the parties each moved for summary judgment, and the parties each moved to bar the admission of one-another's experts under *Daubert*. **[DE 140, 142, 144, 147]**.

On July 13, 2015, the Court held a hearing on Plaintiff's motion for class certification, LabCorp's motion for summary judgment, the parties' *Daubert* motions, and a number of related motions. **[DE 185]**. At the end of the hearing, the Court took all motions under advisement.

On July 15, 2015, the parties attended a second full-day mediation before Professor Green, this time at his office in Boston. As a result of this mediation, the parties reached a preliminary settlement. **[DE 189]**. After that, the parties spent over a month negotiating the final terms of the agreement and drafting the necessary papers to attendant to the Settlement. A copy of the settlement agreement is attached as *Appendix 1*.

## II. SUMMARY OF THE PROPOSED SETTLEMENT

The key terms of the proposed settlement follow:

A. **Class Definition.** The settlement class is defined as follows:

> All individuals in the U.S. who: (i) made a payment at a LabCorp patient service center or equivalent (ii) using a debit or credit card, and (iii) for which LabCorp printed a point of sale receipt (iv) that displayed the card expiration date (v) between July 6, 2012 and the Preliminary Approval Date.

Based on the class information produced by LabCorp in discovery, the Settlement Class contains approximately 665,000 members.

B. **Structure of the Settlement Amount.** The Agreement provides, in §III.B., that LabCorp shall pay Eleven Million Dollars ($11,000,000.00) for the benefit of the class.

**C. Individual Class Member Benefits.** A Settlement Class Member who submits a timely claim form will receive a *pro rata* share of the net settlement proceeds after payment of the cost of sending notice of the settlement to the class, settlement administration expenses, the attorneys' fee award and any class representative incentive award.

**D. Additional Relief.** In addition to the individual relief to the class provided above, LabCorp has agreed to payment of the cost of preparing and sending notice of the Settlement to the class, including but not limited to establishment and maintenance of the settlement Website, and the cost of handling and disbursing settlement funds, from the Settlement Fund.

**E. Compensation for the Class Representative.** Subject to Court approval, Plaintiff Legg shall apply for an incentive award not to exceed ten thousand dollars ($10,000).[2]

**F. Payment of Attorneys' Fees.** Under the Agreement, and subject to Court approval, the Parties have agreed that Plaintiff's counsel may apply to this Court for awards of attorneys' fees and expenses associated with the Action. Plaintiff's counsel will petition the Court for an award of attorneys' fees not to exceed one-third of the Settlement Fund, plus expenses.

**G. Release.** In exchange for the relief described above, the release is applicable to all class members and releases any and all claims, as more fully set forth in the Settlement Agreement, related to or arising out of claims that were made or could have been made in this litigation regarding the disclosure, display, publication, provision or printing of credit or debit

[2] The Seventh Circuit was recently critical of a $7,500 incentive award as being too small. *Ira Holtzman, C.P.A, & Associates Ltd. v. Turza*, 728 F.3d 682, 690 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1318 (2014) (describing the award as a "disincentive" award).

cardholder account information. The full scope of the release, and its exact terms, is fully set forth at §VI of the Settlement Agreement, attached hereto as *Appendix 1*.

### III. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

Prior to granting preliminary approval of a class action settlement, the Court should confirm that the proposed settlement class is a proper class for settlement purposes. *See Manual for Complex Litigation* (Fourth) § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "A class may be certified solely for the purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1313-14 (S.D. Fla. 2005) (internal quotations omitted).

Class certification is appropriate if the proposed class meets the elements of Federal Rule of Civil Procedure 23(a), and one element of Federal Rule of Civil Procedure 23(b). *See Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). The elements of Rule 23(a) are numerosity, commonality, typicality, and adequacy of representation elements. Fed. R. Civ. P. 23(a)(1)-(4); *see also Fabricant*, 202 F.R.D. at 313. The element of Rule 23(b) at issue here requires that common questions of law or fact predominate, and that a class action is superior method of resolving the claims at issue. Fed. R. Civ. P. 23(b)(3); *see also Fabricant*, 202 F.R.D. at 313. However, because class certification is being proposed as part of a settlement, the Rule 23(b)(3) inquiry is relaxed as it relates to case manageability because the settlement obviates the need for a trial. *See Amchem*, 521 U.S. at 620.

One court in this District recently determined that a class materially identical to the proposed Settlement Class satisfied all of the requirements for certification in a *contested* class certification proceeding, thus demonstrating that the claims at issue in the instant case are appropriately resolved on a class basis. *See Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978-CIV-

JIC (S.D. Fla.) (June 10, 2015 Order) (FACTA case involving printing of credit and debit card transaction receipts that reveal card information that should not be disclosed), attached as *Appendix 2*. As shown below, the Settlement Class here likewise satisfies Rule 23 and thus, as in *Legg v. Spirit*, class resolution is proper.

### A.    The Numerosity Element Is Satisfied

The first Rule 23(a) element requires that "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1); *see also Fabricant*, 202 F.R.D. at 313 (finding that Rule 23(a) requires that joinder be impracticable, not impossible). To meet this element, there is no "definite standard as to the size of a given class, and plaintiff's estimate need only be reasonable." *Id.* (*citing Kilgo v. Bowman Transp. Inc.*, 789 F.2d 711, 718 (11th Cir. 1984)). Generally, the numerosity requirement is satisfied if the class has 40 or more members. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, the putative class is estimated to be include no more than 635,000 members (subject to a final accounting). Obviously, it would be impracticable to attempt to join hundreds of thousands of class members as parties in one lawsuit. Accordingly, the class meets the numerosity element.

### B.    The Commonality Element Is Satisfied

The second Rule 23(a) element requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This element is met when there is "at least one issue affecting all or a significant number of proposed class members." *Fabricant*, 202 F.R.D. at 313; *see also Agan v. Kathzamn & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004) (finding that the commonality requirement is "generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members") (internal quotation

omitted).

This element is met here because all class members share the common issues of (1) whether LabCorp's computerized payment system at its patient service centers violated FACTA by printing a credit or debit card transaction receipt that revealed the expiration date of each of their cards, and (2) whether that violation was willful. 15 U.S.C. §1681c(g)(1) and 15 U.S.C. §1681n(a)(1)(A). Therefore, the commonality element is met.

### C.      Plaintiff's Claims Are Typical of the Claims of the Class

The third Rule 23(a) element requires that the class representative's claims be typical of the claims of the putative class members. Fed. R. Civ. P. 23(a)(3). "[T]ypicality measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. 2003) (internal quotation omitted). Plaintiff's claims are typical of the claims of the class members because they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). In fact, the typicality requirement may be satisfied despite substantial factual differences when there is a strong similarity of legal theories. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009); *see also Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004) (finding that named representative need only share the same "essential characteristics" of the larger class) (*overruled on other grounds by Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 457, 126 S.Ct. 1195, 163 L.Ed.2d 1053 (2006)). Simply put, when the same unlawful course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *See Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

8

Legg's claim is typical of the class members' claims because they are based on the same facts and legal theory. He alleges that LabCorp printed transaction receipts revealing the expiration dates of their credit and debit cards, and that this occurred because the computer payment system used at its patient service centers was programmed to print receipts in this manner. In addition, if Legg proves LabCorp willfully allowed its system to operate in this manner, both he and the class would be entitled to the same relief, namely, statutory damages. 15 U.S.C. §1681n(a). Accordingly, Legg's claims are typical of the class members' claims.

**D.     The Adequate Representation Element Is Satisfied**

The fourth and final Rule 23(a) element requires the class representative to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor mandates both that: (1) the class representative possess no interests antagonistic to the settlement class, and (2) competent class counsel. *See Fabricant*, 202 F.R.D. at 314-15 (*citing Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987)).

Here, Plaintiff's and the class members' interests are aligned because they both stand to recover statutory damages if Plaintiff successfully proves that LabCorp willfully violated FACTA in the manner alleged. *See* Decl. of C. Legg, attached as *Appendix 3*. Therefore, Plaintiff is adequate and, indeed, Plaintiff has already been found adequate to represent a class in multiple cases. *Legg v. Voice Media Group, Inc.*, No. 13-62044-CIV-JIC, 2014 U.S. Dist. LEXIS 61836 at *14 (S.D. Fla. May 5, 2014) ("Legg's interests are aligned with those of the Proposed Class, as he and the Proposed Class proceed on similar facts under a shared theory of recovery."); *Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978-CIV-JIC (S.D. Fla.) (June 10, 2015 Order) at p.9, attached as *Appendix 2* ("Plaintiff and his counsel have established that they are adequate representatives of the class."), and *Legg v. E-Z Rent a Car, Inc.*, No. 14-cv-1716 (M.D. Fla. May 28, 2015

Order) ("Mr. Legg, who is a member of the Florida Bar in good standing, is particularly well-suited to serve as class representative."), attached as *Appendix 4*.[3]

Plaintiff's counsel are adequate because they regularly engage in major complex litigation, and have extensive experience in consumer class action lawsuits. *See*, Decl. of Scott D. Owens, attached as *Appendix 5*; *See*, Decl. of Bret Lusskin, attached as *Appendix 6*; Decl. of Michael S. Hilicki, attached as *Appendix 7*; *see also Legg*, 2014 U.S. Dist. LEXIS 61836 at *14 ("Legg's counsel are seasoned attorneys with the experience to pursue a consumer class action of the variety Legg proposes."); *Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978-CIV-JIC (S.D. Fla.) (June 10, 2015 Order) at p.8 ("Plaintiff's attorneys are experienced and capable, and have served as class counsel in similar consumer class actions before."), attached as *Appendix 2*, and *Legg v. E-Z Rent a Car, Inc.*, No. 14-cv-1716 (M.D. Fla. May 28, 2015 Order) at ¶8.d. ("Plaintiff and Class Counsel have fairly and adequately represented and protected the interests of all of the Settlement Class Members."), attached as *Appendix 4*. Thus, the adequacy element is met.

### E.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

Once the four elements of subsection (a) are met, Rule 23 also requires that the case meet one of the three elements of subsection (b). This case satisfies Rule 23(b)(3). Rule 23(b)(3) provides that a class action can be maintained if the questions of law or fact common to class members predominate over any questions affecting only individuals, and if a class action is a superior method for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3).

---

[3] At the July 13, 2015 hearing, LabCorp claimed there was reason to question Plaintiff's adequacy based on certain bank records unrelated to this case. Plaintiff's counsel pointed out that this concern was unfounded, but the Court gave LabCorp the opportunity to explore the matter. Plaintiff believes LabCorp's alleged concerns about the records have been resolved.

The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700. Common questions squarely predominate here. Whether LabCorp's computerized payment system systematically printed transaction receipts that revealed credit and debit card expiration dates, whether this systematic violation of FACTA was willful, and the statutory damages to be awarded it if it was, are all common questions that will both resolve liability and the appropriate recovery on a classwide basis. Thus, the common questions predominate. *See, e.g., Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978-CIV-JIC (S.D. Fla.) (June 10, 2015 Order) at p.10 ("The court agrees that these central issues predominate over any that would require individual determination."), attached as *Appendix 2*; *see also In re Toys "R" Us – Delaware, Inc. – Fair and Accurate Credit Trans. Act (FACTA) Litig.*, 300 F.R.D. 347, 376 (C.D. Cal. 2013) ("The vast majority of courts outside this district have similarly found that common questions predominate in FACTA class actions.")[4]

In addition, a class action is superior to any other method available to fairly and efficiently adjudicate the class members' claims. *See Bush*, 2012 U.S. Dist. LEXIS 40450 at *33 ("Courts routinely find class resolution superior in consumer protection actions, including those brought pursuant to FACTA.") Absent a class action, members of the class could not feasibly resolve their claims. This case required Plaintiff to incur thousands of dollars in expenses

---

[4] Examples of the numerous other decisions ruling that class certification is proper in FACTA cases include *Bush v. Calloway Consol. Group River City, Inc.*, No. 10-cv-841, 2012 U.S. Dist. LEXIS 40450 at *33 (M.D. Fla. Mar. 26, 2012); *Velasco v. Sogro, Inc.*, No. 08 C 244, 2014 U.S. Dist. LEXIS 104047 at *11-*12 (E.D. Wisc. July 30, 2014); *Rogers v. Khatra Petro, Inc.*, 08-cv-294, 2010 U.S. Dist. LEXIS 103599 at *2 (N.D. Ind. Sept. 29, 2010); *Miller-Huggins v. Mario's Butcher Shop, Inc.*, No. 09-3774, 2010 U.S. Dist. LEXIS 16493 at *14 (N.D. Ill. Feb. 22, 2010); *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 259 F.R.D. 151, 161 (N.D. Ill. 2009); *Harris v. Best Buy Co., Inc.*, 254 F.R.D. 82, 90 (N.D. Ill. 2008); *Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290, 293 (N.D. Ill. 2008); *Meehan v. Buffalo Wild Wings, Inc.*, 249 F.R.D. 284, 288 (N.D. Ill. 2008); and *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 217 (N.D. Ill. 2008).

deposing nearly fifteen fact witnesses to gather sufficient evidence to prove willfulness, and three defense experts. By contrast, statutory damages per claim are limited to $100-$1,000. Thus, individual litigation is cost prohibitive, and a class action clearly is plainly a superior method of adjudication. *See In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 700 (S.D. Fla. 2004) (a class action is particularly appropriate where . . . it is necessary to permit the plaintiffs to pool claims which would be uneconomical to litigate individually.") (internal citations omitted); *see also Amchem,* 521 U.S. at 615. Even if individual litigation was feasible, however, a class action is still superior because it would be judicially inefficient to have multiple courts consider and adjudicate the same factual, liability and statutory damage issues this case presents. *See Agan*, 222 F.R.D. at 700 ("increased efficiency" can also render class action superior), *quoting Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1359 (11th Cir. 2002).

Although this case meets the superiority requirement as it is ordinarily applied, it must be noted that the superiority analysis is relaxed here because here class certification is being proposed as part of a settlement, and thus trial management considerations are not a factor. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial") (citations omitted).

Finally, and in addition to the above considerations, the Supreme Court has specifically recognized that class actions under statutes like FACTA are appropriate. *Shady Grove Orthopedic Associates, P.A., v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010). In *Shady Grove*, the Court considered whether a New York state law prohibiting class actions seeking penalties or statutory minimum damages precludes a federal court from considering Rule 23 class action

status. *Id.* at 1436. The Court held that a plaintiff may pursue a class action claim seeking such statutory damages. *Id.* at 1448.

The portion of Justice Scalia's opinion joined by three other justices found it "obvious" that plaintiffs may aggregate multiple claims for statutory damages in a class action. *Id.* at 1443. Such Rules "neither change plaintiffs' separate entitlements to relief nor abridge defendants' rights; they alter only how the claims are processed." *Id.* Thus, in responding to the defendant's argument that aggregation of statutory penalties improperly transforms a dispute over $500 into a suit for $5 million, Justice Scalia noted:

> [A]ggregate liability, however, does not depend on whether the suit proceeds as a class action. Each of the 1,000-plus members of the putative class could (as [the defendant] acknowledges) bring a freestanding suit asserting his individual claim. It is undoubtedly true that some plaintiffs who would not bring individual suits for the relatively small sums involved will choose to join a class action. That has no bearing, however, on [the defendant's] or the plaintiffs' legal rights. The likelihood that some (even many) plaintiffs will be induced to sue by the availability of a class action is just the sort of "incidental effec[t]" we have long held does not violate §2072(b).

*Id.* Justice Stevens' concurrence provides a fifth vote for this holding. *Id.* at 1459, n.18.[5] In short, this case meets the requirements of Rule 23, and thus settlement as a class action is appropriate.

### IV. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . .[who] must

---

[5] Responding to Justice Ginsburg's argument that class certification would "transform a $500 case into a $5,000,000 award," Justice Stevens notes:

> [C]lass certification would transform 10,000 $500 cases into one $5,000,000 case. It may be that  without class certification, not all of the potential plaintiffs would bring their cases.  But that is  true of any procedural vehicle; without a lower filing fee, a  conveniently located courthouse,  easy-to-use federal procedural rules, or many other features of the federal courts, many plaintiffs  would not sue.

*Id.* at 1459  n.18.

fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). As demonstrated above, proposed class counsel have extensive experience in prosecuting class actions and other complex litigation of a similar nature, scope, and complexity. *See*, Decl. of Scott D. Owens, attached as *Appendix 5*; *See*, Decl. of Bret Lusskin, attached as *Appendix 6*; Decl. of Michael S. Hilicki, attached as *Appendix 7*. In addition, proposed class counsel diligently investigated and prosecuted this case, dedicated substantial resources to the cause, and successfully negotiated the settlement of this matter to the benefit of the class. Accordingly, the Court should appoint Plaintiff's counsel to serve as class counsel for the class under Rule 23(g).

### V. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court." The procedure for review of a proposed class action settlement is a well-established two-step process. Newberg & Conte, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002); *see also* David F. Herr, *Annotated Manual for Complex Litigation,* § 21.632 (4th ed. 2004).

The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (*quoting Manual for Complex Litigation*, §30.41 (3rd Ed.)); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1110 (9th Cir. 2008); *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895 at *4 (S.D. Fla. May 14, 2007). This hearing is not a fairness hearing; its purpose, rather, is to

ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Newberg*, §11.25, at 38-39; *Fresco*, 2007 WL 2330895 at *4 ("A proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, if there is probable cause to notify the class of the proposed settlement.") (internal quotations omitted).

The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling Parties. *Manual for Complex Litigation,* § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. *Newberg*, §11.25, at 38-39.

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd,* 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422 at *4 (S.D. Fla. May 7, 2002). With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Although the Court certainly has discretion in deciding whether to approve a proposed settlement, proper consideration should be given to the consensual decision of the Parties. *Warren*, 693 F. Supp. at 1054 ("The Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"). Ultimately, the Court should approve a class action settlement if it is fair, adequate, and reasonable, and not

15

the product of collusion. *Bennett v. Behring*, 737 F.2d 982, 986 (11th Cir. 1984); *Access Now,* 2002 WL 1162422 at *4. When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001).

In determining whether the proposed settlement is "fair, adequate, and reasonable," the following factors are often considered: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986; *see also In re Sunbeam*, 176 F. Supp. 2d at 1329. Finally, in considering the preliminary approval issue, courts need not "reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

Here, the proposed settlement is fair, adequate, and reasonable and should be viewed as well "within the range of possible approval." This is demonstrated by the amount of monetary relief made available to the class, and the fact that the agreement was the result of hard fought arms' length negotiations by experienced counsel conducted through a seasoned third party mediator.

The monetary relief secured on behalf of the class is substantial. Each class member who submits a timely claim form will receive a pro rata share of the Settlement Fund in an amount estimated to be around $200. *Appendix 1* at Exhibit B, p.1 and Exhibit C, p.1. This compares to a potential range of statutory damages recovery of $100-$1000 against the inability to prove actual

16

harm, meaning that even if the case went to trial and was successful, there is a good chance class members would not recover more than the minimum $100 statutory damage award.

The non-monetary benefit of this case is also substantial. In response to this lawsuit, LabCorp reprogrammed its computerized payment system to stop printing expiration dates on transaction receipts nationwide.

The Parties reached the instant settlement after hard-fought litigation and negotiation, and based upon the information produced by LabCorp in discovery and otherwise, Plaintiff's counsel is confident in the strength of the claims alleged in the complaint and that Plaintiff would ultimately prevail at trial. Nevertheless, litigation is inherently unpredictable and the outcome of a trial is never guaranteed.[6]

Indeed, Plaintiff and the class members face significant risks in taking this matter to trial, including the possibility that the case may be defeated by LabCorp's pending summary judgment motion, the possibility that the Court may deny the pending contested motion for class certification out of concerns about trial manageability or otherwise, and of course the possibility that at trial the fact finder concludes that LabCorp's alleged violation of FACTA here was not willful. Moreover, LabCorp is represented by competent and formidable counsel.[7] In the end, when the strengths of the Plaintiff's claims are weighed against the legal and factual obstacles present, and the complexity of class action practice, there should be no doubt that the proposed

---

[6] *See Appendix 5* (Decl. of Scott D. Owens) at ¶28-¶29; *Appendix 6* (Decl. of Bret Lusskin) at ¶13; and *Appendix 7* (Decl. of Michael S. Hilicki) at ¶12.

[7] Also, two cases are pending before Supreme Court that could affect Plaintiff's and the class members' Article III standing and the ability to certify a class. *See Spokeo, Inc. v Robins*, No. 13-1339 (addressing whether statutory damage class actions lack Article III standing, in which event case Plaintiff and the proposed Class would have to litigate the case from scratch in state court) and *Tyson Foods, Inc. v. Bouaphakeo*, No. 14-1146 (addressing class certification issues).

settlement is in the best interest of class members.[8] And, given the high value of this settlement – believed to be the largest cash FACTA settlement in history - Plaintiff expects no significant opposition to it by any class member.

Proposed class counsel had ample foundation upon which to evaluate the proposed settlement.[9] The suit has been pending since July 2014 and the discovery obtained is substantial, as the time for conducting discovery was near its conclusion when this settlement was reached. Therefore, each party had the necessary information to evaluate the strengths and weaknesses of their cases in order to discuss settlement effectively. And even then the settlement was only reached after substantial motion practice, mediation and discussions over settlement terms and language. In its totality, this settlement is well within the range of approval and should be preliminarily approved by this Court.

## VI. THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

The Agreement includes notice procedures designed to directly reach each member of the class as is practicable. *Appendix 1* at §IV.B. First, after entry of the Preliminary Settlement Approval Order, the Claims Administrator shall cause a notice (*Appendix 1* at Exhibit B) to be sent via regular mail to class members based on LabCorp's billing name and address records, to advise them about the settlement and direct them to the Website where they can obtain additional information about it, including how to comment on the settlement or opt out of it, and how to make a claim. *Appendix 1* at §IV.B.1.

---

[8] *See Appendix 5* (Decl. of Scott D. Owens) at ¶28; *Appendix 6* (Decl. of Bret Lusskin) at ¶13; *Appendix 7* (Decl. of Michael S. Hilicki) at ¶13-¶14.

[9] *See Appendix 5* (Decl. of Scott D. Owens) at ¶28-¶29; *Appendix 6* (Decl. of Bret Lusskin) at ¶12; *Appendix 7* (Decl. of Michael S. Hilicki) at ¶8-¶11.

Second, the Claims Administrator will establish a settlement website that supplements the mail notice with comprehensive information about the settlement (*Appendix 1* at Exhibit C), a claim form class members can use to make a claim and a procedure for filing claims online (*Appendix 1* at Exhibit E), plus a copy of the Complaint, the Settlement Agreement, the Preliminary Settlement Approval Order for the class members to review. *Appendix 1* at §IV.B.2. The notice posted on the site provides settlement class members with a detailed explanation of their options, to enable them to make an informed decision. The Settlement Administrator will also establish and oversee a toll-free phone number for Settlement Class Members to contact to ask questions. *Appendix 1* at §IV.B.2 and Exhibit C, p.3. A mailed notice combined with a Website for further information is the commonly approved method for giving notice in class settlements. *See*, *e.g.*, *Soto v. The Gallup Organization, Inc.*, No. 13-cv-61747-MGC (S.D. Fla. June 6, 2015) at ECF No. 79, ¶9; *Guarisma v. Adcahb Medical Coverages, Inc.*, No. 13-cv-21016-FAM (S.D. Fla. Mar. 2, 2015) at ECF No. 91, ¶11; *De Los Santos v. Millward Brown, Inc.*, No. 13-cv-80670-DPG (S.D. Fla. Feb. 10, 2015) at ECF No. 77, ¶ 11; *Curry v. AvMed, Inc.*, No. 10-cv-24513, 2014 U.S. Dist. LEXIS 48485 at *3 (S.D. Fla. Feb. 28, 2014); *Collins v. Erin Capital Management, LLC*, No. 12-cv-22839-CMA (S.D. Fla. Dec. 20, 2013) at ECF No. 133, ¶ 5; *Cooper v. Nelnet, Inc.*, 14-cv-00314-RBD (M.D. Fla. Feb. 26, 2015) at ECF No. 72, ¶10; and *Legg v. E-Z Rent A Car, Inc.*, No. 14-cv-01716-PGB (M.D. Fla. May 28, 2015) at ECF No. 64, ¶10.

Third, the Defendants will serve upon the Attorneys General of each of the fifty United States and the Attorney General of the United States notice of the proposed settlement, pursuant to 28 U.S.C. § 1715, within ten (10) days after the proposed settlement is filed. *See Appendix 1* at §IV.B.5. In short, the notice plan here should be approved.

## VII. THE MATTER SHOULD BE SET FOR A FAIRNESS HEARING

After adequate notice is given to the Settlement Class and the government as required by 28 U.S.C. §1715, a fairness hearing should be held for the Court to confirm that the Settlement is fair, reasonable and adequate. *See*, *e.g.*, *Bennett*, 737 F.2d at 985; *Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1336 (S.D. Fla. 2011).

## VIII. DEFENDANT DOES NOT OBJECT TO THE RELIEF REQUESTED

LabCorp supports the relief requested by Plaintiff in this motion. LabCorp agreed to the terms of the settlement and, although LabCorp did not formally join this motion, Plaintiff provided LabCorp with a draft before filing it, and LabCorp did not object to it.

## IX. SUGGESTED SCHEDULE

Based on the events that need to take place between the granting of preliminary approval and final approval that are described in the proposed preliminary approval order (Exhibit A to *Appendix 1*), Plaintiff proposes the following general scheduling outline for evaluating and concluding this settlement:

| | |
|---|---|
| _____, 2015<br>[45 days after the Preliminary Approval Date] | Deadline for notice to be provided to the Class members |
| _____, 2016<br>[105 days after the Preliminary Approval Date] | Deadline for Class members to file any objection, file any notice of their or their counsel's intent to appear at the fairness hearing and the bases therefor, or to submit requests for exclusion (Opt-Out and Objection Deadline) |
| _____, 2016<br>[105 days after the Preliminary Approval Date] | Deadline for Settlement Class Members to Submit a Claim Form (Claim Period) |
| _____, 2016<br>[30 days after deadline for | Deadline for Parties to file the following:<br>(1)  List of persons who made timely and proper |

| claims/objections/opt outs but not less than 14 days before the Fairness Hearing] | requests for exclusion (under seal);<br>(2)  Proof of Class Notice; and<br>(3)  Motion and memorandum in support of final approval and related matter, including responses to any objections. |
|---|---|
| _____, 2016 at \_\_\_\_ \_.m.<br>[No earlier than 149 days after the Preliminary Approval Date] | Fairness Hearing |

## X. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court (1) certify the proposed settlement class, (2) appoint Legg as class representative, (3) appoint Legg's attorneys as class counsel, (4) preliminarily approve the proposed settlement and notice plan, and set the matter for a fairness hearing, by entering the proposed order attached as Exhibit A to *Appendix 1*, and (5) grant such other and further relief as deemed just.

Respectfully Submitted,

*/s/ Scott D. Owens*
SCOTT D. OWENS, Esq.
3800 S. Ocean Drive, Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

*/s/ Bret L. Lusskin*
BRET L. LUSSKIN, Esq.
20803 Biscayne Blvd., Suite 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

Michael S. Hilicki
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.374.3403 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
mhilicki@KeoghLaw.com
www.KeoghLaw.com

*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that October 26, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date, in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: _/s/ Bret L. Lusskin ,Esq._
Bret L. Lusskin, Esq.