1  Michael A. Wasserman
   Designated as local counsel
2  SBN 3077
3  Wasserman & Thomas, P.A.
   12550 Biscayne Blvd., Suite 403
4  Miami, FL 33181
5  305-895-7288 (Direct)
   305-895-7547 (Main Line)
6  305-895-7549 (Facsimile)

7  Darrell Palmer
   Of counsel
8  SBN 125147
   darrell.palmer@palmerlegalteam.com
9  Law Offices of Darrell Palmer
   2244 Faraday Avenue, Suite 121
10 Carlsbad, CA 92008
   Telephone: (858) 215-4064
11 Facsimile: (866) 583-8115

12 **Attorney for Objector**

13

14              IN THE UNITED STATES DISTRICT COURT
15            FOR THE SOUTHERN DISTRICT OF FLORIDA

16 CHRISOPHER W. LEGG,                 )  Case No. 14-cv-61543-RLR
   individually and on behalf of all others similarly )
17 situated,                           )  **CLASS ACTION**
                                       )
18                      Plaintiffs,    )  **OBJECTION OF DEBBIE BOSSE aka**
                                       )  **Debbie Hasen TO PROPOSED**
19       vs.                           )  **SETTLEMENT AND NOTICE OF INTENT**
                                       )  **TO APPEAR**
20 LABORATORY CORPORATION OF           )
   AMERICA                             )
21 HOLDINGS, a Delaware corporation,   )
                                       )  Date: February, 16 2016
22                      Defendant.     )  Time: 9:00 a.m.
                                       )  Judge: Hon. Robin L. Rosenberg
23                                     )
                                       )
24 _____    )  Action filed: July 6, 2014
                                          Trial date: None Set
25

26 Debbie Bosse (AKA Debbie Hasen) objects to the proposed settlement. Ms. Bosse is a member of the
   class and her claim number is unknown, but Class Counsel should have the information. Ms. Bosse lives
27 in San Clemente, California, personal information not provided because violates Ms. Bosse's right to
   privacy.  Please call her attorney for any further needed information.
28

                                           1

## I.   THE STANDARD FOR APPROVING A PROPOSED CLASS ACTION SETTLEMENT

A trial court must receive and independently consider information sufficient to assess the reasonableness of the settlement. *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 130, 133 (2008). In *Kullar*, the Court of Appeal vacated a trial court's approval of a class action settlement because the court was not "provided with basic information about the nature and magnitude of the claims in question and the basis for concluding that the consideration being paid for the release of those claims represents a reasonable compromise." *Id.* at 133. In *Clark v. American Residential Services LLC, et al.*, 175 Cal.App.4th 785 (2009), the Second Appellate District Court of Appeal reaffirmed that to evaluate the fairness of a settlement, the court should be provided sufficient information to make a determination as to the fairness of a settlement.

*Kullar* further explains that, despite a presumption of fairness for class action settlements negotiated at arm's length by counsel for the class, "'to protect the interests of absent class members, the court must independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interests of those whose claims will be extinguished.'" *Kullar, supra,* 168 Cal.App.4th at p. 130.

Florida does not permit the percentage of the fund to be used in lieu of the lodestar method. The settlement agreement indicates that Florida law controls and this is appropriate. As such, an award based on percentage of the fund would appear to be inappropriate.

## II.   ARGUMENT

### A. Notice is Inadequate

Class Counsel's Notice and website, does not inform Class Members of either the full nature of the legal rights they are releasing or the remedies available for violations of those legal rights. The Notice merely states: "[p]lainitff alleges that LabCorp willfully printed transaction receipts that included credit card or debit card expiration dates in violation of the Fair and Accurate Credit Transactions Act" The description of the release is similarly uninformative and too broad. The Notice states that under the Settlement, Class Members will be agreeing

without limitation, all claims that arise or could arise from LabCorp printing credit and debit card transaction receipts . . . including, but not limited to, claims under FACTA, the Fair Credit Reporting Act, and any other statutory or common law, and including any claim (to the extent that such claims may exist) concerning the disclosure, display, publication, provision or printing of credit or debit cardholder account information.

The Release effectively, and without true notice, includes a release on tort claims and other claims, including negligence on behalf of the Defendants.

The Settlement Website is inadequate, because it fails to provide information Class Members need to evaluate the Settlement. Class Counsel have not provided the operative Complaint, or any other Complaint for that matter, or their Motion for Final Approval. The Complaint would inform Class Members about the claims that they are releasing. Instead they can only speculate which is unacceptable.

**B. The Settlement Benefit is Unknown**

LabCorp is to pay $11,000,000 into a fund (the "SF"), which is to pay the attorneys' fees, service award to Plaintiff, the costs of notice and administration of the Settlement and any fees and expenses incurred in administering the Escrow Account and SF all before paying the Settlement Class Members. Further, Class Counsel is seeking $3,666,667 and $10,000 for a service award and an estimated $1,000,000 in notice and administration fees. That leaves $6,323,333 (with taxes and other fees still needing to be deducted) for the Class Members. Counsel has estimated that at least 635,000 potential Class Members exist and will file a claim and the Notice claims that the Class Members *may* receive $200. However, 635,000 Class Members with each receiving $200 equates to $127,000,000 which is not even in the same world as the proposed SF. In fact, if 635,000 individuals were to file a claim and the numbers worked as estimated (which usually does not with the estimated costs being larger) then each Class Member could receive $9.95 which is *far below* the numbers given in the Notice.

In fact, this would if upon the need for a second distribution, a check less than $10 would not occur and the SF would either go to the Escrow Administrator or Class Counsel leaving the Class Members with nothing. Further, there is not breakdown of the Attorneys' fees or work performed, there is no loadstar or Motion in Support of Attorneys' Fees (at least non are on file at the time of this filing) so there is no way for the Class Members to decipher the fairness of the SF proposed in the Notice.

1   The requested are much higher than the relief to the class. Even among this special bar, this is a
2   brazen request. The Court must call a foul because even in this game, asking for almost half of what
3   your clients' get is against the rules. Here, after the deduction of attorneys' fees, litigation expenses,
4   named class member payment, and estimated distribution costs (which almost always more than
5   projected) the remaining amount of the Settlement Fund is dwindled down $6,323,333. The attorneys
6   base their outsize fee request on their work to protect an important public right. Unquestionably,
7   privacy rights are important and deserve protection.

8   Class Counsel's claim the parties and their counsel believe the Settlement Agreement is fair,
9   reasonable, and adequate settlement and that they arrived at the Settlement Agreement through arms-
10  length negotiations. Claiming the fees were negotiated separately is no Chinese wall; the settlement
11  benefits and the attorneys' fees must be considered part of a common fund. Each of the benefits offered
12  with the Settlement, including attorneys' fees, form part of a "constructive common fund." *See, e.g.*,
13  *Dennis v. Kellogg Co.*, 697 F.3d 858, 862-63 (2012) (evaluating a "constructive common fund"
14  settlement). *See also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d
15  768 (1995). "Although class counsel and GM contend (and the district court believed) that the fee was a
16  separate agreement, thus superficially resembling the separate awards in statutory fee cases, private
17  agreements to structure artificially separate fee and settlement arrangements cannot transform what is in
18  economic reality a common fund situation into a statutory fee shifting case." *Id.*, at 821. *Accord.*
19  *Johnson v. Comerica*, 83 F.3d 241 (1996) ("[I]n essence the entire settlement amount comes from the
20  same source. The award to the class and the agreement on attorney fees represent a package deal.")

21  As of now, there is no way for the Class Members to value the proposed Attorneys' fees because
22  Class Counsel has failed to include a Motion in Support on the website or in the Notice. Assuming that
23  Counsel's fees should be based on their lodestar, their lodestar can be adjusted downwards and upwards.
24  Although Florida courts routinely use the lodestar method to analyze fee awards, they also acknowledge
25  the lodestar method is subject to abuse. These abuses were acknowledged in *Lealao v. Beneficial*
26  *California, Inc.*, 82 Cal. App. 4th 19, 40 (2000). In *Lealao* the court analyzed the history of the lodestar
27  method, citing THIRD CIRCUIT TASK FORCE, COURT AWARDED ATTORNEY FEES (1985) 108 F.R.D. 237,
28  246-249, ("the Report of the Third Circuit Task Force concluded the lodestar technique is a

"cumbersome, enervating, and often surrealistic process of preparing and evaluating fee petitions that now plagues the Bench and Bar" (*Id.* at p. 258), and recommended a return to the percentage of the recovery fee formula in cases involving a settlement fund).

*Lealao* did not suggest discontinued the lodestar method to determine fees but it said "courts must vigilantly guard against the lodestar's potential to exacerbate the misalignment of the attorneys' and the class's interests." *Id., quoting* John Coffee, Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class and Derivative Actions (1986) 86 COLUM. L.REV. 669, 691 (observing "As one commentator has stated, '[b]y severing the fee award from the settlement's size, [the lodestar] formula facilitates the ability of defendants and the plaintiff's attorneys to arrange collusive settlements that exchange a low recovery for a high fee award... .'). *Accord.* Charles Silver, Due Process and the Lodestar Method, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack").

Florida courts can and should cross check the lodestar, or other method used, against the benefit obtained for the Class or any other method used for calculating the attorneys' fees. *Lealao* held "in cases in which the value of the class recovery can be monetized with a reasonable degree of certainty and it is not otherwise inappropriate, a trial court has discretion to adjust the basic lodestar through the application of a positive or negative multiplier where necessary to ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation." *Lealao*, 82 Cal.App. at 50 (observing "As we have said, the California Supreme Court has never prohibited adjustment of the lodestar on this basis. Due to the complexity of the judicial responsibility to structure a class action fee award providing counsel the optimum mix of incentives and disincentives, and the variety of different and sometimes competing considerations that may come into play (*see* Hay, Asymmetric Rewards: Why Class Actions (May) Settle for Too Little (1997) 48 HASTINGS L.J. 479), trial judges need the flexibility Serrano III provides, as it enables them to relate fee awards to the economic realities that determine the efficacy of the private enforcement contemplated by our civil justice system.) *See also see Serrano v. Priest*, 20 Cal.3d 25, 49.(1977) *Accord. Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (the lodestar "may be adjusted upward or downward to account for several factors including ... the benefit obtained for the class").

1    *Lealao* explained that "[a]n adjustment reflecting the amount of the class recovery is not

2    significantly different from an adjustment reflecting a percentage of that amount; and California courts

3    have evaluated a lodestar as a percentage of the benefit."  As an example, the court cited *Glendora*

4    *Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465 (1984).  In *Glendora*, the court

5    awarded a 25 percent contingency amount.   The Court of Appeal affirmed, concluding a fee award

6    under the statute may be made on the basis of a contingent fee agreement where the trial court

7    considered other factors in determining the fee was reasonable.  The trial court's finding the 25 percent

8    figure was reasonable relied in part on the California Rules of Professional Conduct. Rule 2-107 set

9    forth nine factors that could be considered in determining the reasonableness of a fee, one of which was

10   " '[t]he amount involved and the result obtained.' " 155 Cal. App. 3d at p. 474. To think that Class

11   Counsel and the named Class Members could be considered stewards for the Class Members where the

12   awards are so disproportionate is hardly plausible.

13        **C. The incentive awards are excessive.**

14        An incentive award of $10,000 for the Class Representative is excessive.  It is 50 times the

15   "Cash Award" which is almost certainly going to be impossible to meet with the low amount left for

16   Class Members.

17        Courts have followed the analysis recommended in some federal court cases in rejecting

18   incentive awards out of keeping with the recovery achieved for unnamed class members.  In *Clark v.*

19   *American Residential Services LLC*, et al., *supra*, the court rejected an incentive award that was 44 times

20   the amount the average class member would receive.  In *Clark*, the court considered the factors looked

21   at in *Cook v. Niedert*, 142 F.3d 1004, 1016 (1998).  Those factors included " 'the actions the plaintiff has

22   taken to protect the interests of the class, the degree to which the class has benefitted from those actions,

23   and the amount of time and effort the plaintiff expended in pursuing the litigation.' " *Clark*, 175 Cal.

24   App. 4th at 804, *citing Cook, ibid.  Cook* also pointed to other factors identified in federal cases,

25   including "the risk to the class representative in commencing suit, both financial and otherwise," "the

26   notoriety and personal difficulties encountered by the class representative," "the duration of the

27   litigation", and "the personal benefit (or lack thereof) enjoyed by the class representative as a result of

28   the litigation." *Clark*, at 804, *citing Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299

1   (1995).  The court also rejected conclusory statements regarding the effort the class representative put

2   into the litigation.  Although Class Counsel recite in boilerplate fashion the efforts made by class

3   representatives in furtherance of the litigation, their declarations are unpersuasive and repetitive.  The

4   court should not just rubber stamp these service awards.

5          **D. The Objection Requirements are Confusing**

6          The Settlement website clearly says that the Objection deadline is to be postmarked by January

7   25, 2016, but within the Notice it states that the Objections must be ***filed*** with the Court by January 25,

8   2016.  This change in language is confusing as a Class Member does not know whether to file with the

9   Court or to mail their objections to the Court.

10  **III.        JOINDER IN OTHER OBJECTIONS**

11          Mrs. Bosse joins in, adopts and incorporates by reference as though fully stated herein each

12  objection by other class members which are not inconsistent with these objections.

13  **IV.        CONCLUSIONS**

14          For the foregoing reasons and all others at oral argument, these objectors request that the court

15  sustain their objections and grant the following relief:

16  - Upon proper hearing, sustain these Objections.

17  - Upon proper hearing, enter such Orders as are necessary and just to alleviate the inherent

18    unfairness, inadequacies and unreasonableness of the Settlement.

19

20

21  Dated: January 25, 2016                    By: _____/S/  Michael A. Wasserman___

22                                             Michael A. Wasserman
                                               **Attorney for Objector Debbie Bosse**

23

24  **Filing Clerk**
    **US District Court**

25  **Southern District of Florida**
    **701 Clematis Street**

26  **Fourth Floor Courtroom 2**

27  **West Palm Beach, FL 33401**

28

7

Objection of Debbie Bosse to Proposed Settlement and Notice of Intent to Appear

1  Michael S. Hilicki,
2  Keogh Law, Ltd
   55 West Monroe St., Suite 3390
3  Chicago, IL 60603

4  Steven F. Barley,
5  Hogan Lovells US LLP
   100 International Drive, Suite 2000
6  Baltimore, MD 21202

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Objection of Debbie Bosse to Proposed Settlement and Notice of Intent to Appear