**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 14-61543-CIV-ROSENBERG/BRANNON**

|  |  |
|---|---|
| CHRISTOPHER W. LEGG,<br>individually and on behalf of all others similarly<br>situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>LABORATORY CORPORATION OF<br>AMERICA HOLDINGS, a Delaware corporation,<br><br>　　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENT**

## **TABLE OF CONTENTS**

I.      INTRODUCTION......................................................................................................1

II.     SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT..................4

III.    SETTLEMENT TERMS...........................................................................................5
        A.      Notice and Settlement Administration..................................................................6
        B.      Incentive Payment...............................................................................................6
        C.      Payment of Attorneys' Fees and Expenses............................................................7
        D.      Release...............................................................................................................7

IV.     NOTICE PROVIDED WAS MORE THAN SUFFICIENT .......................................7

V.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND
        THUS IT MERITS FINAL APPROVAL..................................................................10
        A.      The Agreement Is the Result of Arm's Length Negotiation between the
                Parties with the Assistance of an Experienced Mediator.....................................12
        B.      The Settlement Meets Each of the Eleventh Circuit's *Bennett* Factors...............12
                1.      Likelihood of Success at Trial..................................................................13
                2.      Range of Possible Recovery and the Point at which the Agreement
                        Is Fair, Reasonable, and Adequate...........................................................15
                3.      The Complexity and Expense of Further Litigation ...................................16
                4.      Substance and Amount of Opposition to Agreement..................................17
                5.      Stage of Proceedings at which Settlement Achieved ..................................18

VI.     THE ATTORNEYS' FEE AND EXPENSES REQUESTED ARE
        REASONABLE........................................................................................................19
        1.      The Time and Labor Required, Preclusion from Other Employment and
                the Time Limits Imposed Justify the Cost and Fee Amount. .............................233
        2.      The Case Involved Difficult Issues; the Risk of Nonpayment and Not
                Prevailing on the Claims Was High...........................................................24
        3.      Class Counsel Achieved an Excellent Result for the Settlement Class................26
        4.      The Requested Fee is Consistent with Other FACTA Class Settlements............26

VII.    CONCLUSION ........................................................................................................28

## **TABLE OF AUTHORITIES**

**Cases**

*Access Now, Inc. v. Claire's Stores, Inc.,*

00-cv-14017, 2002 WL 1162422 (S.D. Fla. May 7, 2002)...........................................3, 18

*Agne v. Papa John's International Inc. et al,*

2:10-cv-01139 (D. Wa.).................................................................................................1

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.,*

No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) .....................14, 24

*Allapattah Servs., Inc. v. Exxon Corp.,*

No. 91-cv-0986, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006)...................................17, 26

*Atkinson v. Wal-Mart Stores, Inc.,*

2011 WL 6846747 (M.D. Fla. Dec. 29, 2011)...............................................................27

*Behrens v. Wometco Enters., Inc.,*

118 F.R.D. 543 (S.D. Fla. 1988) ...................................................................................16

*Bennett v. Behring Corp.,*

737 F.2d 982 (11th Cir. 1984) ...........................................................................*passim*

*Boeing Co. v. Van Gemert,*

444 U.S. 472 (1980).............................................................................................19, 21

*Camden I Condo Ass'n v. Dunkle,*

946 F.2d 768 (11th Cir. 1991) .............................................................................19, 22

*Cohn v. Nelson,*

375 F. Supp. 2d 844 (E.D. Mo. 2005)............................................................................19

*Cooper v. NelNet, Inc.,*

14-cv-314-RBD-DAB, Dkt. 85 (M.D. Fla. Aug. 4, 2015)...............................................7

*De Los Santos v Millward Brown Inc.,*

9:13-CV-80670-DPG (S.D. Fla. 2015).........................................................................26

*Faught v. Am. Home Shield Corp.,*

668 F.3d 1233 (11th Cir. 2011)..............................................................................8, 20

*Figueroa v. Sharper Image Co.,*

517 F. Supp.2d 1292, 1326 (S.D. Fla. 2007) ................................................................15

*Francisco v. Numismatic Guar. Corp.*,
    No. 06-61677, 2007 U.S. Dist. LEXIS (S.D. Fla. Jan. 31, 2007) ..................................... 25

*Gevaerts v. TD Bank, N.A.*,
    No. 14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015) ...... 7, 20

*Guarisma v. ADCAHB Medical Coverages, Inc., et al.*,
    1:13-cv-21016 (S.D.FL. June 24, 2015) ........................................................................ 27

*Gutter v. E.I. DuPont De Nemours & Co.*,
    No. 1:95–cv–02152–ASG, ECF No. 626 (S.D. Fla. May 30, 2003) ............................... 27

*Hensley v. Eckerhart*,
    461 U.S. 424  (1983) ..................................................................................................... 19

*In re Checking Account Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................12, 22, 25

*In re CP Ships Ltd. Sec. Litig.*,
    578 F. 3d 1306 (11th Cir. 2009) ..................................................................................... 8

*In re Domestic Air Transport. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) ................................................................................... 10

*In re Shell Oil Refinery,*
    155 F.R.D. 552 (E.D.La.1993) ...................................................................................... 17

*In re Southwest Airlines Voucher Litig.*,
    No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735 (N.D. Ill. Dec. 6, 2013) ....................... 24

*In re Sturm, Ruger & Co., Inc.*,
    No. 09cv1293, 2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20, 2012)...................... 3

*In re Sunbeam Sec. Litig.*,
    176 F.Supp.2d 1323 (S.D. Fla. 2001) ..................................................................... *passim*

*In re Terazosin Hydrochloride Antitrust Litig.*,
    No. 1:99–md–01317–PAS, ECF No. 1557 (S.D. Fla. Apr. 19, 2005)............................. 27

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ....................................................................................... 10

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) ................................................................................... 12

iv

*Isby v. Bayh*,

    75 F.3d 1191, 1200 (7th Cir. 1996) ..............................................................................24

*Johnson v. Georgia Highway Expr., Inc.*,

    488 F.2d 714 (5th Cir. 1974) ................................................................................ *passim*

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*

    540 F.2d 102 (3d Cir. 1976) ......................................................................................... 26

*Lipuma v. Am. Express Co.*,

    406 F. Supp. 2d 1298, 1315 (S.D. Fla. 2005) ........................................................ *passim*

*Morrison v. Nat'l Australia Bank Ltd.*,

    561 U.S. 247 (2010) ....................................................................................................... 8

*Mullane v. Cent. Hanover Bank & Trust Co.*,

    339 U.S. 306 (1950) ....................................................................................................... 8

*Newman v. Sun Capital Corp.*,

    No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 (M.D. Fla. Aug. 28, 2012) ................... 13

*North Suburban Chiropractic Clinic Ltd. V. Rx Security, Inc.*,

    1:13-cv-06897 (N.D. Ill.) ................................................................................................ 1

*North Suburban Chiropractic Clinic, Ltd v. Zydus Pharmaceuticals (USA) Inc.*,

    1:13-cv-03105 (N.D. Ill.) ................................................................................................ 1

*Perez v. Asurion Co.*,

    501 F. Supp.2d 1360, 1380 (S.D. Fla. 2007) .................................................. 12, 16, 17, 18

*Phillips Petroleum Co. v. Shutts*,

    472 U.S. 797, 812 (1985) ................................................................................................9

*Phillips Randolph Enters., LLC v. Rice Fields*,

    No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027 (N.D. Ill. Jan. 11, 2007) ...................... 14, 25

*Poertner v. Gillette Co.*,

    618 F. App'x 624, 631 (11th Cir. 2015) ........................................................................ 21

*Spicer v. Chi. Bd. of Options Exchange, Inc.*,

    844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) .................................................................. 7

*Spillman v. RPM Pizza, LLC*,

    No. 10-349, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) ............................. 1

*Stalcup v. Schlage Lock Co.*,

    505 F.Supp.2d 704 (D. Colo. 2007) ............................................................. 23

*U.S. v. Alabama*,

    271 F. App'x 896 (11th Cir. 2008) ............................................................. 8

*Warren v. City of Tampa*,

    693 F.Supp. 1051 (M.D. Fla. 1988) ......................................................... 3, 10

*Waters v. Int'l Precious Metals Corp.*,

    190 F.3d 1291 (11th Cir.1999) ................................................................. 19

*Wolff v. Cash 4 Titles*,

    No. 03-cv-22778, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ................................... 20

*Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*,

    1:12-cv-00780, (N.D. Ill) ........................................................................ 1

*Yates v. Mobile Cnty. Pers. Bd.*,

    719 F.2d 1530 (11th Cir. 1983) ............................................................... 23

**Other Authorities**

NEWBERG ON CLASS ACTIONS ........................................................................ 7, 21

The Role of Opt-Outs and Objectors in Class Action Litigation

    57 VAND. L. REV. 1529, 1550 (2004) ...................................................... 2

## I.       INTRODUCTION

Plaintiff, Christopher Legg, individually and as representative of the Settlement Class, submits this motion and memorandum in support of final approval of the class action settlement with Defendant, Laboratory Corporation of America Holdings. ("LabCorp"), as to the claims asserted under the Fair and Accurate Credit Transaction Act (FACTA), that the Court preliminarily approved on November 10, 2015. [ECF No. 211]. A true and correct copy of the Settlement Agreement and Release ("Agreement") is attached as *Appendix 1*.

Under the Agreement, LabCorp agrees to pay Eleven Million Dollars ($11,000,000.00) for the benefit of the class, the class members were sent notice inviting them to submit a claim for a portion of the fund, and to date 67,019 class members have done so. *See Appendix 2* at ¶13. That is 10.76% of the class who received direct mail notice of the settlement, a terrific result. The claim rate here is much higher than the claim rate in many other consumer statutory damage cases that have been granted final approval, and thus a strong endorsement of the settlement by the class.[1] Each Settlement Class Member who timely submitted a timely valid claim form will receive approximately one-hundred and one dollars ($101.00). Not a penny of the settlement fund will revert back to Defendant. This is believed to be the largest all cash settlement ever for a FACTA claim.[2]

---

[1] *See, e.g., Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*, 1:12-cv-00780, (N.D. Ill) (1.97 % of the class made claims); *North Suburban Chiropractic Clinic, Ltd v. Zydus Pharmaceuticals (USA) Inc.,* 1:13-cv-03105 (N.D. Ill.) (.13% of the class made claims); *North Suburban Chiropractic Clinic. V. Rx Security, Inc.,* 1:13-cv-06897 (N.D. Ill.) .53% of the class made claims); *Agne v. Papa John's International Inc. et al*, 2:10-cv-01139 (D. Wash.) (1.52% of the class made claims); *Spillman v. RPM Pizza, LLC et al*, 10-cv-0349 (M.D. La.) (.07% of the class made claims).

[2] Prior to this Agreement, Plaintiff believes the previous largest all cash FACTA truncation settlement was *Lumas v. Sw. Airlines Co.*, No. 3:13-cv-01429-CRB (S.D. Cal. 2013). In that case, Southwest estimated that the class total was between 880,000 and 2,200,000 transactions and the entire settlement was for $1.8 million.

The Court set January 19, 2016 as the date to submit exclusions, and January 25, 2016 as the date to file objections. [ECF No. 211, ¶9; ECF No. 211, ¶17]. No class member objected,[3] and only twelve requested exclusion (or .000019% of the Settlement Class). *See* Declaration of Jay Geraci in Support of Plaintiff's Motion for Final Approval at ¶11. Also, no governmental entity objected to the settlement after receiving the required CAFA notice. Such an extraordinarily "low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. American Express Co*., 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005).[4]

　　　As shown below, this settlement easily meets the standards for final approval. In granting

---

[3] Three professional objectors filed objections, but none on behalf of actual class members. Attorney Steve Helfand filed on objection on behalf of himself, but he quickly withdrew it when he realized he was not a class member and thus had no standing to object. [ECF No. 213].

Attorney Sam Miorelli filed an objection on behalf of himself, but he also is not a class member, and thus he does not have standing to object. Mr. Miorelli is not on the class list, and thus he was not sent notice of the settlement. He just assumed he was a class member because he made a few purchases from LabCorp. But LabCorp never printed a receipt that violated FACTA relating to Mr. Miorelli, as will be further described in Plaintiff's forthcoming response to his objection. It should be noted that Mr. Miorelli recently objected to the settlement of an unrelated case in which he was found to not be a class member and, despite this, Mr. Miorelli demanded that he be paid approximately two million dollars to drop his appeal of the settlement. *Appendix 3* (Esades Aff. (Docket No. 681-2) Ex. B.) The Eighth Circuit dismissed his appeal finding that, because he was not a class member, he lacked standing. *Appendix 4*.

Likewise Ms. Debbie Bosse a/k/a Debbie Hasen does not appear to be a class member either as she also is not on the class list. Her attorney, Mr. Palmer, is a notorious professional objector. For example, in a 2013 study by the Federal Judicial Center, he was identified as one of the country's most prolific objectors' counsel, with his name appearing over 99 times in a study of three judicial circuits. See http://www.fjc.gov/public/pdf.nsf/lookup/class-action-objector-appeals-leary-fjc-2013.pdf/$file/class-action-objector-appeals-leary-fjc-2013.pdf.

Further, Mr. Palmer is currently appealing the California bar's disciplinary recommendation of the suspension of his law license. *See* http://members.calbar.ca.gov/courtDocs/12-O-16924-2.pdf (Last Accessed: Feb. 1, 2016 at 5:54 P.M. EST). The order recommending suspension also outlines Mr. Palmer's past criminal conviction in Colorado. *Id*. at pp. 3-5.

Thus, not a single *class member* has objected here, and the non-class members' objections will be separately responded to in accordance with the due date set by the Court..

[4] The average number of objections to consumer class action settlements is 233. In a settlement of this magnitude, the Court should expect to receive around 56 objections (extrapolating from the average of 4.7 objectors per $1 million in consumer recovery). *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1550 (2004).

preliminary approval, the Court preliminarily found the Agreement is fair, reasonable, adequate, and merited notice to the class. [ECF No. 211, ¶1]. Nothing has changed to alter that conclusion, except that the class has indicated overwhelming support for the Agreement. The Agreement is the product of arm's length negotiations between Defendant and experienced Class Counsel, and was only reached after substantial discovery, briefing and argument on dispositive motions and class certification, and two mediations with Professor Eric Green, who is well regarded as a skilled mediator. As a result, the Agreement is presumptively fair, reasonable and adequate. *In re Sturm, Ruger & Co., Inc.*, 2012 U.S. Dist. LEXIS 116930 at *12 (D. Conn. Aug. 20, 2012) ("the settlement was reached by experienced, fully-informed counsel after arm's length negotiations with the assistance of a mediator and therefore the parties are entitled to a presumption that the settlement was fair, reasonable and adequate.")

Likewise, although the approval of a class action settlement is a matter for the Court's discretion, proper consideration should be given to the consensual decision of the Parties. *See Greco v. Ginn Dev. Co., LLC*, 2015 U.S. App. LEXIS 20867 at *9 (11th Cir. Dec. 2, 2015) (unpublished) ("a district court may also rely upon the judgment of experienced counsel for the parties. Indeed, absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'"), *quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988) *aff'd*, 893 F.2d 347 (11th Cir. 1989) ("The Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"). Ultimately, a class action settlement should be approved if it is fair, reasonable and adequate, and not the product of collusion. *Bennett v. Behring*, 737 F.2d 982, 986 (11th Cir. 1984); *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV., 2002 WL 1162422, at *4

(S.D. Fla. May 7, 2002). When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1329 (S.D. Fla. 2001). As explained below, the settlement easily warrants final approval.

## II.      SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT

FACTA aims to help reduce identity theft by requiring merchants to eliminate certain personal financial information from credit and debit card receipts. *Redman v. Radioshack Corp., 768 F.3d 622, 639 (7th Cir. 2014)* ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.") To encourage private litigants to enforce FACTA's requirements, Congress incorporated FACTA into the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ("FCRA"), which entitles a successful plaintiff to statutory damages, costs and attorneys' fees for any "willful" violation of the law. *See Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1306-7 (11th Cir. 2009), citing 15 U.S.C. § 1681n(a)(l)(A), and (2).* Consistent with this intent, Plaintiff brought this action to resolve LabCorp's alleged systematic violation of FACTA's prohibition against printing credit and debit card expiration date information on transaction receipts. [ECF No. 17].

The litigation was hard fought throughout. On August 25, 2014, Plaintiff filed a First Amended Class Action Complaint. [ECF No. 17]. On September 11, 2014, LabCorp moved to dismiss. [ECF No. 20]. On October 23, 2014, after full briefing and a hearing, the Court denied the motion. [ECF No. 33, 34].

Extensive discovery ensued. In addition to written discovery, LabCorp produced more than 45,000 pages of documents, and the parties briefed and argued several discovery motions before Magistrate Judge Brannon. [ECF No. 76, 100, 123]. Because the claims at issue require

Plaintiff to prove that LabCorp "willfully" broke the law, and because LabCorp identified numerous potential witnesses, approximately twenty depositions were taken, including four experts. Moreover, almost all of the depositions took place outside of Florida, and thus required travel.

On March 11, 2015, the parties attended an initial mediation session before a private, third-party mediator, Professor Eric Green, in Washington D.C. The parties did not reach a settlement at that time, but discussed matters that would advance their ability to engage in meaningful settlement negotiations. After that, the negotiations continued through Professor Green by way of a number of telephone calls as the case progressed.[5]

On April 9, 2015, Plaintiff moved for class certification. [ECF No. 65]. On June 4, 2015, LabCorp moved to strike Plaintiff's expert. [ECF No. 97]. On July 1, 2015, the parties each moved for summary judgment, and the parties each moved to bar the admission of one-another's experts under *Daubert*. [ECF No. 140, 144].

On July 13, 2015, the Court held a hearing on Plaintiff's motion for class certification, LabCorp's motion for summary judgment, the parties' *Daubert* motions, and a number of related motions. [ECF No. 185]. At the end of the hearing, the Court took all motions under advisement.

On July 15, 2015, the parties attended a second full-day mediation before Professor Green, this time at his office in Boston. As a result of this mediation, the parties reached a

---

[5] Professor Eric Green is a principal of Resolutions, LLC. Professor Green is an ADR pioneer, co-founding two prominent ADR firms in the U.S. (including Endispute, which is now part of JAMS), and playing an instrumental role in assisting in the establishment of the Center for Public Resources (now the International Institute for Conflict Prevention and Resolution) in New York, CEDR in London and the mediation program in Hong Kong. He specializes in mediating and arbitrating complex legally-intensive multi-party cases including securities, financial, intellectual property, anti-trust, professional negligence, construction, product liability, mass tort, and all types of class actions. In August 2014, Professor Green was appointed the Monitor for the $7 billion Consumer Relief portion of the RMBS settlement between the DOJ, six states and Bank of America. He has served as a private and court-appointed mediator and special master in thousands of cases, including the Enron securities class action, Visa/MasterCard anti-trust cases, U.S. v. Microsoft, and many of the RMBS cases arising out of the 2005-2009 financial crisis.

preliminary settlement. [ECF No. 189]. After that, the parties spent over a month negotiating the final terms of the agreement and drafting the necessary papers attendant to the Settlement. *See Appendix 1.*

### III.   <u>SETTLEMENT TERMS</u>

The Settlement Class is defined as follows:

All individuals in the U.S. who: (i) made a payment at a LabCorp patient service center or equivalent (ii) using a debit or credit card, and (iii) for which LabCorp printed a point of sale receipt (iv) that displayed the card expiration date (v) between July 6, 2012 and the Preliminary Approval Date.

*See* [ECF No. 211, ¶2].

The Agreement provides, in §III.B, that LabCorp shall pay Eleven million Dollars ($11,000,000.00) for the benefit of the Class. Due to the substantial claim rate, a Settlement Class Member who properly and timely submitted a claim form will receive a pro rata share of the net settlement fund, or approximately $101.00. Furthermore, in addition to the payments to individual class members, LabCorp is agreed to the following:

**A.   Notice and Settlement Administration.** LabCorp agreed to pay the cost of the Notice Plan, including the cost of setting up and maintaining a settlement website to give class members additional information about the settlement and a convenient means to submit a claim, as well as the cost of postage for mailing the notice and settlement payments to class members. The final notice and administration costs will be between $508,351.56 and $536.951.56. *Appendix 2* at ¶14.

**B.   Incentive Payment.** Subject to court approval, LabCorp agreed to a payment to Plaintiff, in addition to any recovery that he is entitled to as a Settlement Class Member, as an Incentive Award for his service to the class in an amount not exceeding ten thousand dollars

($10,000.00). This is well within the range of reasonableness. *See Gevaerts v. TD Bank, N.A.*, No. 14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354 at *25-*26 (S.D. Fla. Nov. 5, 2015) ($10,000 incentive awards), *citing Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving incentive awards ranging from $5,000 to $100,000, and approving $10,000 for each plaintiff); *see also Cooper v. NelNet, Inc.*, 14-cv-314-RBD-DAB, Dkt. 85, p.5, ¶11 (M.D. Fla. Aug. 4, 2015) ($25,000 incentive award).[6]

    **C.    Payment of Attorneys' Fees and Expenses.** Subject to Court approval, the Parties agreed that Plaintiff's Counsel may apply to this Court for an award of attorneys' fees in an amount of 33.3% of the settlement fund, or three million, six-hundred and six-six thousand, six-hundred and sixty-seven dollars ($3,666,667.00), plus the expenses they incurred in connection with this Action. The mailed notice, website and posted long form notice all informed class members of both the exact dollar amount and percentage Class Counsel is requesting for fees. As noted above, no class member objected and the non-class member "objections" that have been filed are factually and legally deficient as will be set forth in the separate response.

    **D.    Release.** In exchange for the above relief, the release is limited to claims related to or arising out of the claims which were made or could have been made in this Litigation. *Appendix 1* at §II ¶U and §VI.

## IV.    THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT.

    Federal Rule 23 requires a court to direct to class members "the best notice that is practicable under the circumstances" describing, among other things, the action, the class certified, and class members' right to exclude themselves. Fed. R. Civ. P. 23(c)(2)(B). Further,

---

[6] *See also* Conte and Newberg, 4 NEWBERG ON CLASS ACTIONS, §11.38 (4th ed.) Indeed, "since without the named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' non-legal but essential case specific expenses." Service awards for named plaintiffs in TCPA class actions have been regularly granted.

before granting final approval to a proposed class settlement, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Finally, the Due Process Clause also guarantees unnamed class members the right to notice of a class settlement. *U.S. v. Alabama*, 271 F. App'x 896, 901 (11th Cir. 2008).

To satisfy these requirements, the notice must be calculated to "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determination regarding whether the settlement serves their interests." *Id.* at 901; *see also In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1317 (11th Cir. 2009) *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"), *quoting Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

However, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations omitted). Moreover, neither Rule 23 nor due process requires that all class members receive actual notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012). Instead, to determine whether the notice is sufficient, courts "look solely to the language of the notices and the manner of their distribution." *Alabama*, 271 F. App'x at 901, *quoting Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1286 (11th Cir. 2007).

The notice plan approved by the Court here provided exceptional notice that exceeds Rule 23 and due process requirements. First, the plan required the Claims Administrator to send the notice via regular mail to potential class members identified through LabCorp's billing name and address records. [ECF 211, ¶7]. Direct mail notice to potential class members, standing

alone, is generally sufficient. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to 'opt out,' [that] satisfies due process.")

Second, the plan also required the Claims Administrator to erect a settlement website to supplement the mailed notice, and which provided links to the Agreement and enabled class members to conveniently submit their claims on-line. [ECF No. 211, ¶7]. The notices also gave class members a toll free number to call. *Appendix 1*, at *Exhibits B-C*.

Finally, the notices gave class members a detailed explanation of the Agreement, including the relief, the release and amount of the proposed incentive award and the exact amount of attorneys' fees to be requested, to enable them to evaluate their options and make an informed decision.

In granting preliminary approval to the notice and claim procedures here, this Court found: "The Court has considered the Class Notice, attached as Exhibits B-C to the Agreement, including the proposed forms of notice, Summary Notice, Full Notice, and Settlement Claim Certification Form, and finds that the forms, content, and manner of notice proposed by the Parties and approved herein meet the requirements of due process and Fed. R. Civ. P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice." [ECF No. 211, ¶7]. These conclusions remain correct as evidenced by the terrific claim rate.

The Claims Administrator followed the Court-approved notice and claims procedures. As directed by the Settlement Agreement section B.1, the Claims Administrator sent notice to every identified class member. *Appendix 2*, at ¶3.

The Claims Administrator also set up the settlement website as well as the toll-free

9

number for class members to call with any questions or request that a claim form and long form notice be mailed to them. As of January 25, 2016, the website has been visited by 51,906 unique visitors. *Appendix 2* at ¶10. The claims administrator has handled a total of 21,314 phone calls at the toll-free number. *Appendix 2* at ¶9. In addition, the CAFA notice of the settlement was sent the U.S., state and other attorneys' general as required. *Appendix 5* (Ortiz Declaration).

Class members had until January 19, 2015 to request exclusion, and until January 25, 2016 to file an objection with the Court or submit a claim. [ECF No. 211, ¶¶9, 13]. As noted above, so far 67,019 class members filed claim forms, only twelve requested exclusion, and none objected. *Appendix 2* at ¶11, ¶13. In addition, no governmental entity objected in response to the CAFA notice. In short, the notice complies with the court-approved plan, meets Rule 23 and Due Process, and fully apprised the class of all material terms, how to obtain additional information and how to exercise their rights. By all accounts, the notice plan was not just adequate; it was a success.

## V.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THUS IT MERITS FINAL APPROVAL

Judicial and public policy favor the voluntary settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren*, 693 F. Supp. at 1054. ("[S]ettlements are highly favored in the law."),. With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Although approval of a settlement is a matter within the Court's discretion, some deference should be given to the consensual decision of the Parties. *See Warren*, 693 F.Supp. at 1054

("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation."). Ultimately, the Court should approve a class action settlement if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett*, 737 F.2d at 986 (11th Cir. 1984).

When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323, 1329 (S.D. Fla. 2001). In determining whether a settlement is "fair, adequate, and reasonable," the following factors are generally considered:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986. In addition, the Court makes an inquiry into "whether the settlement was procured by collusion among the parties or was the result of arms–length and informed bargaining." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1315 (S.D. Fla. 2005); *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1329 ("In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties.")

Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1344 (S.D. Fla. 2011) (citation omitted).

Here, the Agreement easily passes both tests, having been the product of arm's length, informed negotiations between the Parties with the assistance of a neutral mediator, and satisfying each of the Eleventh Circuit's *Bennett* factors.

**A.      The Agreement Is the Result of Arm's Length Negotiation between the Parties with the Assistance of an Experienced Mediator.**

The context in which the Agreement was reached confirms that it was the result of arms-length and informed negotiations among the Parties, and not collusion.

To start, the Agreement only came about after the motion to dismiss was denied and after the extensive discovery and motion practice set out above. The work put into the case gave experienced counsel ample information about the case facts and chance of success, to enable them to evaluate the terms of any proposed agreement, and thus ensure a fair compromise. *See Appendix 6* Lusskin Decl. at ¶16; *Appendix 7* Hilicki Decl. at ¶7; and *Appendix 8* Owens Decl., ¶30. Even then the Parties conducted two separate in-person mediation sessions and multiple telephonic conference calls by a highly experienced and well-respected neutral, Eric Green. This further demonstrates there was no collusion. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of …. a highly experienced mediator, lends further support to the absence of collusion."); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1340 (S.D. Fla. 2011) (no collusion where settlement reached by capable and experienced counsel and with the assistance of a well-qualified and experienced mediator).

As such, it is clear the Agreement is the result of arms-length and informed negotiation between the Parties, not collusion, and thus the Court should not hesitate to approve it.

**B.      The Settlement Meets Each of the Eleventh Circuit's *Bennett* Factors.**

In addition to being the product of arm's length negotiations, the Agreement also satisfies each of the *Bennett* factors.  It is important to keep in mind that "[i]n evaluating these considerations, the district court should not try the case on the merits." *Perez v. Asurion Co.*, 501

12

F. Supp.2d 1360, 1380 (S.D. Fla. 2007) (citation omitted). "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* Here, as explained below, each of the *Bennett* factors weighs in favor of granting final approval.

### 1.      Likelihood of Success at Trial.

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable, and adequate is the likelihood of success at trial. "The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma*, 406 F. Supp.2d at 1319. Where success at trial is not certain for a plaintiff, this factor weighs in favor of approving the settlement. *See Newman v. Sun Capital Corp.*, No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 at *30 (M.D. Fla. Aug. 28, 2012).

Here, Plaintiff's and the class members' ultimate success at trial is far from guaranteed. Plaintiff's counsel is confident in the strength of the claims alleged in the Complaint. Nevertheless, litigation is inherently unpredictable and the outcome of a trial is never guaranteed.

Indeed, Plaintiff and the class members face significant risks in taking this matter to trial, including the possibility that the case may be defeated by LabCorp's pending summary judgment motion, the possibility that the Court may deny the pending contested motion for class certification out of concerns about trial manageability, and of course the possibility that the jury concludes that LabCorp's alleged violation of FACTA here was not willful. LabCorp is represented by competent and formidable trial counsel.

Also, two cases are pending before Supreme Court that could affect Plaintiff's and the class members' Article III standing and the ability to certify a class. *See Spokeo, Inc. v Robins*, No. 13-1339 (addressing whether statutory damage class actions lack Article III standing, in

which event case Plaintiff and the proposed class would have to litigate the case from scratch in state court) and *Tyson Foods, Inc. v. Bouaphakeo*, No. 14-1146 (addressing class certification issues). Moreover, some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, at \*13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation—would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.") Defendant raised this argument here which, if ultimately accepted, could considerably affect the class's potential recovery.[7] Finally, Plaintiff recognizes the expense, duration, and complexity of continued litigation would be substantial and possibly require further briefing on numerous substantive issues, extensive trial preparation, and appeal. *See Appendix 6* Lusskin Decl. at ¶14; *Appendix 7* Hilicki Decl. at ¶¶11-13; and *Appendix 8* Owens Decl. at ¶28.

Against the inherent uncertainty raised by these issues is the substantial and concrete cash relief the class members will receive under the Agreement. Given the high value of this settlement – believed to be the largest cash FACTA settlement in history[8] – Plaintiff expected no significant opposition to it by any class member and in fact, Plaintiff was correct. In the end, when the strengths of the Plaintiff's claims are weighed against the legal and factual obstacles present, and

---

[7] *But see Phillips Randolph Enters., LLC v. Rice Fields*, 2007 U.S. Dist. LEXIS 3027 at \*7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

[8] The previous largest all cash FACTA truncation settlement is believed to be *Lumas v. Sw. Airlines Co.*, No. 3:13-cv-01429-CRB (S.D. Cal. 2013). In that case, Southwest estimated that the class total was between 880,000 and 2,200,000 transactions and the entire settlement was for $1.8 million, less than 20% the value of this settlement.

14

the complexity of class action practice, there should be no doubt that this settlement is in the class members' best interests.[9] As such, the first *Bennett* factor weighs in favor of approving it.

### 2. Range of Possible Recovery and the Point at which the Agreement Is Fair, Reasonable, and Adequate

Analysis of the second and third *Bennett* factors – the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable – are often combined. *In re Sunbeam*, 176 F. Supp.2d at 1331. As in most litigation, "[t]he range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Co.*, 517 F. Supp.2d 1292, 1326 (S.D. Fla. 2007), *quoting Lipuma*, 406 F. Supp.2d at 1322. However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figueroa*, 517 F. Supp.2d at 1326.

The monetary relief secured on behalf of the Settlement Class is substantial. It is believed to be the largest aggregate recovery for a class action alleging FACTA violations. Each class member who submits a timely and valid claim will receive approximately $101.00 in cash. This is plainly fair, reasonable and adequate, as the relief here easily surpasses the potential per-class-member benefit conferred in other FACTA class settlements that received final approval. *See*, *e.g.*, *Katz v. ABP Corp.*, 2014 U.S. Dist. LEXIS 141223 at *2 (E.D.N.Y. Oct. 3, 2014) (FACTA class settlement that gives class members a choice to make a claim for $9.60 in cash or a coupon for $15 off of future purchases from defendant); *Hanlon v. Palace Entm't Holdings*, LLC, 2012 U.S. Dist. LEXIS 364 at *14-*15 (W.D. Pa. Jan. 3, 2012) (FACTA class settlement that provides the class with admission tickets to defendant's amusement park); *Todd v. Retail Concepts Inc.*, 2008

---

[9] *See Appendix 6* Lusskin Decl. at ¶17; *Appendix 7* Hilicki Decl. at ¶15; *Appendix8* Owens Decl. at ¶31.

15

U.S. Dist. LEXIS 117126 at *16 (M.D. Tenn. Aug. 22, 2008) (FACTA class settlement providing a $15 credit on class members' next purchase of $125 or more from the defendant); *Palamara v. Kings Family Restaurants*, 2008 U.S. Dist. LEXIS 33087 at *9-*10 (W.D. Pa. Apr. 22, 2008) (FACTA class settlement providing vouchers worth an average of $4.38 each to get appetizers, soup, desserts and other small menu items when visiting the defendant's restaurants in future); *Long v. Joseph-Beth Grp., Inc.,* No. 07-cv-00443 (W.D. Pa. May 5, 2007) (A class of 400,000 members could claim a $5 voucher.)[10] As such, the settlement is well within the range of what is fair, reasonable and adequate, and the second and third *Bennett* factors support approval.

### 3.    The Complexity and Expense of Further Litigation

The next factor is the complexity and expense of further litigation.  In evaluating this factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp.2d at 1323 (citation omitted). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F. Supp.2d at 1381, *quoting Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543, 543 (S.D. Fla. 1988).

This factor favors approving the Agreement because the expense and complexity of further litigation would be substantial. It would require any further proceedings to be had on Plaintiff's pending class certification motion and *Daubert* motion, Defendant's pending summary judgment motion and pending *Daubert* and related motions, completing the briefing on Plaintiff's motion for summary judgment and arguing that motion, as well as conducting any remaining pretrial

---

[10] FACTA nominally provides a potential recovery of $100 to $1,000 if the violation is willful, but this does not take into consideration the risk of losing on the merits, the risk of losing a due process challenge to the aggregate statutory damages award or the risk of losing class certification. Factoring in these risks necessitates a discounted recovery.

motion practice, preparing the final pretrial order, conducting the final pretrial conference, and conducting a trial.  If the Court were to grant class certification or grant summary judgment in either parties' favor then, given the stakes, the losing side would likely seek relief from the Eleventh Circuit.  In either case, continued litigation would delay the case's resolution, impose additional unnecessary expense on both sides, and consume substantial additional judicial resources. When, as here, additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp.2d at 1323, *quoting In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La. 1993); *see also Perez*, 501 F.Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.") In sum, the complexity, expense, and duration of litigation favors the approval of this Agreement.

### 4.    Substance and Amount of Opposition to Agreement

The next *Bennett* factor is the substance and amount of opposition to the Agreement. Here, out of more than six-hundred-thousand class members, not a single class member objected to the settlement, and only twelve class members requested exclusion. *Appendix 2* at ¶11. These facts, combined with the high claim rate by the rest of the class, shows that this factor weighs fully in support of granting final approval. *See Lipuma*, 406 F.Supp.2d at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-986, 2006 U.S. Dist. LEXIS 88347 at *44 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair.").

17

### 5.   Stage of Proceedings at which Settlement Achieved

The final *Bennett* factor looks to the stage of proceedings at which the settlement was achieved. This factor is used "to ensure that the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F. Supp.2d at 1383; *see also Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-cv-14017, 2002 U.S. Dist. LEXIS 28975 at *21 (S.D. Fla. May 7, 2002) ("Because the parties have expended much effort in analyzing the issues, this Court should find that the parties are at a proper juncture with sufficient information to settle this action."); *In re Sunbeam*, 176 F. Supp.2d at 1332 ("Obviously, the case had progressed to a point where each side was well aware of the other side's position and the merits thereof.  This factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable.")

Here, the Agreement was not reached until after the review of tens-of-thousands of pages of documents, twenty-depositions (including four expert depositions), a ruling on a motion to dismiss, the closure of discovery, the preparation of Plaintiff's summary judgment motion, and full briefing and argument on Defendant's summary judgment motion, Plaintiff's class certification motion and the parties' dueling *Daubert* motions, and even then the settlement was not reached until after two full days of mediation before a professional neutral. Class Counsel ensured they had sufficient information about the allegations of the complaint, the size of the Settlement Class, and the range of the Settlement Class's potential damages. Hence, there should be no question that, by the time the Agreement was reached, Class Counsel had enough information to sufficiently evaluate the strength of the claims of the Settlement Class and weigh the benefits of the Agreement against continued litigation.  The stage of proceedings factor thus weighs in favor of final approval.

18

## VI.    THE ATTORNEYS' FEE AND EXPENSES REQUESTED ARE REASONABLE

In the Eleventh Circuit, "it is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *In re Checking Acct. Overdraft Litig.*, 830 F. Supp.2d at 1358, *citing Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) and *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Like the relief to be provided to the class, the Parties' subsequent agreement on the attorneys' fee and expense award stems from the last mediation with Mr. Green. While it is within the Court's discretion to determine the reasonableness of the proposed award, negotiated attorneys' fee and expense awards in class action settlements are strongly encouraged. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."); *accord Cohn v. Nelson*, 375 F.Supp.2d 844, 861 (E.D. Mo. 2005) ("where, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference.")

The reasonableness of the fees sought here is confirmed by examining them both as a percentage of the total settlement, as well as the various factors established for evaluating attorney fee requests (including the "Johnson" or "Camden I" factors). *Camden I Condo. Ass'n*, 946 F.2d at 774-775.

### A.    The Fee Amount Is Reasonable as a Percentage of the Total Settlement

"The majority of common fund fee awards fall between 20% to 30% of the fund." *Id.* at 774. Courts regard this range as the "bench mark" range of reasonableness. *See Id.* at 775. The benchmark, however, is only that. The award may exceed it. *Id.* at 774-775 (as a general rule, "an upper limit is 50%"); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th

Cir.1999) (affirmed class attorneys' award of 33.3%). *See, e.g., Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions). This Court reached the same conclusion in *Gevaerts* 2015 U.S. Dist. LEXIS 150354 at *29 (discussing the range of reasonableness for fee requests).

The mediated fee and expense award here easily falls within the recognized range of reasonableness. The mailed notice, long form notice and website all specifically set out both the amount and corresponding percentage of the attorney fees that were to be requested, stating: "...Class Counsel's Fees not to exceed one third of the fund, which is $3,666,667 plus expenses." *Appendix 1*, at *Exhibit B-C*. The notice also advised that counsel would seek reimbursement of their expenses, and here Class counsel incurred $59,689.29 in out-of-pocket expenses in prosecuting this case, consisting of deposition costs, expert costs, mediation fees, and travel costs to depositions, mediations and hearings. *See Appendix 6* Lusskin Decl. at ¶18; *Appendix 7* Hilicki Decl. at ¶16; and *Appendix 8* Owens Decl. at ¶32. It is worth noting that none of the expenses for which reimbursement is sought are for overhead-type items such as copying, legal research, telephone calls or meals, etc. *Id*.

The requested fee and expense amount is reasonable given the substantial monetary recovery alone, but the reasonableness of the request is further enhanced by the non-monetary benefits this case conferred upon the class. *See Faught*, 668 F.3d at 1244-1245 (fee and cost award reasonable in part because "the $1.5 million payment is designed to compensate the class counsel for the non-monetary benefits they achieved for the class.") Specifically, in direct response to this lawsuit, LabCorp reprogrammed its computerized payment system nationwide to stop printing expiration dates on transaction receipts.

20

Indeed, the Eleventh Circuit affirmed the approval of a $5.68 million attorneys' fee award when the class only claimed $344,850 and there was nonmonetary relief. *Poertner v. Gillette Co.*, 618 F. App'x 624, 631 (11th Cir. 2015) (Unpublished). The Eleventh Circuit looked at the amount made available, the value of all of the factors and held:

> While no published opinion of ours extends Camden I's percentage-of-recovery rule to learned treatise aptly illustrates, properly understood "[a] claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant"; indeed, the two types of settlements are "fully synonymous." 4 Rubenstein, *Newberg on Class Actions* § 13:7.

*Id.* at 628 fn. 2. The Eleventh's Circuit's decision in *Poertner* is in accord with *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In *Boeing*, the Supreme Court rejected the notation that the fees should be limited to the amount of funds claimed by the class members.[11] Instead, the Supreme Court held that fees should be based on the amount made available:

> Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel. Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs. The judgment entered by the District Court and affirmed by the Court of Appeals rectifies this inequity by requiring every member of the class to share attorney's fees to the same extent that he can share the recovery Since the benefits of the class recovery have been "traced with some accuracy" and the costs of recovery have been "shifted with some exactitude to those benefiting."

*Id* at 480-81. In this case, there is no reversion, not a penny is going back to Defendant, the net settlement fund is being distributed to the class members who make claims, and so regardless of the number of claims (which in this case, were quite high), the class recovery is far more than counsel's fees. As such, Plaintiff's fee and expense request is reasonable, especially in light of the fact that

---

[11] "Boeing appealed only one provision of the judgment. It claimed that attorney's fees could not be awarded from the unclaimed portion of the judgment fund for at least two reasons. First, the equitable doctrine that allows the assessment of attorney's fees against a common fund created by the lawyers' efforts was inapposite because the money in the judgment fund would not benefit those class members who failed to claim it." *Id* at 480.

Plaintiff is not also seeking a percentage of the value nonmonetary relief, even though this is allowed by the Eleventh Circuit.

Finally, and perhaps most significantly, not a single class member objected to counsel's fee and expense request. The opposition filed by non-class members, who therefore lack standing to oppose the settlement, simply offer inaccurate, boilerplate objections that will be addressed separately. The fees and expenses requested are reasonable.

**B.    The Fee and Expense Amount Is Also Reasonable under the *Johnson/Camden I* Factors.**

In cases where fees are sought in excess of 25%, the Eleventh Circuit endorses using the factors articulated *Johnson v. Georgia Highway Expr., Inc*., 488 F.2d 714 (5th Cir. 1974), to confirm the reasonableness of fee and expense request. *See Camden I Condo. Ass'n*, 946 F.2d at 775. The "*Johnson*" or "*Camden I*" factors are (1) the time and labor required;[12] (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772, n.3. These factors confirm the reasonableness of counsel's fee and expense request.

---

[12] The Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions ... "[and] [t]he lodestar approach should not be imposed through the back door via a 'cross-check.'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362.

### 1. The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Cost and Fee Amount.

The first, fourth, and seventh *Johnson/Camden I* factors – the time and labor, preclusion of other employment, and time limitations imposed, respectively – are interrelated inquires and each support the reasonableness of the request. This case has been pending since 2014 and Class Counsel had to engage in substantial litigation against a well-heeled defendant and sophisticated defense counsel to reach the Settlement.

The work needed was extensive. Plaintiff's counsel undertook exhaustive discovery. As noted above, counsel reviewed tens-of-thousands of pages of documents, and took most of the approximately twenty depositions needed in this case, including three of the four expert depositions.

The work before this Court was also extensive. The Agreement was not reached until after a ruling on the motion to dismiss, rulings on discovery motions, the close of discovery, full briefing and argument on summary judgment, class certification and *Daubert* motions, and Plaintiff's preparation and filing of his own summary judgment motion on behalf of himself and the proposed class. The substantial work necessitated by this case diverted the time and resources from being put into other matters. *See Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (The expenditure of time necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award.); *see also Stalcup v. Schlage Lock Co.*, 505 F. Supp.2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium.")

Finally, and perhaps most tellingly, no Settlement Class Member objected to class counsel's effort or the proposed fee and expense award, even though the notice explicitly told

them of both the percentage and the fee amount sought. Even if the two "objectors" counsel had standing to weigh in, they only amount to 0.00000321% of the class. Accordingly, their self-serving opinions do not and cannot justify upending a fee and expense request that no class member objected to, and that the more than 67,000 persons who submitted a claim affirmatively support. *See, e.g., Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (affirming final approval where 13% of the class submitted written objections); *In re Southwest Airlines Voucher Litig.*, No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Dec. 6, 2013) (the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement").

### 2. The Case Involved Difficult Issues; the Risk of Nonpayment and Not Prevailing on the Claims Was High.

The second, sixth, and tenth *Johnson/Camden I* factors—the novelty and difficulty of the questions, whether the fee is contingent, and the "undesirability" of the case, respectively—are also interrelated and support the requested cost and fee award.

This case is novel on several levels. First, it is an open issue on what evidence is required to prove that LabCorp "willfully" violated the law. That is one reason for the large number of depositions on this issue. In addition, assuming that Plaintiff prevailed and proved a "willful" violation, it is a novel issue of what the damage award would be. As noted above, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano*, 2011 U.S. Dist. LEXIS 48323, at *13 ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation—would not violate Defendant's due process rights . . . . Such an award, although

authorized by statute, would be shocking, grossly excessive, and punitive in nature.")[13] Another novel issue is whether Plaintiff has standing to assert state a claim for statutory damages under Article III. *See Spokeo, Inc. v Robins*, No. 13-1339 (addressing whether a claim for only statutory damage under the FCRA lacks Article III standing.).

In addition, the ability to recover fees and expenses here has always been contingent on a successful outcome and substantial recovery. Counsel had to advance the fees and expenses, and risked receiving nothing in return. This is important because "[a] determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007). Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Acc't Overdraft Litig.*, 830 F.Supp.2d at 1364, *quoting In re Sunbeam Sec. Litig.*, 176 F. Supp.2d at 1335. Accordingly, some courts have observed that "[a]ttorneys' risk is perhaps the foremost factor in determining an appropriate fee award." *Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2007 U.S. Dist. LEXIS 96618 at *35 (S.D. Fla. Jan. 30, 2007), *citing Pinto,* 513 F. Supp.2d at 1339.

The case's novelty and contingent nature demonstrate its undesirability. Few lawyers will take on a lawsuit that consumes significant attorney time, involves uncertain questions, and requires the lawyers to advance substantial out-of-pocket expenses, and risk getting paid nothing, especially when the prior class settlements under FACTA provided very little incentive to take these cases.

---

[13] *But see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, at *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Although Class Counsel were able to achieve an excellent result for the class, the outcome was anything but certain when they agreed to take the case, and thus these factors all weigh in favor of approving the mediated fee and expense amount. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight"), *citing Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.* 540 F.2d 102, 112 (3d Cir. 1976)).

### 3.   Class Counsel Achieved an Excellent Result for the Settlement Class.

The eighth *Johnson/Camden I* factor looks to the amount involved in the litigation with particular emphasis on the "monetary results achieved" in the case by class counsel. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp.2d 1185, 1202 (S.D. Fla. 2006).

Here, the parties' mediated Agreement provides a Settlement Fund of $11,000,000 for a class of approximately 622,610 persons. *Appendix 2* at ¶6. Once again, each class member who submitted a valid claim will receive approximately $101.00 which, as noted above, is far greater than the recoveries in other FACTA settlements that were granted final approval, and is the largest all cash settlement under FACTA. This factor thus weighs strongly in favor of approving the fee and expense amount.

### 4.   The Requested Fee is Consistent with Other FACTA Class Settlements.

The fifth and twelfth *Johnson/Camden I* factors, the customary fee and awards in similar cases supports approval. As pointed out, there are really no similar FACTA class settlements, but there are plenty of other consumer statutory class actions that allow recovery of fees in the amount of one third of the settlement even though the plaintiff in those cases did not have to prove willfulness, and thus those cases were arguably more desirable cases. *See De Los Santos v*

*Millward Brown Inc.*, 9:13-CV-80670-DPG (S.D. Fla. 2015) (awarding one-third of gross amount of settlement for attorneys' fees); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 1:99–md–01317–PAS, ECF No. 1557 at 8–10 (S.D. Fla. Apr. 19, 2005) (approving fee award as percentage of gross amount of common fund, stating: "Class Counsel are hereby awarded 33 1/3% of the gross Settlement Fund (plus interest thereon), arising out of the Settlement, before deduction of any costs, expenses, or incentive awards, as their fee award."); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 1:95–cv–02152–ASG, ECF No. 626 at 7 (S.D. Fla. May 30, 2003) (approving fee award of one-third of gross amount of common fund settlement plus $1.2 million in expenses); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747 at *6 (M.D. Fla. Dec. 29, 2011) (approving fee award of one-third of gross amount of common fund); *Guarisma v. ADCAHB Medical Coverages, Inc., et al.*, 1:13-cv-21016, Doc. 95 (S.D. Fla. June 24, 2015) (awarding one third of the fund, plus costs). Accordingly, this factor also favors the fee and expense award sought.

### 5.    This Case Required a High Level of Skill.

The remaining *Johnson/Camden I* factors – the skill required to perform the legal services properly, and the experience, reputation, and ability of the attorneys, all confirm that the fees and expenses sought are reasonable. As shown above, Class Counsel achieved a settlement that confers substantial monetary and non-monetary benefits to the Settlement Class despite the hard fought litigation against a sophisticated and well-financed defendant represented by top-tier counsel. *See In re Sunbeam Sec. Litig.*, 176 F.Supp.2d at 1334 ("In assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced.")

This outcome was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope and complexity. Class Counsel regularly engage in complex

litigation involving consumer issues, and they have been appointed class counsel in numerous consumer class actions.  *See Appendix 6* Lusskin Decl. at ¶11; and *Appendix 7* Hilicki Decl. at ¶3; *Appendix 8 Owens Decl.* at ¶¶18-24. Thus, the *Johnson/Camden I* factors confirm that the mediated attorneys' fee and expense award is reasonable.

## VII.    CONCLUSION

This Agreement provides substantial and immediate cash benefits for the Class, it is the result of arm's length, informed negotiations with the assistance of an experienced mediator, it satisfies each of the six *Bennett* factors, and class counsel's fee and expense request satisfies each of the *Johnson/Camden I* factors. Both the settlement and counsel's fee and expense request are fair, reasonable, and adequate under Rule 23, and thus Plaintiff respectfully requests that this Court enter an order granting them final approval. A draft Final Approval Order is attached as *Appendix 9.*

Respectfully Submitted

*/s/ Scott D. Owens*
SCOTT D. OWENS, Esq.
3800 S. Ocean Drive, Ste. 235.
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

BRET L. LUSSKIN, Esq.
20803 Biscayne Blvd., Suite 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

Michael S. Hilicki (*pro hac vice*)
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.374.3402 (Direct)
312.726.1092 (Main)

28

312.726.1093 (Fax)
MHilicki@KeoghLaw.com
www.KeoghLaw.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that February 1, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this February 1, 2016, in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: <u>*/s/ Scott D. Owens*</u>

Scott D. Owens, Esq.

30