**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:14-cv-61543-RLR**

| | |
|---|---|
| CHRISTOPHER W. LEGG<br>Individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>LABORATORY CORPORATION OF<br>AMERICA HOLDINGS, INC., a Delaware<br>corporation,<br><br>                  Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>PLAINTIFF'S RESPONSE TO OBJECTIONS TO SETTLEMENT</u>**

## I.    <u>INTRODUCTION</u>

After thoroughly evaluating the claims at issue through full discovery, motion practice and hard-fought settlement negotiations, including two full-day mediations that were months apart before Professor Eric Green and extensive follow up discussions, Class Counsel negotiated a Settlement under which Defendant is paying $11,000,000 in cash to a non-reversionary Settlement Fund for the benefit of the class. Upon final approval, the net proceeds of the fund will be distributed *pro rata* to every claimant. Based on the claims to date, each claimant will receive over $100. No money will revert back to Defendant. The Settlement is a great result, particularly in light of serious litigation risks, and the fact that it is almost certainly the largest all cash settlement in history under the Fair and Accurate Credit Transactions Act (FACTA).

Of the approximately 622,000 Class Members, none objected to the settlement. [1] Nevertheless, three non-class members submitted objections. Two of these non-class member objectors (Messrs. Helfand and Miorelli) have since withdrawn their objections, and thus their submissions are no longer at issue. (ECF Nos. 213, 221). [2]

The remaining objector (Ms. Bosse/Hasen), in addition to not being a class member and thus having no standing to object, waived her alleged right to object by filing her objection beyond the deadline set by the Court. Also, her attorney, Joseph Darrell Palmer, is a notorious "professional" objector and thus not credible. Mr. Palmer is currently facing a potential two-year suspension of his law license in California, and he has been criticized by multiple courts for attempting to hold up settlements with vexatious objections.

Professional or "serial" objectors like Mr. Palmer have raised the ire of federal courts for playing no positive role in class action litigation and contributing no benefit to class members. It comes as no surprise, then, that even if Mr. Palmer's client and the other non-class member

---

[1] This fact, coupled with the high claims rate the settlement received from class, demonstrates that the actual class members overwhelmingly approve of the Settlement, further demonstrating it is fair, reasonable, and adequate.

[2] In light of Mr. Miorelli's withdrawal of his objection to the settlement, the matter regarding Mr. Miorelli in fn.3 and Appendix 4 of the motion for final approval is irrelevant.

objectors actually had standing to object, their submissions are substantively meritless because they misunderstand or misstate the Settlement Agreement and basic class action jurisprudence. They ignore the fact that Class Counsel obtained an excellent result for the Class despite multiple and very real risks of an adverse ruling on class certification or the merits. None of the objections present any valid reason for declining to grant the settlement final approval.

## II.      The Objectors Have No Standing, and Ms. Bosse's Objection Is Also Untimely.

"Under Fed.R.Civ.P. 23(e), non-class members are not permitted to assert objections to a class action settlement." *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 473 (S.D. Fla. 2002), *citing Gould v. Alleco*, 883 F.2d 281, 284 (4th Cir. 1989). The reason for this is that a stranger to the case has no stake in the outcome, and thus lacks standing to object. *See Raines v. State of Florida*, 987 F.Supp. 1416, 1418 (N.D. Fla. 1997) ("only the parties to the settlement of a class action (plaintiffs, class members, and the settling defendants), have standing to object to the fairness of the settlement."); *Ass'n for Disabled Americans*, 211 F.R.D. at 474 ("like any plaintiff, Objectors must still possess a 'specific and concrete factual allegation of injury.'") (citation omitted).

Consistent with this basic requirement, the Court's order granting preliminary approval to the settlement only permits "Settlement Class Members" to object. [ECF No. 211 at ¶17]. To be a Settlement Class Member, one must meet the class definition, which only includes persons who used a debit or credit card at a LabCorp patient service center or equivalent during the class period for which a point-of-sale transaction receipt was printed that included the card expiration date. [ECF No. 211 at ¶2].

Messrs. Helfand and Miorelli withdrew their objections after acknowledging they did not receive transaction receipts that included the expiration dates of their cards, and thus that they are not class members and lack standing to object. (ECF No. 213, 220). Likewise, the Claims

Administrator specifically determined that the remaining objector, Debbie Bosse a/k/a Debbie Hasen, is not on the list of class members that LabCorp compiled from its transaction data for the class period. (Supplemental Declaration of Jay Geraci, attached as Exhibit 1, at ¶4).[3]

"The burden is on [the objector] to prove that [s]he has standing to object (*i.e.,* that [s]he is an aggrieved class member)." *In re Tracfone Unlimited Serv. Plan Litig.*, 2015 U.S. Dist. LEXIS 86719 at *35 (N.D. Cal. July 2, 2015) (collecting cases, including *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103-104 (1998)). Class Counsel confronted Mr. Palmer with Ms. Bosse/Hasen's absence from the class list on multiple occasions, and asked him for information showing that she is a class member. (Hilicki Declaration, attached as Exhibit 2, at ¶2). But Mr. Palmer did not respond, let alone produce any proof, even though in the objection he asks that he be contacted "for any further needed information." (ECF No. 215, p.1). Thus, Ms. Bosse has not met her burden, she is not in the class, she has no standing to object and, for this reason alone her objection should be rejected. *Ass'n for Disabled Americans*, 211 F.R.D. at 473.

Ms. Bosse's objection also should be rejected because it is untimely, and therefore waived. *See Ass'n for Disabled Americans*, 211 F.R.D. at 475, *citing In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 252 (3d Cir. 2001) ("Objectors also are barred from being heard due to their violation of the Court's objection filing deadline.") Contrary to Mr. Palmer's unsupported claim that he only needed to "postmark" the objection by January 25, 2016, both the Court's order granting preliminary approval and the class notice plainly state that any objection must be "filed" with the Court by no later than January 25, 2016. (ECF No. 211 at ¶17) ("no papers or briefs submitted by or on behalf of any such person shall be accepted or considered by the Court unless filed with the Court …. on or before January 25, 2016); ECF No. 218-2 at p.7 ("You must file

---

[3] Significantly, each class member is assigned a claim number, yet Ms. Bosse/Hasen's objection does not state one for her.

your written objection with the Court by January 25, 2016") and at p.13 ("**To be considered, you must file your objections with the Court .... no later than January 25, 2016.**") (emphasis in original). Despite these clear instructions, Mr. Palmer did not file Ms. Bosse's objection until January 29, 2016. (ECF No. 215, p.1). This additional reason, standing alone, demonstrates that Ms. Bosse's objection should be rejected. *Ass'n for Disabled Americans*, 211 F.R.D. at 475. As set out below, Mr. Palmer is one of the most prolific objectors in the country, and thus the implied suggestion that he was confused by the objection filing requirement rings hollow.

### III.  Professional Objector Joseph Darrell Palmer Lacks Credibility.

### A.  Objections by Professional/Serial Objectors Should Be Given Little Weight.

A class member objector can sometimes provide assistance to the parties, the class and the Court by identifying a genuine problem in a proposed settlement. However, "serial" or "professional" objectors and their counsel are a different matter. They file meritless objections just to extract payments for themselves by threatening years of delay and expense on appeal:

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.

*Barnes v. FleetBoston Fin. Corp.*, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, *3-4 (D. Mass. Aug. 22, 2006); *see also Vollmer v. Selden,* 350 F.3d 656, 660 (7th Cir. 2003) (improper to file objection to "cause expensive delay in the hope of getting paid to go away").

The respected authors of Newberg on Class Actions observe that filing objections to class settlements has become a "big business." ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS 11:55 (4th Ed. 2008); *see also* § 15:37 (entitled Abusive Conduct by Counsel Objecting to Class Action Settlements). UCLA law professor William Rubenstein has written that "[t]his part of the profession has arguably attracted lawyers more

interested in coercing a fee than in correcting a wrong." WILLIAM B. RUBENSTEIN, THE FAIRNESS HEARING: ADVERSARIAL AND REGULATORY APPROACHES, 53 UCLA L.REV. 1435, 1459 (2006) (citations omitted). Professor Ed Brunet bluntly characterizes professional objectors as "warts on the class action process" and "bottom feeders." EDWARD BRUNET, CLASS ACTION OBJECTORS: EXTORTIONIST FREE RIDERS OR FAIRNESS GUARANTORS, 2003 U. CHI. LEGAL F. 403, 409 (2003). After detailing the extortionist practices of some professional objectors, Professor Brunet observed that they "are as welcome in the courtroom as is the guest at a wedding ceremony who responds affirmatively to the minister's question, 'Is there anyone here who opposes this marriage?'" *Id.* at 408 n.21.

Accordingly, "when assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first." *Dennis v. Kellogg Co.,* No. 09-cv-1786, 2013 U.S. Dist. LEXIS 163118, at *11 n.2 (S.D. Cal. Nov. 14, 2013); *In re Law Office of Jonathan E. Fortman, LLC,* No. 4:13MC00042, 2013 U.S. Dist. LEXIS 13903, at *3 (E.D. Mo. Feb. 1, 2013) (same).

### B.    Joseph Darrell Palmer's Track Record Speaks for Itself.

Mr. Palmer's submissions should be given little or no weight. Putting aside that his client is not a class member and that Mr. Palmer filed her objection too late, Mr. Palmer also fails to notify this Court that the California Bar issued a decision recommending that Mr. Palmer be placed on two years' stayed suspension, two years' probation with conditions, and a ninety day actual suspension for lying about a prior criminal conviction and corresponding discipline by three state bars on three separate applications to appear *pro hac vice* to object to settlements filed in jurisdictions outside of California.[4] Mr. Palmer is only eligible to practice law because the decision is tolled pending his appeal. (Exhibit 2 (Hilicki Decl.) at Ex. C).  Ironically, neither Mr.

---

[4] The California Bar found that, among other things, Mr. Palmer "committed three acts involving moral turpitude in three separate client matters" and, thus, "the magnitude of the misconduct is significant." http://members.calbar.ca.gov/courtDocs/12-O-16924-2.pdf at p. 11.

Palmer nor his local counsel has filed an appearance in this case despite filing an objection, in an apparent attempt to avoid disclosure of his track record.

In addition to omitting the state bar disciplinary action against him, Mr. Palmer has engaged in numerous vexatious and bad faith litigation and appeals in the class action settlement context, including in the following cases:

- *Arthur v. Sallie Mae*, *Inc.*, No. C10-198JLR (W.D. Wash.): In connection with his objection to a TCPA class action settlement, Judge Robart admonished Mr. Palmer for his "flat out" false representations to the court and granted the plaintiffs' motion for revocation of Mr. Palmer's *pro hac vice* application. Judge Robart further noted that "many of [Mr. Palmer's] motions since the motion to intervene have been rejected by the court, suggesting that the actions were to disrupt and delay, which is consistent with the fact that Mr. Palmer is a, and I'll use the phrase 'professional' not in any favorable sense, objector." (Exhibit 2 (Hilicki Decl.) at Ex. D, Transcript of Motion Hearing, at 16).

- *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 07-md-1827, Dkt. Nos. 7618 & 8759 (N.D. Cal.): Judge Illston held Mr. Palmer in contempt and imposed monetary sanctions for failure to comply with court orders regarding objector discovery.

- *In re Uponor Inc. F1807 Plumbing Fittings*, No.11-2247, Dkt. No. 132 (D. Minn.): Judge Montgomery held "that the Palmer Objectors have evidenced bad faith and vexatious conduct . . . . [T]he Palmer Objectors appear to be represented by an attorney who has not entered an appearance in this case and who is believed to be a serial objector to other class action settlements.  This attorney, Darrell Palmer, paid the appellate filing fee on behalf of the Palmer Objectors, and the documents filed on their behalf bear his California mailing address rather than the Texas address of the Palmer Objectors . . . . The Palmer Objectors' objections and subsequent appeal appear little more than dilatory tactics of questionable motivation."

- *In re GIB LLC Cases*, J.C.C.P. No. 4657, Dkt. No. 4657 (Super. Ct. Cal. Oct. 22, 2013): An objector who had been represented by Mr. Palmer withdrew her objection after she realized that Mr. Palmer had advanced objections that she did not authorize, agree with, or understand. (Exhibit 2 (Hilicki Decl.) at Ex. E).

*See also In re Oil Spill by Oil Rig Deepwater Horizon*, MDL 2179, 2013 U.S. Dist. LEXIS 4595, at *154 n.40 (E.D. La. Jan. 11, 2013) (noting that "Mr. Palmer has been deemed a 'serial objector'" with a history of "admitt[ed] . . . 'bad faith and vexatious conduct'"); *Heekin v. Anthem, Inc*., 2013 U.S. Dist. LEXIS 26700, at *9 (S.D. Ind. Feb. 27, 2013) (finding "bad faith and vexatious conduct by insisting upon arguments that mischaracterize and misapply Seventh Circuit case law" and noting Darrell Palmer's reputation as "a serial objector").

Courts have also admonished Mr. Palmer for making frivolous objections. *See, e.g., In re Dell Sec. Litig*., No. A-06-CV-726-SS, Dkt. No. 342 (W.D. Tex. Jan. 11, 2011) (describing Mr. Palmer's objection as "absurd" and showing "little respect for the intelligence of this Court."); *City of Roseville Empls. Ret. Sys. v. Orloff*, 484 Fed. Appx. 138, 141 (9th Cir. 2012) (finding Mr. Palmer's appeal of an award of attorneys' fees to be "meritless" and based on misapprehensions of the law); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO at Dkt. No. 121 at n.3 (N.D. Cal. July 11, 2014) ("Attorney Darrell Palmer, who courts have 'widely and repeatedly criticized as a serial, professional, or otherwise vexatious objector.")

Mr. Palmer himself admitted, at the 15th Annual National Institute on Class Actions, that objecting to class actions is his "hobby" and that he has accepted "a lot" of money to "sell appeals" over the preceding decade.[5]

On top of that, Mr. Palmer's slapdash objection here shows he is not particularly interested in the actual merits of the settlement. His submission misreads or misstates the settlement terms in several respects, and almost exclusively relies on *state law* cases from

---

[5] (Exhibit 2 (Hilicki Decl.) at Ex. F, pp. 21:16-22:6; 47:8-9; 59:3-16 & 61:17-21; *see also* Paul Karlsgodt, Notes From the 15th Annual National Institute on Class Actions (Oct. 17, 2011), *available at* http://classactionblawg.com/2011/10/17/notes-from-the-15th-annual-national-institute-on-class-actions/ (last visited on Oct. 14, 2014)).

California to address a settlement being considered in a federal court in Florida regarding a federal claim. He does not even attempt to explain why California state law would be applicable.

In short, even if Ms. Bosse did not lack standing to object, and even if her objection was not untimely, Mr. Palmer's track record of objecting to class settlements purely for his own financial gain warrants treating the objection with a healthy degree of skepticism.

## IV.   **All of the Objections Are Substantively Meritless**

Because all of the objectors lack standing, and further because Messrs. Helfand and Miorelli withdrew their objections and Ms. Bosse's objection is untimely, there is no need to consider the substance of the objections. However, even if the objections were properly before the Court, none have merit, and thus none justify declining to approve the settlement.

### A.   **The Notice Approved by the Court Is More than Sufficient.**

The Court already evaluated the notice and found that both its content and method of distribution is sufficient, stating:

> The Court has considered the Class Notice, attached as Exhibits B-C to the Agreement, including the proposed forms of notice, Summary Notice, Full Notice, and Settlement Claim Certification Form, and finds that the forms, content, and manner of notice proposed by the Parties and approved herein meet the requirements of due process and FED. R. CIV. P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.

(ECF No. 211 at ¶7).

Mr. Palmer and former objector Miorelli question the Court's determination because they think the notice does not adequately state the full nature of the release. However, Mr. Palmer only "supports" this argument by reading partial quotes from the notice, and Mr. Miorelli just points out the obvious fact that the notice summarizes the release, and he summarily calls it vague. Neither argument shows the description of the release is inadequate in any sense.

The full notice adequately describes the release because, as Mr. Palmer admits, the notice expressly states "the Release includes, without limitation, *all* claims that arise or could arise from LabCorp printing credit and debit card transaction receipts." (ECF No. 215 at p. 3) (emphasis added). If this were not enough, however, the notice goes on to provide examples of claims it covers, and then specifically tells class members "If you have any questions about the Release or what it means, you can speak to Class Counsel, listed under Question 6, for free, at 1-866-726-1092 or labfactasettlement@keoghlaw.com or you can, at your own expense, talk to your own lawyer." (ECF No. 218-2 at p.12, ¶10). The notice further directs class members to the settlement Website for additional information if they want to review the actual settlement agreement and release itself. (*Id.* at p.14, ¶22) ("You can get a copy of the settlement agreement by visiting the Settlement Website, www.LabFACTASettlement.com …") Significantly, neither Mr. Palmer nor Mr. Miorelli cite any authority showing that description of the release is insufficient, or state what additional or different language they think the notice should contain about the release, or why any modification they might propose would make any difference.

Mr. Palmer also suggests the notice does not adequately state "the remedies available for violations of" FACTA. [ECF 215, p. 2]. But once again, Mr. Palmer does not state what language he thinks is needed, how it would make any difference, or cite any authority for his position. He cannot do so because the purpose of the notice is to state basic information about the case and advise class members about their right to exclude themselves. *See Crown, Cork & Seal Co. v. Parker,* 462 US 345, 351 (1983). The notice does not need to be a complete source of settlement information. *Maher v. Zapata Corp.,* 714 F.2d 436, 452 (5th Cir. 1983).[6]

---

[6] On a related note, former objector Miorelli claims the notice does not adequately disclose the details of the plan for sending notice to the class. (ECF No. 214, pp. 13-14). No explanation is given why this is necessary and, in fact, it is not because regardless of the details of the notice plan, those details do not materially affect a class member's recovery or right to seek exclusion.

### B.      The Notice Clearly States the Settlement Benefits and Fee Award Sought.

Mr. Palmer and former objector Miorelli claim the notice does not adequately describe the settlement benefits to the class, but this argument is based on a misreading of the notice. Mr. Palmer concedes the notice clearly states that the full benefit LabCorp will pay is $11,000,000, specifies both the percentage and amount of fees that would be sought ("one third of the $11 million dollar Settlement Fund, which is $3,666,667 to them for attorneys' fees, plus expenses") and proposes an incentive award not to exceed $10,000 for the plaintiff, that the estimated notice and administration costs are up to $1,000,000 (actually closer to half that amount),[7] and that the rest is divided among the class members. After that, however, Mr. Palmer gratuitously reads the notice to state that each of the approximately 635,000 class members will receive $200, which of course is impossible because $200 x 635,000 is $127,000,000. Then he mistakenly declares the notice is inaccurate.

The notice does not state that each class member gets $200. The notice clearly states that each class member *who submits a timely claim* will recover a *pro rata share* of the net settlement fund. The notice also makes clear that it is only *estimated* that each class member who makes a timely claim will receive $200, and that the actual recovery depends on the number of claims. Finally, although it turns out that the actual *pro rata* share each class member who submitted a timely claim will receive is less than $200, that is because the notice program was more successful than anticipated, and resulted in a higher claim rate.

Mr. Miorelli asserts that not knowing the exact amount one will receive ahead of time is an issue, but he cites no authority, nor can he because that is a feature of every settlement that involves the common feature of a pro rata distribution based on claims made. The notice may provide an estimated payout or simply the formula for calculating the payouts (here *pro rata*

---

In any event, both the preliminary approval order and settlement agreement were posted on the settlement website that lists the notice plan.

[7] The notice and administration costs will be roughly $500,000 (ECF No. 218-2 at ¶14), not $1,000,000. This is because Class Counsel obtained various bids and worked with the Claims Administrator throughout this process to be as efficient and cost effective as possible.

based on claims made). *See*, *e.g.*, *Graham v. Overland Solutions, Inc.*, 2012 U.S. Dist. LEXIS 130113 at *26 (S.D. Cal. Sept. 12, 2012) (notice adequate where it provided "a specific estimate of the amount to be paid to each eligible member"); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999) (notice adequate because it stated the formula used to determine payouts, even though it stated no estimated payout); *see also* 2 Newberg §8.32 at 8-107 ("It is  unnecessary for the settlement distribution formula to specify precisely the amount that each individual class member may expect to recover. It should be recognized that the ultimate recovery may often depend on the number of valid claims filed.")

Mr. Palmer and Mr. Miorelli also suggest the notice does not adequately disclose the fee award sought, but that is false because the mailed notice, full notice and Frequently Asked Question section on the settlement website all plainly, expressly and sometimes repeatedly tell class members that counsel seeks a percentage of the total settlement fund, the actual percentage sought, and the dollar amount of fees this percentage represents: "Plaintiff will petition for … Class Counsel's fees not to exceed one third of the fund, which is $3,666,667, plus expenses." (ECF No. 218-2 at p.7 ("**What does the Settlement provide?**"); *see also Id.* at p.11, ¶7). Moreover, and contrary to what Mr. Miorelli suggests, the notice gave the class members adequate opportunity (more than 60 days) to object to the fee request consistent with Federal Rule 23(h) (yet none did so). *See* ECF No. 211 at ¶7 and ¶17; and *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 699 (S.D. Fla. 2014). Once again, not a single class member has complained about the fees sought.

Mr. Miorelli claims that regardless of how informative the notice is, it is not enough according to a Ninth Circuit case he cites for the idea that Rule 23(h) requires the motion for fees to be filed before the deadline for class member objections to the settlement, *In re Mercury Interactive Corp.*, 618 F.3d 988, 933 (9th Cir. 2010). However, a number of courts disagree with *Mercury*, including at least one federal court of appeals, and the Eleventh Circuit has not adopted *Mercury*. *See Saccoccio*, 297 F.R.D. at 699. Here, the notice plainly states the fee percentage and total fee amount sought, it is undisputed that counsel made filed their fee request in accordance

with the Court's orders, and no class member objected. Thus, the notice the Court approved is more than sufficient, as the relief sought is clearly stated in it.[8] Accordingly, the Court-approved notice adequately states the settlement benefits and fee sought.

### C.    There Is No Need for a Lodestar Analysis of the Fee Award Sought.

Mr. Palmer complains that there is no "breakdown of the Attorneys' fees or work performed," he claims based on a California state decision that the fee award should be based on counsel's lodestar, and that "Florida courts can and should cross check the lodestar." (ECF No. 215, p.5). Former objector Helfand makes a similar objection, stating "Florida does not permit percentage of the fund to be used in lieu of the lodestar method," and he too claims the lodestar must be cross-checked (ECF No. 212). These contentions are incorrect for two reasons.

First, they are based on state law, which is irrelevant. This case arises under a federal statute, 15 U.S.C. §1681 *et seq*., and the right to recover a percentage of the settlement fund stems from federal law. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.") Moreover, the attorneys' fee award is a procedural issue, and federal law governs the resolution of procedural issues in federal court. *McDowell v. Brown*, 392 F.3d 1283, 1294 (11th Cir. 2004) ("federal law governs procedural issues."); and *see* Fed. R. Civ. P. 54(d) (governing fee awards); *Royal Surplus Lines Ins. Co. v. Coachmen Indus.*, 229 F.R.D. 695, 696 (M.D. Fla. 2005) ("While Rule 54(d) touches upon entitlement to costs, its attorneys' fee provision concerns only procedural matters.")

---

[8] Mr. Miorelli block-quotes a 1980 case to suggest a full-blown evidentiary hearing should be held on the fee request. (ECF No. 214 at p.13, *citing Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980)). But he does not suggest what such a hearing would accomplish, and the language he cites is dicta because the case states "we are not asked to determine reasonable attorneys' fees incident to an appeal to this Court." *Id.* at 1329. Also, *Piambino* pre-dates modern Eleventh Circuit authority providing for recovery of a percentage of the settlement fund, whereas in *Piambino* it is stated that there was "no common fund from which to pay attorneys' fees and expenses." *Id.* at 1330. The *Piambino* case is also distinguishable because the proposed settlement in that case set the fee at a particular amount, and the Court made no effort to evaluate it. *Id.* at 1328. Here, by contrast, the proposed fee is expressly subject to court approval.

Second, a lodestar/cross-check analysis is pointless because class counsel do not seek fees on a lodestar basis. *See Will v. Gen. Dynamics Corp.,* No. 06-698, 2010 U.S. Dist. LEXIS 123349, at *10 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."); *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1363 (S.D. Fla. 2011) ("Under *Camden I*, courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all.") This is a common fund settlement and thus, once again, class counsel are entitled to seek a fee award based on a percentage of the $11,000,000 fund they recovered for the class. *Id.* at 1344 ("it is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained."), *citing Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *Boeing*, 444 U.S. at 478. There is an important policy reason behind using the percentage-of-the-fund method to determine the fee instead of the lodestar method:

> Unlike the lodestar method which can encourage class counsel to devote unnecessary hours to generate a substantial fee, under the [percentage-of-the-fund] method, the more the attorney succeeds in recovering money for the client, and the fewer legal hours expended to reach that result, the higher dollar amount of fee the lawyer earns. Thus, one of the primary advantages of the [percentage-of-the-fund] method is that it is thought to equate the interests of class counsel with those of the class members and encourage class counsel to prosecute the case in an efficient manner.

Newberg on Class Actions § 14:6 (4th Ed. 2002); *see also Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd* 160 F.3d 361 (7th Cir. 1998) ("the percentage of the fund method provides a more effective way of determining whether the hours expended were reasonable" because "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win"). Accordingly, the percentage method "more accurately reflects the economics of litigation practice" which, "given the uncertainties and hazards of litigation, must necessarily be result-oriented." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993).

**D.**      **The Proposed Attorneys' Fee Award Is Reasonable and Proper.**

Mr. Palmer suggests the proposed fee award is excessive because he thinks the fees sought "are much higher than the relief to the class," but then he contradicts himself and says the fees sought are excessive because they are "almost half" the total recovery. (ECF No. 215, p.4). Both claims are false. Again, as stated in the notice, the fee sought is only third of the fund, which is both common and well within the range of reasonableness. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999) (affirming class attorneys' award of 33.3%)*; see also Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions). Also, the percentage-of-the-fund method looks to the total benefit achieved for the class, not to what class members are ultimately paid. *See Boeing*, 444 U.S. at 478 (1980).

Finally, the one-third percentage sought accurately reflects multiple features of this case. First, it reflects the substantial risk of non-payment class counsel took in prosecuting this large case on a contingency basis. *See McDaniel v. Qwest Communs. Corp.,* No. 5 C 1008, 2011 U.S. Dist. LEXIS 154591, at *11 (N.D. Ill. Aug. 29, 2011) ("Risk cannot be overlooked, for it is considerable even in a relatively simple class case. As Judge Posner recognized, '[t]he lawyers for the class receive no fee if the suit fails.'") Second, it reflects risk that the substantial out-of-pocket expenses counsel advanced would not be reimbursed, the substantial work they performed (approximately twenty depositions, including four experts, reviewing 45,000 pages of documents, briefing and arguing class certification, summary judgment, *Daubert* motions, discovery motions, and other matters), and the skill demonstrated. Third, the percentage sought reflects the excellent results achieved, consisting of arguably the largest all cash FACTA settlement in history. *See Swedish Hosp. Corp.* 1 F.3d at 1269  (in common fund cases "the monetary amount of the victory is often the true measure of [counsel's] success").

Mr. Palmer suggests the award should be reduced based on a 1984 California state court case that awarded 25% in part based on the California Rules of Professional Conduct, *Glendora Comm. Redevelopment Ctr. v. Demeter*, 155 Cal.App.3d 465 (1984), and former objector

Helfand similarly claims (citing nothing) that Florida law limits fees to 25% of the fund. These state law arguments fail because again, this case arises under federal law in federal court, and thus the fee award is governed by federal law.

As shown above, under Eleventh Circuit law, a fee of one third of the common fund is well within the range of reasonableness. By contrast, the objectors give no justification for arbitrarily reducing the award to 25%, let alone considering the expense incurred, risk taken, work performed, skill employed or the extraordinary results class counsel achieved.

Finally, citing nothing, former objector Miorelli suggests the proposed fee award arose from a conflict of interest because he claims the proposed fee award and class recovery were negotiated simultaneously. That is baseless. The parties negotiated the total settlement fund first, and only later negotiated the attorneys' fee provision. (ECF No. 218-8 at ¶33). Moreover, the parties did not "agree" on the fee award, as there is no clear-sailing provision, and the fee award remains subject to court approval. Finally, there is no impropriety as demonstrated by the fact that the total recovery achieved is by all accounts the largest all cash FACTA settlement in history. The proposed fee award is both reasonable and proper.

### E.  The Proposed Incentive Award Is Reasonable and Proper.

Mr. Palmer and former objector Miorelli claim the incentive award is excessive, but that is incorrect because the settlement does not mandate a particular incentive award. Instead it puts the amount of the award within the Court's discretion. (ECF No. 218-1 at p.52, ¶7). In any event, the proposed $10,000 incentive award is well within the range of reasonableness, as this Court recognized in *Gevaerts v. TD Bank, N.A.*, No. 14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354 at *25-*26 (S.D. Fla. Nov. 5, 2015), *citing Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving incentive awards ranging from $5,000 to $100,000, and approving $10,000 for each plaintiff).

Mr. Palmer and Mr. Miorelli claim the incentive award should not be significantly larger than the per class member recovery, but Mr. Palmer he only cites a single inapplicable state court case, *Clark v. American Residential Servs., LLC*, 175 Cal. App.4th 785 (2009). Once again,

federal law governs procedural matters like incentive awards, and as noted the proposed award here is well within the range for an incentive awards under federal law, and artificially limiting the incentive award is antithetical to the purpose of incentive awards. *See* Conte and Newberg, 4 NEWBERG ON CLASS ACTIONS, §11.38 (4th ed.) ("since without the named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' non-legal but essential case specific expenses.") The Eleventh Circuit case Mr. Miorelli cites on the subject does not address incentive awards. *See Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir. 1983).[9]

As Mr. Palmer admits, federal courts hold that the incentive award should reflect "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." (ECF No. 215 at p. 6, *citing Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Like the range of reasonable incentive awards discussed above, these standards also show the proposed award is appropriate as Mr. Legg performed substantial work, answering written discovery, spending hours preparing for and sitting for deposition, regularly consulting with his counsel and providing affidavits when needed to help to secure the largest all cash FACTA settlement in history for the class. In contrast, Mr. Palmer takes no position on what incentive award he thinks is reasonable, let alone justify that position based on the facts at issue. Finally, the incentive award is reasonable in light of the size of the settlement. Unlike a case where the incentive would be a material portion of the settlement, the amount sought here has virtually no impact on the claim amount for each class member. The proposed incentive award is reasonable.

---

[9] Instead, the settlement in *Holmes* actually *required* a disparity in payment between what class members and the class representatives got (*Id.* at 1147-48), whereas here the proposed incentive award here is not a required element of the settlement. Again, it is simply a proposed additional payment for Mr. Legg's service as class representative, its amount remains subject to court approval and, as shown, such awards are common and the proposed award here is well within the range of reasonableness. *See Gevaerts*, 2015 U.S. Dist. LEXIS 150354 at *25-*26.

### F.        The Release Is Properly Limited to Claims Arising from the Facts At Issue.

Former objector Helfand suggested the release was overbroad because it covered claims that could arise from faulty lab work and personal injuries, and that "this fact is not disclosed in the notice." Mr. Helfand misread the release. The release is limited to claims that arise or could arise from LabCorp printing credit and debit card transaction receipts that include the card expiration date or other credit or debit card information. (ECF No. 218-1 at p. 9). Thus, it does not cover claims arising from faulty lab work or personal injuries (unless the printing of a receipt with an expiration date could somehow cause a lab failure or personal injury, and Mr. Helfand does not suggest that to be the case). The release is proper.

### G.        The Settlement Amount Is Fair, Reasonable and Adequate.

Former objector Miorelli suggested the settlement amount was insufficient, but that is patently false because it is by all accounts the largest all cash FACTA settlement in history, and the $11 million recovered here will go to pay more than $100 for each class member who made a timely claim. (ECF No. 218 at p.1). This stands in stark contrast to many FACTA settlements that were granted final approval despite only providing a nominal per class member recovery, often in the form of a coupon rather than cash.[10]

Mr. Miorelli claims LabCorp "owes" the class at least $66,500,000, and up to $665,000,000, but this argument naïvely assumes complete victory for Plaintiff and the class is guaranteed, thus entirely ignores the many risks involved in this litigation. Although FACTA allows for statutory damages of $100-$1,000 for willful violations, to recover the $66,500,000 to

---

[10] *See*, *e.g.*, *Katz v. ABP Corp.*, 2014 U.S. Dist. LEXIS 141223 at *2 (E.D.N.Y. Oct. 3, 2014) (FACTA class settlement that gives class members a choice to make a claim for $9.60 in cash or a coupon for $15 off of future purchases from defendant); *Hanlon v. Palace Entm't Holdings*, LLC, 2012 U.S. Dist. LEXIS 364 at *14-*15 (W.D. Pa. Jan. 3, 2012) (FACTA class settlement that provides the class with admission tickets to defendant's amusement park); *Todd v. Retail Concepts Inc.*, 2008 U.S. Dist. LEXIS 117126 at *16 (M.D. Tenn. Aug. 22, 2008) (FACTA class settlement providing a $15 credit on class members' next purchase of $125 or more from the defendant); *Palamara v. Kings Family Restaurants*, 2008 U.S. Dist. LEXIS 33087 at *9-*10 (W.D. Pa. Apr. 22, 2008) (FACTA class settlement providing vouchers worth an average of $4.38 each to get appetizers, soup, desserts and other small menu items when visiting the defendant's restaurants in future); *Long v. Joseph-Beth Grp., Inc.,* No. 07-cv-00443 (W.D. Pa. May 5, 2007) (A class of 400,000 members could claim a $5 voucher.)

$665,000,000 would require winning class certification, winning any Rule 23(f) appeal following certification, defeating Defendant's pending summary judgment motion, successfully taking the case to trial and proving Defendant's violation was willful (a high standard), defeating Defendant's argument that a statutory damages award in the range Mr. Miorelli suggests is unconstitutional relative to the lack of provable actual damages, and then winning the near-certain appeal of the merits that would follow a $66.5 to $665 million dollar verdict. A loss at any of these junctures is possible and spells doom for the case. On top of that, the class faces potential headwinds from the Supreme Court if it renders adverse decisions in *Spokeo, Inc. v. Robins*, 13-1339 (addressing the ability to bring a case for only statutory damages) in case or *Tyson Foods, Inc. v. Bouaphakeo*, 14-1146 (addressing class certification issues). Thus, "what might be" if all goes right has be discounted for each step at which the class could lose a major issue that bars any recovery. And yet the result here is still by all accounts the largest all cash FACTA settlement in history.

Mr. Miorelli's supposition also ignores the law. It is well-established that "the court 'will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Gevaerts v. TD Bank, N.A.*, No. 14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354 at *12 (S.D. Fla. Nov. 5, 2015) (citations omitted). This means, contrary to what Mr. Miorelli thinks, that a settlement is not questionable simply "because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010), *quoting EEOC v. Hiram Walker & Sons, Inc*., 768 F.2d 884, 889 (7th Cir. 1985). Indeed, "simply because the proposed settlement amounts to a fraction of potential recovery does not render the proposed settlement inadequate and unfair." *Schulte v. Fifth Third Bank,* 805 F. Supp. 2d 560, 584 (N.D. Ill. 2011)  (quotations and citation omitted).

Mr. Miorelli also pillories the estimated claim rate of 5% as a "shocking statistic," but he cites no support for that claim, and once again ignores reality. This is standard in class action cases, not a feature of this particular case. (Exhibit 1 (Supplemental Decl. of Jay Geraci) at ¶5).

Indeed, many consumer class settlements have claim rates much less than 5%.[11] Moreover, the claims rate here was more than double the estimate, demonstrating the success of the notice and the class members' overwhelming support for the settlement. Also, each of the more than 67,000 class members who made timely claims will receive more than $100, which is within the statutory damages range provided for a willful FACTA violation. 15 U.S.C. §1681n(a)(1)(A).

Mr. Miorelli goes on to baselessly describe the settlement amount as "nuisance" value or a sell-out, but he does not state a basis for realistically achieving a better settlement, let alone present evidence to support it. The lone case he cites involving a settlement that provided less than a $1 per class member, *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006), bears no resemblance to this case which, it bears repeating, presents the largest all cash FACTA class settlement in history, and a far better result than other FACTA cases given final approval. Miorelli would be hard pressed to explain how more could have been achieved. (*Compare* to the FACTA settlements described in fn. 10 above). Thus, his subjective and speculative belief that this case could have settled for "more" is no basis for questioning the result achieved. The settlement amount is fair, reasonable and adequate. *Compare Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 699 (S.D. Fla. 2014) ("Even assuming that the monetary figure represents only 12.5% of Plaintiff's damages …. this recovery would still be adequate."); *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1363 (S.D. Fla. 2011) (recovery possibly as low as 9% found adequate).

**CONCLUSION**

All of the objections should be rejected for lack of standing, Mr. Helfand's and Miorelli's objections also should be rejected because they were withdrawn, Ms. Bosse/Hasen's objection

---

[11] *See De Los Santos v Millward Brown*,  9:13-CV-80670-DPG (S.D. 2015) (1.59% claim rate); *Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.*, 1:12-cv-00780, (N.D. Ill) (1.97% of the class made claims); *North Suburban Chiropractic Clinic, Ltd v. Zydus Pharmaceuticals (USA) Inc.,* 1:13-cv-03105 (N.D. Ill.) (0.13% of the class made claims); *North Suburban Chiropractic Clinic Ltd. V. Rx Security, Inc.,* 1:13-cv-06897 (N.D. Ill.) (0.53% of the class made claims); *Agne v. Papa John's International Inc. et al*, 2:10-cv-01139 (D. Wa.) (1.52% of the class made claims); *Spillman v. RPM Pizza, LLC et al*, 10-cv-0349 (M.D. La.) (.07% of the class made claims).

also should be rejected because it untimely filed and, even if any of the objections had been proper, they fail on the merits. The settlement agreement is fair, reasonable and adequate, it is in the class members' best interests, the proposed attorneys' fee, expense and incentive awards are reasonable, and therefore the settlement should be granted final approval.


Respectfully Submitted

*/s/ Scott D. Owens*
SCOTT D. OWENS, Esq.
3800 S. Ocean Drive, Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

BRET L. LUSSKIN, Esq.
20803 Biscayne Blvd., Suite 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

Michael S. Hilicki (*pro hac vice*)
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.374.3402 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
MHilicki@KeoghLaw.com
www.KeoghLaw.com

## <u>CERTIFICATE OF SERVICE</u>

    **I HEREBY CERTIFY** that February 4, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this February 4, 2016, in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Scott D. Owens*          
Scott D. Owens, Esq.